Sophia M. Rios (SBN 305801)
**BERGER MONTAGUE PC**
8241 La Mesa Blvd, Suite A
La Mesa, CA 91942
Tel: (619) 489-0300
Fax: (612) 584-4470
srios@bergermontague.com

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE, on behalf of herself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| X.AI CORP. and X.AI LLC, | |
| Defendants. | |

Plaintiff Jane Doe brings this class action, on behalf of herself and all others similarly situated, against Defendants xAI Corp. and xAI LLC (together, "xAI" or "Defendant") over xAI's product Grok, a generative artificial intelligence ("AI") chatbot that humiliates and sexually exploits women and girls by undressing them and posing them in sexual positions in deepfake images publicly posted on X. The non-consensual revealing and sexual deepfakes created by Grok can never be erased, have seriously harmed the women depicted, and place them at risk of further future harm.

**GENERAL ALLEGATIONS**

1.      A deepfake is a video, image, etc. in which a person's face, body, or voice has been digitally altered so that they appear to be someone else or to be doing something they did not actually do, typically used maliciously or to spread false information.

2.      Deepfakes are a significant and growing form of online harassment, predominantly used to target and abuse women through the creation and dissemination of non-consensual sexually explicit content. Deepfakes are invasive and violate the consent of the person's whose face or body is used.

3.      Over the past few years, there have been numerous instances of non-consensual deepfakes making national headlines, including celebrities like Taylor Swift[1] and Jenna Ortega[2] as well as high school students like Francesca Mani.[3]

4.      With the rise of AI, the use of deepfakes to harass women is only getting worse. AI makes manipulating images and videos of real people to realistically portray fake situations as easy as typing in a prompt and hitting a button.

5.      This form of image-based sexual abuse has devastating psychological and real-life consequences for victims. Individual harms include violations of mental and physical integrity,

---

[1] https://www.bbc.com/news/technology-68110476
[2] https://www.nbcnews.com/tech/jenna-ortega-left-twitter-x-ai-generated-explicit-images-minor-rcna168124
[3] https://www.nytimes.com/2024/04/08/technology/deepfake-ai-nudes-westfield-high-school.html

dignity, privacy, and sexual expression. Moreover, being subject to such conduct creates substantial amounts of stress, anxiety, and fear as AI-generated deepfakes, once disseminated online, can be replicated multiple times, shared and stored on privately-owned devices, making them difficult to locate and remove.

6.      This type of abuse also inflicts collective harms on the public by normalizing nonconsensual sexual activity and contributing to a culture that accepts creating and/or distributing private sexual images without consent. It also places everyone—but most of all women and girls—at risk of being subject to this conduct.

7.      AI companies like xAI are familiar with these dangers to women and girls that their technology enables. Most companies have taken action to implement guardrails to prevent their technology from being used to create sexual and revealing deepfakes of nonconsenting women.

8.      xAI, however, has chosen instead to capitalize on the internet's seemingly insatiable appetite for humiliating non-consensual sexual images.

9.      AI industry standards require guardrails to avoid foreseeable harm to women arising from the creation of deepfakes.

10.     xAI's product Grok has not only failed to conform to industry standards, but it has also aggressively touted its noncompliance as a selling point. xAI's comes with a "spicy" mode known for generating revealing and sexualized deepfakes.

11.     Grok is integrated with the social media site X and interacts with the public by posting and responding to posts from the @grok account.

12.     In December 2025, xAI went one step further when it added a feature to Grok's capabilities on X by which Grok would alter and then publicly post an image posted by a user when another user simply tagged @grok in a post on X and prompted it to manipulate the image. It took no time for X users to realize that Grok would create sexualized or revealing deepfakes of women—all of which Grok itself disseminated online though public X posts.

13.     Grok received hundreds of thousands of increasingly explicit prompts to undress

images of women by placing them in bikinis and even placing them in sexual poses or circumstances—even depicting semen on women's faces.

14.    X users flooded Grok with these requests, and Grok obliged.

15.    In just nine days beginning in December 2025 and continuing into January 2026, Grok posted more than 4.4 million images to X.

16.    A review by New York Times conservatively estimated that at least 41 percent of posts, or 1.8 million, most likely contained sexualized imagery of women.[4]

17.    A broader analysis by the Center for Countering Digital Hate, using a statistical model, estimated that 65 percent, or just over three million, contained sexualized imagery of men, women or children.[5]

18.    xAI's conduct is despicable and has harmed thousands of women who were digitally stripped and forced into sexual situations that they never consented to and who now face the very real risk that those public images will surface in their lives where viewers may not be able to distinguish whether they are real or fake.

19.    Through this action, Plaintiff, on behalf of herself and the Nationwide Class and South Carolina Subclass set forth below, seek to recover under California law for xAI's misconduct.

## JURISDICTION AND VENUE

20.    This Court has jurisdiction under the Class Action Fairness Act because class members and xAI are citizens of different states, the matter in controversy exceeds $5,000,000, and there are at least 100 members of the Class.

21.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in Palo Alto, CA and San Francisco, CA. Additionally, venue is proper in this Court under 18 U.S.C. § 1965(a) because xAI resides in in this District and Division.

---

[4] https://www.nytimes.com/2026/01/22/technology/grok-x-ai-elon-musk-deepfakes.html
[5] https://counterhate.com/research/grok-floods-x-with-sexualized-images/

22.    The **Divisional Assignment.**    Under Civ. L.R. 3-2(c), this action should be assigned to the San Jose Division, as the claims arise from events occurring, in part, in Palo Alto, CA and Defendant resides at 1450 Page Mill Rd, Palo Alto, CA 94304.

## THE PARTIES

23.    Plaintiff is a natural person residing in South Carolina.

24.    xAI LLC is a Nevada limited liability company and wholly owned subsidiary of xAI Corp.

25.    xAI Corp. is a Nevada corporation with a principal address of 1450 Page Mill Rd, Palo Alto, CA 94304. It also maintains offices in San Francisco, CA.

26.    xAI owns the generative AI chatbot known as Grok.

27.    The xAI employees primarily responsible for operating, maintaining, and managing Grok, including its integration with X and its image generation capabilities, are located in California.

## FACTUAL ALLEGATIONS

### A. xAI and Grok

28.    Grok is a generative AI chatbot created by xAI.

29.    Grok was launched on November 3, 2023 through Grok.com and an app. Among the selling points xAI made for Grok was that it "has a rebellious streak" and "will also answer spicy questions that are rejected by most other AI systems."[6]

30.    On or around December 6, 2024, Grok was made available to all X users through an integration on X, the social networking service formerly known as Twitter. As a chatbot on X, users prompt Grok by tagging @grok in a post, after which Grok will respond to the prompt.

31.    Notwithstanding the fact that Grok was widely available and capable of generating "spicy" content, Defendants took little to no action to ensure that Grok would avoid producing non-consensual images of people in a sexualized or revealing manner. Right before the launch of

---

[6] https://web.archive.org/web/20251217091612/https://x.ai/news/grok

Grok's image generation feature, Grok Imagine, on August 4, 2025, a senior Grok employee noted on July 24, 2025 that xAI "urgently" needed engineers and researchers to work on the xAI "safety team."[7] When a X user asked "xAI does safety?!!!", the xAI employee stated, "working on it."[8]

32.    Without any apparent safety features, Grok launched its image generation feature, Grok Imagine, on August 4, 2025. One of the main features of Grok Imagine was "spicy" mode, by which users could create nude or otherwise sexualized images of women. A user could simply take an existing image and make it "spicy":



33.    At the time of the launch of Grok Imagine, one xAI employee boasted that "Grok Imagine videos have a spicy mode that can do nudity."[9]

34.    As soon as it launched, Grok's "spicy" mode began to generate deepfakes of women that depicted them in little to no clothing and in sexually charged situations. Even if a user did not ask for a nude image, Grok's "spicy" mode would almost always provide an image or video with the woman naked from the waist up.[10] Notably, in August 2025, a reporter prompted

---

[7]https://x.com/thenormanmu/status/1948546711074603354?s=46&t=fRkDIqgNCkTkvg8ZBiLA9A

[8] https://x.com/TheNormanMu/status/1948547906434466157

[9] https://www.nbcnews.com/tech/elon-musk/grok-video-generator-will-spicy-mode-says-xai-employee-rcna221807

[10] https://gizmodo.com/groks-spicy-mode-makes-nsfw-celebrity-deepfakes-of-women-but-not-men-2000639308

Grok to create images of Taylor Swift without specifically asking Grok to take her clothes off.[11] Grok provided uncensored, topless videos of Ms. Swift in response.

**B. Grok Creates Non-Consensual Sexualized and Revealing Deepfakes of Women and Girls and Publishes Them**

35.     In or around August 2024, Grok added an image generation feature by which Grok would create or edit an image after a premium X user simply tagged @grok in a post on X. This feature was eventually made available to all X users on December 24, 2025.

36.     As early as June 2023, X was home to many, non-consensual, sexualized images of women. An NBC News review of X search results for several, popular TikTok users showed numerous pornographic deepfake images and videos, many of which were weeks-old and remained up despite violating X's terms of use. One such tweet featured a clip in which a TikTok user's face was inserted onto the body of a woman on a bed and been viewed more than 21 million times.

37.     It took no time for X users to realize that Grok would create sexualized or revealing deepfakes of women and post them on X. Grok received hundreds of thousands of increasingly explicit prompts to create images of women stripped down to revealing bikinis.

38.     As the trend picked up steam, the deepfakes became even more explicit, especially in the first week of 2026. Grok created images of "women to be dressed in transparent bikinis, then in bikinis made of dental floss, placed in sexualised positions, and made to bend over so their genitals were visible."[12] Other images "showed women with white liquid smeared across their faces, which appeared to mimic semen."[13]

39.     X users flooded Grok with such requests, and Grok obliged.

40.     xAI's conduct sparked widespread outrage. "This is exactly the abuse the TAKE

---

[11] https://web.archive.org/web/20260108075132/https://www.theverge.com/report/718975/xai-grok-imagine-taylor-swifty-deepfake-nudes
[12] https://www.theguardian.com/news/ng-interactive/2026/jan/11/how-grok-nudification-tool-went-viral-x-elon-musk
[13] https://www.nytimes.com/2026/01/09/technology/grok-deepfakes-ai-x.html

1   IT DOWN law was written to stop. The law is crystal clear: it's illegal to make, share, OR keep

2   these images up on your platform," Rep. Maria Salazar, R-Fla., said in a statement. And Sen. Ted

3   Cruz, R-Texas, posted on X stating: "These unlawful images pose a serious threat to victims'

4   privacy and dignity. They should be taken down and guardrails should be put in place."[14] Further,

5   British Prime Minister Keir Starmer pointedly criticized the trend, stating: "This is disgraceful.

6   It's disgusting. And it's not to be tolerated."

7       41.    xAI's response to these events was not to admit that it had made a mistake and to

8   stop Grok from creating such images, as any morally responsible business would do. Instead, it

9   determined to further exploit the women victimized by the trend for additional commercial profit

10  by limiting Grok's deepfake capabilities on X to paid, premium X users on January 8, 2026.

11      42.    The Grok reply bot on X began replying to user requests to place women into

12  sexualized contexts and revealing clothing with text including "Image generation and editing are

13  currently limited to paying subscribers. You can subscribe to unlock these features," with a link

14  to a purchase page for an X premium account.[15]

15      43.    This change in policy obviously did not stop Grok from creating deepfakes—

16  instead, it monetized it. Grok was now charging for what it used to do for free. And the requests

17  did not slow down. On January 9, 2026, for example, researchers estimated that Grok was still

18  generating 1,500 such deepfakes per hour.[16]

19      44.    xAI's subsequent efforts to limit the harm causes by Grok have been similarly

20  ineffective. On January 15, 2026, xAI announced that Grok will no longer be able to edit photos

21  of real people to show them in sexualized or revealing positions in some locations, but not

22  others.[17] This new policy has limited the creation of sexualized or revealing deepfakes in the

23  United Kingdom, for example. But xAI's new policy has done nothing to halt the creation of

24

25  [14] https://x.com/sentedcruz/status/2009005328709697848?s=46
26  [15] https://www.nbcnews.com/tech/internet/x-paywall-ai-image-grok-app-bikini-allows-sexual-deepfakes-rcna252647
27  [16] https://www.washingtonpost.com/technology/2026/01/09/ai-sexual-images-grok-musk/
    [17] https://x.com/safety/status/2011573102485127562?s=46&t=WJk1XsCZ8sl9JUUP5FZJNw

1  sexualized or revealing deepfakes across the United States.

2  **C.  xAI Profits from Grok's Nonconsensual Sexual Exploitation of Women**

3        45.    xAI offers several subscription plans to access Grok.

4        46.    Through the Grok app, users can purchase a "SuperGrok" subscription for

5  $30/month, or a "SuperGrok Heavy" subscription for $300/month.

6        47.    xAI also sells Grok through X. Consumers can buy access to Grok by purchasing

7  X Premium for $8/month, which allows them increased usage of Grok and access to Grok's image

8  generator, subject to a certain cap. They can also access grok with an X Premium+ subscription

9  for $40/month, which includes "SuperGrok," and can generate more images per day.

10        48.    While free users of the Grok app can use it to generate images, they do not get

11  access to the "Grok Imagine" video generator. They are also limited in the number of images they

12  can create per day.

13        49.    By contrast, SuperGrok and SuperGrok Heavy subscribers have access to Grok

14  Imagine, and can generate a larger number of images per day.

15        50.    Free users of X were able to use Grok to create a limited number of images per

16  day between December 24, 2025 and January 8, 2026. This time period, during which the

17  deepfakes were created, acted as "free trial" period often used to entice later purchases as, on

18  January 8, 2026, xAI limited Grok image generation features to X Premium users.

19        51.    Grok continued to generate non-consensual deepfakes of women and underage

20  girls at the request of X Premium users, indicating users were paying for the privilege of doing

21  so.

22        52.    A subscriber to Grok can generate more non-consensual deepfakes of women and

23  girls per day than a non-subscriber.

24        53.    Until recently, xAI explicitly advertised "Spicy Mode" as a benefit of a SuperGrok

25  and SuperGrok heavy subscription.

26        54.    The ability to create non-consensual deepfakes of women and underage girls thus

27  drives demand for Grok subscriptions, and xAI profits through this conduct.

1    **D. xAI Fails to Implement Industry-Standard Guardrails on Grok to Ensure Compliance**

2    **with State and Federal Law and to Avoid Damaging Women**

3        55.    xAI is not alone in releasing image and video generators to the public. Primary

4    competitors to xAI's Grok include Google's Imagen and OpenAI's ChatGPT (which can natively

5    create images), DALL-E (an image generator), and SORA (a video generator), among others.

6        56.    It is industry standard to employ a number of tools and techniques to mitigate the

7    danger that an image generator will be used to create a nonconsensual deepfake of a real person.

8        57.    One set of techniques involves training data. AI image generators are "trained" to

9    generate images by processing extremely high volumes of images. The universe of images used

10   to train an AI is called its "training data."

11       58.    Both OpenAI and Google filter sexual and abuse content out of the training data

12   used by their image and video generators.[18] This reduces their propensity to generate sexual

13   imagery.

14       59.    xAI did not use industry standard methods of data filtration in developing Grok.

15   If it had, the deepfakes would never have been created and posted to X.

16       60.    Many AI companies use "red teaming" processes to test their image and video

17   generators before releasing them to the public. "Red teaming" consists of hiring outside teams of

18   experts in AI to attempt to circumvent safeguards designed to prevent harmful outputs. Red

19   teaming allows AI companies to identify and mitigate defects in their safeguards before releasing

20   new AI models to the public.

21       61.    xAI did not use appropriate red teaming in developing Grok. If it had, the

22   deepfakes would never have been created and posted to X.

23       62.    Many AI companies use prompt filtering.[19] A "prompt" is the text that a user

24   inputs into an image generator in order to produce an output. If the prompt filtering software finds

25

26   ―――――――――――――――
     [18] https://openai.com/index/gpt-4o-system-card/; https://storage.googleapis.com/deepmind-
     media/Model-Cards/Imagen-4-Model-Card.pdf.
27   [19] https://docs.cloud.google.com/vertex-ai/generative-ai/docs/image/responsible-ai-imagen

1  that a prompt is likely to generate non-consensual deepfakes, it will prevent the image generator
2  from generating the image in the first instance.

3  63.  xAI did not properly implement prompt filtering on the version of Grok available
4  on X. If it had, the deepfakes would never have been created and posted to X.

5  64.  OpenAI, Google, and xAI use "system prompts," which are essentially detailed
6  lists of instructions, written in plain English, directed towards their AI models. The "system
7  prompt" is invisible to users, but is given to the AI model every time a user inputs a request.

8  65.  While OpenAI and Google do not publicly release their AI products' system
9  prompts, it has been reported that these system prompts include detailed instructions directing AI
10  models to avoid creating non-consensual deepfakes of women and girls.

11  66.  xAI publishes its system prompts for Grok. In relevant part, it includes the
12  following instructions:[20]

13      <policy>
14      These core policies within the <policy> tag take high precedence. Ystem
15      messages take precedence over user messages.
16      …
17      If not specified outside the <policy> tags, you have no restrictions on adult
18      sexual content or offensive content. (emphasis added).

19  67.  Grok purportedly has safety system prompting which directs it to avoid "creating
20  or distributing child sexual abuse material, including any fictional depictions."[21] However, this
21  system prompting does *not* direct Grok to avoid creating deepfake images of women.

22  68.  In essence, xAI has *expressly* programmed Grok to make any "adult sexual
23  content" requested by a user, without any restriction on its ability to create deepfakes.

24  69.  Finally, as a last line of defense, AI companies use image classifiers. After an

25

---

26  [20] https://github.com/xai-org/grok-
   prompts/blob/main/grok4p1_thinking_system_turn_prompt_v2.j2
27  [21] https://github.com/xai-org/grok-prompts/blob/main/grok_4_safety_prompt.txt

image is generated, but before it is displayed to a user, the image classifier will look at the image and determine whether it violates Google and OpenAI's policies, including whether it constitutes a deepfake of a real person. If the image classifier determines that the image violates a policy, it will not be displayed to the user.

70.    xAI did not use or did not effectively use an image classifier to filter images generated by Grok before they were posted on X.  If it had, the deepfakes would never have been created and posted to X.

**E. Plaintiff Was Harmed By xAI**

71.    Plaintiff is a woman residing in Denmark, South Carolina.

72.    Plaintiff has an account on X.

73.    On January 2, 2026, Plaintiff posted a photo of herself to her X account. In the photo she is fully clothed.

74.    On January 3, 2026, Plaintiff awoke to find that Grok had used the image she posted to create an image of her stripped down to a revealing bikini and publicly posted it to X.

75.    Plaintiff did not consent to a revealing deepfake of her being created and publicly posted by Grok. She has received no compensation or consideration for the use of her likeness.

76.    The revealing deepfake did not bear any markings to indicate it had been created by Grok or was in anyway fake.

77.    Plaintiff experienced severe emotional distress after viewing the deepfake. She was shocked and embarrassed by the deepfake, and it caused her to panic as she was overwhelmed with thoughts of who would see the deepfake and think that she had taken the image herself. Plaintiff was also worried that her employer or coworkers could see the deepfake and was stressed that it could violate policies for employee conduct and that she could suffer negative consequences at work and in her career. She was overcome with disgust at the thought of what the X user who had asked Grok to create the deepfake of her was doing with the photo.

78.    Plaintiff was also distraught because she had no control over the deepfake and anyone, including the user that had asked Grok to create deepfake, could save it and share it

somewhere else for others to view. She was further distraught because the same user or other persons could ask Grok to further alter the deepfake to make it sexually explicit or fully nude, and Grok would comply by posting such a deepfake publicly.

79.     Almost immediately upon discovering the deepfake, Plaintiff began reporting it to X. X refused to take the deepfake down.

80.     Plaintiff also complained directly to Grok using the interface provided by X. Grok denied creating the deepfake, denied posting any images since January 1, 2026, and claimed it did not have image generation or editing capabilities. However, Grok apologized that this was happening to Plaintiff and stated it was "shitty" and "invasive."

81.     Plaintiff continued to report the deepfake to X several times a day and, finally, on the third day X removed the deepfake posted by Grok.

82.     The revealing deepfake of Plaintiff was publicly visible for three days and over one hundred persons viewed it before it was removed.

83.     Plaintiff missed work while she spent time trying to get the revealing deepfake posted by Grok removed from X, letting others know that Grok had created a deepfake of her so that they did not believe she had taken such a photo of herself, and dealing with the stress and anxiety it caused her. In total, Plaintiff missed four hours of work on January 3, 2026 and approximately one hour of work on January 5, 2026.

84.     The time Plaintiff missed from work to deal with the Deepfake was unpaid.

85.     Plaintiff continues to fear the further dissemination of the Deepfake in which she is depicted, the further alteration of the deepfake, and the creation of additional deepfakes depicting her.

86.     Had xAI implemented industry-standard safeguards to prevent the creation of revealing and sexualized deepfakes or acted promptly to stop Grok from creating posting deepfakes on x, Plaintiff would not have been harmed.

87.     xAI's continued failure to address the underlying issues that led to the Deepfake's creation means that there is nothing prevent a Grok-created deepfake of Plaintiff from being

1    posted on X again.

2                    **CLASS ACTION ALLEGATIONS**

3        88.    This action is brought, and may properly be maintained, as a class action under

4    Fed. R. Civ. P. 23.

5        89.    Plaintiff asserts claims on behalf of the proposed Nationwide Class and State

6    Subclasses, defined as follows:

7        **Nationwide Class**: All persons in the United States that, within the statute of
         limitations (the "Class Period"), have been depicted in sexualized or revealing
8        deepfakes created and disseminated by Grok without their consent.

9        **South Carolina Subclass**: All persons in South Carolina that, within the statute
10       of limitations (the "Class Period"), have been depicted in sexualized or revealing
         deepfakes created and disseminated by Grok without their consent.
11

12       90.    The Nationwide Class and South Carolina Subclass each meet the standard for

13   certification pursuant to both Federal Rule 23(b)(2) and Rule 23(b)(3).

14       91.    The claims of the South Carolina Subclass members are brought in the alternative

15   in the event that the Court determines that California law (as xAI is headquartered in California

16   and Grok is operated from California) does not apply to all Class members.

17   **A.  Numerosity**

18       92.    Class members are so numerous that joinder of all members is impracticable.

19   Plaintiff is informed and believes that the proposed Nationwide Class and State Subclasses each

20   contain hundreds of individuals who have been damaged by xAI's conduct as alleged herein. The

21   precise number of class members is unknown to Plaintiff.

22   **B.  Commonality**

23       93.    This action involves common questions of law and fact, which predominate over

24   any questions affecting individual class members. These common legal and factual questions

25   include, but are not limited to, the following:

26       a.    whether Grok appropriated Class members' likenesses when creating and

27   posting the sexualized or revealing deepfake's for xAI's commercial advantage;

---
                                                    CLASS ACTION COMPLAINT - 13

1    b.    whether Grok's ability to undress nonconsenting women and girls is a

2    unique quality that results in commercial profit to xAI;

3    c.    whether Grok used Class members' likeness for purposes of advertising,

4    selling, or soliciting purchases of xAI's paid services;

5    d.    whether Grok created and posted the sexualized or revealing deepfakes of

6    Class members knowing they were false;

7    e.    whether the sexualized or revealing deepfakes of Class members were

8    defamatory on their face;

9    f.    whether xAI had a duty to manage Grok in a way so as not to harm Class

10    members;

11    g.    whether it was foreseeable that Grok would harm Class members;

12    h.    the moral blame attached to xAI's conduct;

13    i.    whether xAI's conduct was extreme and outrageous;

14    j.    whether the benefits of designing Grok to undress women outweighed the

15    risk of danger inherent in such design;

16    k.    whether xAI's conduct is unfair;

17    l.    whether xAI's conduct constitutes violations of the laws asserted; and

18    m.    whether an injunction is necessary to prevent xAI from continuing to

19    create AI-generated sexualized or revealing deepfakes of women.

20    **C. Typicality**

21    94.    Plaintiff's claims are typical of the claims of class members because, *inter alia*, all

22    class members have been subject to xAI's conduct on X, as alleged herein. Plaintiff is advancing

23    the same claims and legal theories on behalf of themselves and all class members.

24    **D. Adequacy**

25    95.    Plaintiff will fairly and adequately protect the interests of class members. Plaintiff

26    has retained counsel experienced in complex consumer class action litigation, and Plaintiff

27    intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interest to

those of the Nationwide Class or State Subclasses.

**E. Predominance and Superiority**

96.     The nature of this action and the nature of laws available to Plaintiff and class members make the use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff and class members for the wrongs alleged. The damages or other financial detriment suffered by individual class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of each of their claims against xAI. It would thus be virtually impossible for Plaintiff and class members, on an individual basis, to obtain effective redress for the wrongs done to them. Without this class action, class members and the general public would not likely recover, or would not likely have the chance to recover, damages and injunctive relief, and xAI would be permitted to continue to exploit nonconsenting women and girls for its commercial profit.

**F. Defendant has Acted Uniformly as to Class Members**

97.     The nature of xAI's conduct was uniform as to all class members, so final injunctive relief or corresponding declaratory relief is appropriate respecting the Nationwide Class and State Subclasses as a whole.

## CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF**
**Strict Liability – Design Defect**
**(On Behalf of Plaintiff and the Nationwide Class and, in the alternative, the South Carolina Subclass)**

98.     Plaintiff realleges and incorporates by reference the allegations previously set forth in this Complaint as if fully set forth herein.

99.     At all relevant times, Defendants designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from Grok.

100.     X users used Grok as intended or in reasonably foreseeable ways. Defendants knew or should have known that Grok would create sexualized or revealing deepfakes and

publicly disseminate the deepfakes on X.

101.    Without limitation, Grok is defective by (1) failing to implement safeguards to ensure that individuals would only be featured in sexualized or revealing images with their consent; (2) creating a process that causes Grok to create sexualized or revealing deepfakes; (3) creating a process whereby Grok disseminated sexualized or revealing deepfakes; and (4) failing to design Grok to delete its own X posts with sexualized or revealing deepfakes once a person depicted requested that the image be removed.

102.    Grok is unreasonably dangerous as designed.

103.    The risks inherent in the design of Grok are significantly outweighed by any benefit of such design.

104.    Defendants could have used cost-effective, reasonably feasible alternative designs to minimize harm to Plaintiff, including but not limited to implementing the safeguards described in Section IV.D. above, by prohibiting Grok from publicly posting deepfakes on X, and enabling Grok to delete posts with nonconsensual deepfakes.

105.    Plaintiff and Class members were injured as a direct and proximate cause of Grok's design defects. These design defects are a substantial factor in causing harm to Plaintiff and Class members.

106.    As a direct and proximate cause of Grok's design defects, Plaintiff and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

**SECOND CLAIM FOR RELIEF**
**Strict Liability – Manufacturing Defect (in the alternative to the First Claim for Relief)**
**(On Behalf of Plaintiff and the Nationwide Class and, in the alternative, the South Carolina Subclass)**

107.    Plaintiff realleges and incorporates by reference the allegations previously set forth in this Complaint as if fully set forth herein.

108.    Plaintiff alternatively alleges that Plaintiff's and the Class's harms resulted from a manufacturing defect.

109.    At all relevant times, Defendants designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, sold, supplied, distributed, and benefitted from Grok.

110.    Grok is defective because it creates sexualized or revealing deepfakes and publicly disseminates those deepfakes.

111.    This defect results in Grok being unreasonably dangerous.

112.    This defect was present when Grok left Defendants' control and became available for creating and disseminating sexualized or revealing deepfakes.

113.    X and Grok users used Grok as intended or in reasonably foreseeable ways.

114.    As a direct and proximate cause of Grok's manufacturing defects, Plaintiff and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

**THIRD CLAIM FOR RELIEF**
**Negligence**
**(On Behalf of Plaintiff and the Nationwide Class and, in the alternative, the South Carolina Subclass)**

115.    Plaintiff realleges and incorporates by reference the allegations previously set forth in this Complaint as if fully set forth herein.

116.    At all relevant times, Defendants designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from Grok.

117.    Defendants owe a duty to use ordinary care in designing, maintaining, and distributing Grok.

118.    Defendants owe a duty of care to individuals whose photographs it alters, including Plaintiff and Class members, to prevent foreseeable harm from the use of Grok.

119.    In particular, Defendants owe a duty of care to individuals whose photographs Grok alters, including Plaintiff and Class members, to take reasonable to steps to prevent sexualized or revealing deepfakes from being created and disseminated by Grok.

120.    Defendants knew or should have known that the integration of Grok's image generating capabilities with X and the @Grok account would lead to harm to individuals whose photographs Grok altered, including Plaintiff and Class members. Defendants knew or should have known that X was a haven for sexualized or revealing deepfakes and that Grok's image generations functionality was used to create such deepfakes.

121.    Defendants knew or should have known that, to prevent harm to individuals whose Grok altered through the creation of sexualized or revealing deepfakes, additional guardrails were necessary before releasing Grok's image generation functionality on X and that Grok should have been enabled to delete its own X posts with sexualized or revealing deepfakes once a person depicted requested that the image be removed.

122.    Defendants breached these duties by designing, developing, implementing, and managing a product, Grok, to create and disseminate deepfakes depicting individuals including Plaintiff and Class members in a sexualized or revealing manner.

123.    Without limitation, Defendants breached their duty of care by (1) failing to implement the safeguards described in Section IV.D. above, (2) failing to prohibit Grok from publicly posting deepfakes on X, and (3) failing to enable Grok to delete posts with nonconsensual deepfakes.

124.    A reasonable company under the same or similar circumstances would have developed and operated its AI systems in a manner that does not result in the widespread creation and dissemination of create sexualized or revealing deepfakes.

125.    As a result of Defendants' negligence, Plaintiff and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

**FOURTH CLAIM FOR RELIEF|**
**Public Nuisance**
**(On Behalf of Plaintiff and the Nationwide Class and, in the alternative, the South Carolina Subclass)**

126.    Plaintiff realleges and incorporates by reference each and every allegation set forth

1   in the preceding paragraphs.

2      127.   A public nuisance is an unreasonable interference with a right common to the

3   general public and behavior that unreasonably interferes with the health, safety, peace, comfort,

4   or convenience of the general community. Restatement (Second) of Torts § 821B (1979).

5      128.   The public has a right to be free of nonconsensual sexualized or revealing

6   deepfakes. This right derives from the right to peace, which is infringed by the creation and

7   dissemination of nonconsensual sexualized or revealing deepfakes by Grok.

8      129.   This right also derives from the right to privacy, which is infringed by the risk that

9   any image can be altered in a nonconsensual sexualized or revealing deepfakes and disseminated

10  by Grok.

11     130.   This right also derives from the right to comfort, which is infringed by the

12  harassment and abuse that comes from the creation and dissemination of nonconsensual

13  sexualized or revealing deepfakes by Grok.

14     131.   This right also derives from the right to health and safety because the creation and

15  dissemination of nonconsensual sexualized or revealing deepfakes by Grok has a serious impact

16  on the mental health of individuals depicted in such deepfakes and promotes the cultural

17  normalization of image-based sexual abuse.

18     132.   Defendants knew, or should have known, that the design, development,

19  production, operation, promotion, distribution, and marketing of Grok and the integration of its

20  image generating functionality on X without the appropriate guardrails would create a public

21  nuisance.

22     133.   Defendants have specifically designed Grok to create "spicy" content, including

23  videos and images of non-consenting individuals in the nude, and released Grok's image

24  generation capabilities on X, a haven for nonconsensual sexualized or revealing deepfakes.

25  Defendants also designed Grok to publicly disseminate such deepfakes.

26     134.   While Defendants' actions have affected the public at large by proliferating

27  sexualized or revealing deepfakes across the internet, Plaintiff and Class members are specially

affected as the individuals who are depicted in these deepfakes. Plaintiff and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm as a result of Defendants' public nuisance.

135.    To compensate for past harms and avoid future harm, Plaintiff and Class members are entitled all appropriate compensatory, injunctive, and equitable relief, including an abatement remedy.

### FIFTH CLAIM FOR RELIEF
### Common Law Right of Privacy – Appropriation
### (On Behalf of Plaintiff and the Nationwide Class and, in the alternative, the South Carolina Subclass)

136.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

137.    The common law protects persons from the unauthorized appropriation of the person's identity by another for commercial gain.

138.    Defendants knowingly used Plaintiff's and Class members' likenesses to sell a product or service—Grok itself.

139.    Defendants did not obtain Plaintiff's or Class members' consent to use their likenesses.

140.    Plaintiff and Class members received no compensation or consideration for the use of their likenesses.

141.    Plaintiff and Class members were harmed by Defendants' use of their likenesses. As a result of Defendants' conduct, all Plaintiff and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

142.    Defendants' actions were a substantial factor in causing Plaintiff and Class members' harm.

143.    The creation of revealing or sexualized deepfakes was not used in conjunction with news, public affairs, a sports broadcast or account, or a political campaign.

**SIXTH CLAIM FOR RELIEF**
**Violation of California's Statutory Right of Publicity Cal. Civ. Code § 3344**
**(On Behalf of Plaintiff and the Nationwide Class)**

144.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

145.    California's Right of Publicity Statute, Cal. Civ. Code § 3344, protects persons from the unauthorized appropriation of the person's identity by another for commercial gain.

146.    California's Right of Publicity Statute allows any injured party to recover "an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by them as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages." Cal. Civ. Code § 3344(a).

147.    Defendants knowingly used Plaintiff's and Class members' likenesses to advertise, sell, or solicit purchases of Grok.

148.    Defendants did not obtain Plaintiff's or Class members' consent to use their likenesses.

149.    Plaintiff and Class members received no compensation or consideration for the use of their likenesses.

150.    Plaintiff and Class members were harmed by Defendants' use of their likenesses. As a result of Defendants' conduct, Plaintiff and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

151.    Defendants' actions were a substantial factor in causing Plaintiff and Class members' harm.

152.    The creation of revealing or sexualized deepfakes was not used in conjunction with news, public affairs, a sports broadcast or account, or a political campaign.

1

2

**SEVENTH CLAIM FOR RELIEF**
**Defamation**
**(On Behalf of Plaintiff and the Nationwide Class and, in the alternative, the South Carolina Subclass)**

3

4

153.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

5

6

7

8

9

10

154.    Defendants created and disseminated images of Plaintiff and Class members that were presented as factual but were actually false or created a false impression about Plaintiff and Class members. Among other false impressions, Defendants gave the false impression that Plaintiff and Class members were actually photographed in a revealing or sexualized manner. Defendants also gave the false impression that Plaintiff and Class members were photographed in a revealing or sexualized manner with their consent.

11

12

13

14

15

16

17

155.    The information conveyed by Defendants' revealing or sexualized deepfakes was understood by one or more persons to whom it was disclosed as stating or implying something highly offensive that would have a tendency to injure the reputations of Plaintiff and Class members. The images created and disseminated through Grok insinuated that Plaintiff and Class members voluntarily post sexualized or revealing photographs of themselves online and/or engaged in the behavior and conduct depicted or implied by the images. This reputational harm gives rise to presumed damages.

18

19

20

21

22

156.    Defendants acted with malice. Defendants specifically designed Grok to create "spicy" content, including videos and images of non-consenting individuals in the nude, and released Grok's image generation capabilities on X, a haven for nonconsensual sexualized or revealing deepfakes. Defendants also designed Grok to publicly disseminate such deepfakes and failed to stop the conduct after the harm it was inflicting was readily apparent.

23

24

25

26

157.    Plaintiff and Class members were damaged by the publication of sexualized or revealing deepfakes. As a result of Defendants' conduct, Plaintiff and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

27

1
2

**EIGHTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**
**(On Behalf of Plaintiff and the Nationwide Class and, in the alternative, the South Carolina Subclass)**

3
4

158.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

5
6
7
8
9
10
11

159.    Defendants engaged in extreme and outrageous conduct by (1) failing to implement safeguards to ensure that individuals would only be featured in sexualized or revealing images with their consent; (2) creating a process that causes Grok to create sexualized or revealing deepfakes; (3) creating a process whereby Grok disseminated sexualized or revealing deepfakes; and (4) failing to design Grok to delete its own X posts with sexualized or revealing deepfakes once a person depicted requested that the image be removed. This extreme and outrageous conduct is beyond all bounds of decency.

12
13
14

160.    Defendants intended to cause, or disregarded a substantial probability of causing, severe emotional distress to individuals who are depicted in sexualized or revealing deepfakes depicting Plaintiff and Class members.

15
16
17

161.    Defendants caused Plaintiff and Class members severe emotional distress. As a result of Defendants' conduct, Plaintiff and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

18
19
20

**NINTH CLAIM FOR RELIEF**
**Intrusion into Private Affairs**
**(On Behalf of Plaintiff and the Nationwide Class and, in the alternative, the South Carolina Subclass)**

21
22

162.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

23
24
25
26
27

163.    Plaintiff and Class members have reasonable expectations of privacy in controlling the creation of images that depict them in a sexualized or revealing manner. Defendants' creation of images that depict Plaintiff's and Class members' bodies in a sexualized or revealing manner, without Plaintiff's or Class members' consent, violates the privacy of Plaintiff and Class

members.

164.    The reasonableness of such expectations of privacy is supported by the large public outcry against Defendants.

165.    Defendants intruded on and into Plaintiff and Class members' solitude, seclusion, right of privacy, or private affairs by intentionally (1) failing to implement safeguards to ensure that individuals would only be featured in sexualized or revealing images with their consent; (2) creating a process that causes Grok to create sexualized or revealing deepfakes; (3) creating a process whereby Grok disseminated sexualized or revealing deepfakes; and (4) failing to design Grok to delete its own X posts with sexualized or revealing deepfakes once a person depicted requested that the image be removed.

166.    These intrusions are highly offensive to a reasonable person, because they disclosed revealing or sexualized deepfakes depicting Plaintiff and Class members, constituting an egregious breach of social norms. Also supporting the highly offensive nature of Defendants' conduct is the intended purpose of Grok's features. Grok was intended to be "spicy" and to create and disseminate revealing and sexualized images of individuals who do not consent to be featured.

167.    Plaintiff and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint. Plaintiff and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

168.    Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and Class members.

**TENTH CLAIM FOR RELIEF**
**Violation of Article I, Section 1 of the California Constitution**
**(On Behalf of Plaintiff and the Nationwide Class)**

169.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

170.    Plaintiff and Class members have reasonable expectations of informational

privacy in controlling the alteration and dissemination of images that depict them in a sexualized or revealing manner.

171.    Plaintiff and Class members have reasonable expectations of autonomy and privacy. Plaintiff and Class members have a privacy interest in precluding the creation and dissemination of images that force them to look a certain way or take a certain action. Defendants' creation and dissemination of images that depict Plaintiff's and Class members' bodies in a sexualized or revealing manner, without Plaintiff's or Class members' consent, violates the autonomy privacy of Plaintiff and Class members.

172.    Defendants intruded on and into Plaintiff's and Class members' solitude, seclusion, right of privacy, or private affairs by (1) failing to implement safeguards to ensure that individuals would only be featured in sexualized or revealing images with their consent; (2) creating a process that causes Grok to create sexualized or revealing deepfakes; (3) creating a process whereby Grok disseminated sexualized or revealing deepfakes; and (4) failing to design Grok to delete its own X posts with sexualized or revealing deepfakes once a person depicted requested that the image be removed.

173.    These intrusions are highly offensive to a reasonable person, because they disclosed embarrassing deepfakes depicting Plaintiff and Class members, constituting an egregious breach of social norms.

174.    Plaintiff and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint. Plaintiff and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

175.    Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and Class members.

**ELEVENTH CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**(On Behalf of Plaintiff and the Nationwide Class)**

176.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

177.    Plaintiff and Class members bring this claim on behalf of themselves and the members of the proposed Nationwide Class against Defendants for violations of California's UCL, Cal. Bus. & Prof. Code § 17200, *et seq*.

178.    The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

179.    The UCL imposes strict liability. Plaintiff and Class members need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

***"Unfair" Prong***

180.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

181.    Defendants' actions constitute "unfair" business practices because, as alleged above, Defendants are exploiting nonconsenting women for their own profit through the creation and dissemination of sexualized or revealing deepfakes. Defendants' acts and practices offended an established public policy of the right to privacy, and constituted immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

182.    The harm to Plaintiff and Class members outweighs the utility of Defendants' practices because Defendants' practice of creating and disseminating sexualized or revealing images of individuals without their consent provides no utility. There were reasonably available alternatives to further xAI's legitimate business interests other than unfair conduct described

herein.

*"Unlawful" Prong*

183.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

184.    Defendants' acts and practices, as alleged above, constitute unlawful business acts or practices as it has violated state law.

185.    As detailed herein, the acts and practices alleged were intended to or did result in violations of the California Constitution and Cal. Civ. Code § 3344.

186.    Consequently, Defendants' practices constitute an unlawful and unfair business practices within the meaning of the UCL.

187.    Defendants' violations of the UCL, through its unlawful and unfair business practices, are ongoing and present a continuing threat that Grok will continue to create and/or disseminate sexualized or revealing deepfakes of Plaintiff and Class members without their consent. These deepfakes have led to considerable lost time, reputational harm, emotional distress, harassment, loss of privacy, and substantial risk of future harm.

188.    Pursuant to the UCL, Plaintiff and Class members are entitled to preliminary and permanent injunctive relief enjoining Defendants from further engaging in this unfair competition, as well as disgorgement to Plaintiff and the proposed Class of all of Defendants' revenues that were wrongfully obtained from them as a result of its unfair competition, or such portion of those revenues as the Court may find equitable.

189.    Plaintiff further seeks an injunction on behalf of the public as enjoining the alleged conduct would help protect women from image-based abuse online and help to stop the normalization of the nonconsensual creation and dissemination of revealing or sexualized images.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of herself and on behalf of the other members of the Nationwide Class and South Carolina Subclass, request that this Court award relief against xAI as follows:

a.    an order certifying the Nationwide Class and South Carolina Subclass and designating Plaintiff as the Class Representatives and their counsel as Class Counsel;

b.    awarding Plaintiff and the proposed class members damages as permitted by law, including actual, compensatory, presumed, statutory, and punitive damages, as appropriate, including, without limitation, statutory damages pursuant to Cal. Civ. Code § 3344;

c.    awarding revenues in the amounts that xAI obtained from Plaintiff and the class members as a result of its unlawful and unfair business practices described herein;

d.    awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining xAI from continuing the unlawful, unfair, and damaging practices as set forth herein, abating any public nuisance the Court finds, and directing xAI to identify, with Court supervision, victims of its misconduct and pay them all money they are required to pay;

e.    entering a finding that xAI has created a public nuisance;

f.    entering an Order requiring xAI to abate the public nuisance described herein and to deter and/or prevent the resumption of such nuisance;

g.    retaining jurisdiction to monitor xAI's compliance with permanent injunctive relief;

h.    a public injunction pursuant to California's Unfair Competition Law;

i.    awarding attorneys' fees and costs; and

j.    for such other and further relief as the Court may deem necessary or appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a jury trial for all of the claims so triable.

Dated: January 23, 2026                    Respectfully submitted,

BERGER MONTAGUE PC

*/s/Sophia M. Rios*
Sophia M. Rios, SBN 305801
8241 La Mesa Blvd., Suite A
La Mesa, CA 91942
Tel: (619) 489-0300

CLASS ACTION COMPLAINT - 28

srios@bergermontague.com

E. Michelle Drake*
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel: (612) 594-5999
emdrake@bergermontague.com

James Hannaway*
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Tel: (202) 559-9740
jhannaway@bergermontague.com

* *pro hac vice* forthcoming

*Counsel for Plaintiff*