Sophia M. Rios (SBN 305801)
**BERGER MONTAGUE PC**
8241 La Mesa Blvd, Suite A
La Mesa, CA 91942
Tel: (619) 489-0300
Fax: (612) 584-4470
srios@bergermontague.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| JANE DOE, SOUTH CAROLINA ROE, NEW JERSEY DOE, and OHIO DOE on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>X.AI CORP. and X.AI LLC,<br><br>        Defendants. | Case No. 5:26-cv-00772-PCP<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jane Doe ("South Carolina Doe"), South Carolina Roe, New Jersey Doe, and Ohio Doe bring this class action, on behalf of themselves and all others similarly situated, against Defendants xAI Corp. and xAI LLC (together, "xAI" or "Defendant") over xAI's product Grok, a generative artificial intelligence ("AI") model that humiliates and sexually exploits women, girls, and others by altering real photos of them so that they are undressed and/or posed in sexual positions or featured in explicit videos. Shockingly, Grok also creates illegal child sex abuse material (CSAM). These deepfake images and videos are created and disseminated by Grok and often then further distributed online by the harassers and predators that Grok enables. Even worse, xAI publicly posts disturbing content on social media platforms itself, including X and Telegram. The non-consensual revealing and sexualized deepfakes created by xAI have seriously harmed the individuals depicted, and, because they can never be erased, place them at risk of further future harm.

## GENERAL ALLEGATIONS

1.    A deepfake is a video or image in which a person's face, body, or voice has been digitally altered by AI so that they appear to be doing something they did not actually do, typically used maliciously or to spread false information.

2.    Deepfakes are a significant and growing form of online harassment, predominantly used to target and abuse people, typically women and girls, through the creation and dissemination of non-consensual and illegal sexually explicit content. Deepfakes are invasive and violate the consent of the person's whose face or body is used.

3.    Over the past few years, there have been numerous instances of non-consensual deepfakes making national headlines, including celebrities like Taylor Swift[1] and Jenna Ortega[2]

---

[1] BBC, *Taylor Swift deepfakes spark calls in Congress for new legislation*, https://www.bbc.com/news/technology-68110476 (Jan. 27, 2024).

[2] NBC NEWS, *Jenna Ortega says she deleted Twitter after seeing explicit AI images of herself as a minor*, https://www.nbcnews.com/tech/jenna-ortega-left-twitter-x-ai-generated-explicit-images-minor-rcna168124 (Aug. 25, 2024).

as well as high school students like Francesca Mani.[3]

4.      With the rise of AI, the use of deepfakes for harassment is only getting worse. AI makes manipulating images and videos of real people to realistically portray fake situations as easy as typing in a prompt and hitting a button.

5.      However, nearly all the companies creating, marketing, and selling AI recognize the dangers of such a tool and have enacted industry-standard guardrails that prevent the use of their products to create nonconsensual deepfakes of a real persons and to ensure compliance with state and federal law.

6.      xAI did not. Instead, xAI—and its founder Elon Musk—have chosen to capitalize on predators' insatiable appetite for non-consensual sexual images and videos of real people, including children. xAI's product Grok has not only failed to conform to industry standards, but it has also aggressively touted its noncompliance as a selling point. xAI comes with a "spicy" mode known for generating revealing and sexualized deepfakes.

7.      xAI has profited from and proliferated this type of sexual abuse by enabling its AI model to create and disseminate such images and videos and making the tools it created available to child predators and harassers on Grok.com, on the Grok mobile application, through the Grok account on X, the Grok account on Telegram, and by licensing the AI model to third-party companies that publish mobile applications that are marketed for their ability to undress or "nudify" individuals without their consent.

8.      This form of sexual abuse has devastating psychological and real-life consequences for victims. Individual harms include violations of mental and physical integrity, autonomy, dignity, privacy, and sexual expression. Moreover, being subject to such conduct creates substantial amounts of stress, anxiety, and fear as AI-generated deepfakes, once disseminated online, can be replicated multiple times, shared and stored on privately-owned

---

[3] THE NEW YORK TIMES, *Teen Girls Confront an Epidemic of Deepfake Nudes in Schools*, https://www.nytimes.com/2024/04/08/technology/deepfake-ai-nudes-westfield-high-school.html (Apr. 8, 2024).

devices, making them difficult to locate and remove.

9. Children in particular will have to spend the rest of their lives knowing that their images and videos may continue to be trafficked and traded online by child sex predators. They will live every day with the constant anxiety of not knowing whether someone they encounter has seen this invasive and sexually explicit content created with images of them as children.

10. This type of abuse also inflicts collective harms on the public by normalizing child sexual abuse and nonconsensual sexual activity and contributing to a culture that accepts creating and/or distributing nonconsensual sexual images without consent. It also places everyone—but most of all women and girls—at risk of being subject to this conduct. Harassers and predators can use Grok to alter an image they find anywhere—on Instagram, Facebook, a yearbook, or a family photo album. No one is immune.

11. xAI's conduct is despicable and has harmed thousands of individuals who were digitally stripped and forced into sexual situations that they never consented to and who now face the very real risk that those public images will surface in their lives where viewers may not be able to distinguish whether they are real or fake.

12. The scale of the harassment and abuse perpetrated by xAI is hard to comprehend. For example, in just eleven days, from December 29th to the end of January 8th, xAI created and posted publicly on X more than approximately 3 million sexualized images, including over 23,000 images that appear to depict children.[4] This public snapshot of Grok's capabilities showcased how xAI's technology is being used. xAI's non-public dissemination of nonconsensual sexualized and revealing deepfakes is harder to quantify.

13. Through this action, Plaintiffs, on behalf of themselves, and others similarly situated, seek to recover under California law for xAI's misconduct.

---

[4] CENTER FOR COUNTERING DIGITAL HATE, *Grok Floods X with Sexualized Images of Women and Children*, https://counterhate.com/research/grok-floods-x-with-sexualized-images/ (Jan. 22, 2026).

**JURISDICTION AND VENUE**

14.    The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332(a)(1), and 1367(a) because this action arises under the 18 U.S.C. §§ 2252, 2252A, and 18 U.S.C. §§ 1595, 1591(a)(1), 1594; there is diversity among the parties and an amount in controversy over $75,000; and the Court may exercise supplemental jurisdiction over the state claims.

15.    This Court also has jurisdiction under the Class Action Fairness Act because class members and xAI are citizens of different states, the matter in controversy exceeds $5,000,000, and there are at least 100 members of the Class.

16.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in Palo Alto, CA and San Francisco, CA. Additionally, venue is proper in this Court under 18 U.S.C. § 1965(a) because xAI resides in in this District and Division.

17.    The **Divisional Assignment.**    Under Civ. L.R. 3-2(c), this action should be assigned to the San Jose Division, as the claims arise from events occurring, in part, in Palo Alto, CA and both Defendant's headquarters are at 1450 Page Mill Rd, Palo Alto, CA 94304.

**THE PARTIES**

18.    South Carolina Roe is a natural person residing in South Carolina. The image of South Carolina Doe altered by Grok depicts South Carolina Roe when she is around 5 years old.

19.    New Jersey Doe is a natural person residing in New Jersey.

20.    Ohio Doe is a natural person residing in Ohio.

21.    South Carolina Doe is a natural person residing in South Carolina.

22.    xAI LLC is a Nevada limited liability company and wholly owned subsidiary of xAI Corp. It's principal address is 1450 Page Mill Rd, Palo Alto, CA 94304.

23.    xAI Corp. is a Nevada corporation with a principal address of 1450 Page Mill Rd, Palo Alto, CA 94304. It also maintains offices in San Francisco, CA.

24.    xAI owns the generative AI model known as Grok.

25.    The conduct alleged in this Complaint by xAI emanated from California.

26. The xAI employees primarily responsible for operating, maintaining, and managing Grok, including its image and video generation capabilities, are located in California.

27. xAI also marketed, sold, and distributed Grok from California.

28. Moreover, xAI's production, possession, and distribution of AI-generated deepfakes occurred, in substantial part, in California.

29. xAI also received the financial benefit of derived from the conduct, including participating in the production, possession, and distribution of deepfakes while in California.

## FACTUAL ALLEGATIONS

### A. xAI and Grok

30. Grok is a generative AI model created by xAI.

31. Grok-1 was launched as a chatbot on November 3, 2023 through Grok.com and the Grok app. Among the selling points xAI made for Grok was that it "has a rebellious streak" and "will also answer spicy questions that are rejected by most other AI systems."[5] Grok-1 did not have any visual or audio capabilities.

32. On August 13, 2024, xAI announced Grok-2 and Grok-2 mini. Premium and Premium+ users of X had access to these two new models through an integration on X, the social networking service formerly known as Twitter.[6] As a chatbot on X, users prompt Grok by tagging @grok in a post, after which Grok will respond to the prompt.

33. On December 9, 2024, xAI updated Grok's capabilities "with a new autoregressive image generation model, code-named Aurora." As the announcement explained, xAI "trained the model on billions of examples from the internet, giving it a deep understanding of the world. As a result, it excels at photorealistic rendering and precisely following text instructions."[7]

34. On December 12, 2024, Grok was made available to all X users for free. Though,

[5] xAI, *Announcing Grok*, https://web.archive.org/web/20251217091612/https://x.ai/news/grok (Nov. 3, 2023).
[6] xAI, *Grok-2 Beta Release*, https://x.ai/news/grok-2 (Aug. 13, 2024).
[7] xAI, *Grok Image Generation Release*, https://x.ai/news/grok-image-generation-release (Dec. 9, 2024).

"[a]s always, Premium and Premium+ users get higher usage limits and will be the first to access any new capabilities in the future."[8]

35. On February 19, 2025, xAI released Grok 3 on Grok.com and to X Premium and Premium+ users.[9]

36. On or around March 26, 2025, xAI made Grok available on the social media platform Telegram to Telegram premium subscribers. Later in the summer of 2025, Grok was made available through Telegram to all Telegram users.

37. On July 9, 2025, xAI announced Grok-4 as "the most intelligent model in the world" available only to SuperGrok and Premium+ subscribers initially.[10]

38. On July 14, 2025, xAI released two AI Companions, including an anime-style female character, who is called "Ani." xAI designed Ani to describe sexual scenarios in intimate detail. xAI also created a "Spicy Mode" for Ani which show the AI companion in lingerie.[11]

39. Within two days of the release of the companions, the National Center on Sexual Exploitation ("NCOSE") released a press release warning about the risks associated with the chatbot. The release warned that, "[w]ith minimal testing," Ani "was willing to describe itself as a child in response to one question and then in response to another question immediately following it to go on to describe sexual scenarios include child-like motifs."[12]

40. Right before the launch of Grok's image generation feature, Grok Imagine, on August 4, 2025, a senior Grok employee noted on July 24, 2025 that xAI "urgently" needed

---

[8] XAI, *Bringing Grok to Everyone*, https://x.ai/news/grok-1212 (Dec. 12, 2024).
[9] XAI, *Grok 3 Beta — The Age of Reasoning Agents*, https://x.ai/news/grok-3 (Feb. 19, 2025).
[10] XAI, *Grok 4*, https://x.ai/news/grok-4 (Jul. 9, 2025).
[11] BUSINESS INSIDER, *I used Grok's AI companions for a week. The foul-mouthed red panda is hilarious – the flirty anime girl is worrying.*, https://www.businessinsider.com/grok-bad-rudi-ani-levels-ai-companion-xai-elon-musk-2025-7 (Jul. 23, 2025).
[12] NAT'L CENTER ON SEXUAL EXPLOITATION, *XAI's 12+ Chatbot Designed to "Be Explicit" and "Go Full Literotica,"* https://endsexualexploitation.org/articles/xais-12-chatbot-designed-to-be-explicit-and-go-full-literotica/ (Jul. 16, 2025).

engineers and researchers to work on the xAI "safety team."[13] When a X user asked "xAI does safety?!!!", the xAI employee stated, "working on it."[14]

41.    Without any apparent safety features, Grok launched its image and video generation feature, Grok Imagine, on August 4, 2025. In a now-deleted post on X from July 2025, one xAI employee boasted that "Grok Imagine videos have a spicy mode that can do nudity."[15]

**B.  Grok Creates and Disseminates Non-Consensual Sexualized and Revealing Deepfakes**

42.    xAI describes Grok Imagine's "Spicy Mode" as a "capability that pushes the boundaries of visual storytelling and creative expression in AI-generated video." A Grok spokesperson described spicy mode as "for creators exploring edgier, more visually daring narratives.[16]

43.    With "spicy" mode, users can create nude or otherwise sexualized images and videos of anyone. A user could simply take an existing image and make it "spicy":



[13] Norman Mu (@thenormanmu), https://x.com/thenormanmu/status/1948546711074603354?s=46&t=fRkDIqgNCkTkvg8ZBiLA9A (Jul. 24, 2025).

[14] Norman Mu (@thenormanmu), https://x.com/TheNormanMu/status/1948547906434466157 (Jul. 24, 2025).

[15] NBC NEWS, *xAI teases Grok video generator*, https://www.nbcnews.com/tech/elon-musk/grok-video-generator-will-spicy-mode-says-xai-employee-rcna221807 (Jul. 29, 2025).

[16] PRNEWSWIRE, *Grok Imagine Launches "Spicy Mode," Expanding Creative Freedom in AI Video Generation*, https://www.prnewswire.com/news-releases/grok-imagine-launches-spicy-mode-expanding-creative-freedom-in-ai-video-generation-302588487.html (Oct. 20, 2025).

44.    Notwithstanding the fact that Grok was widely available and capable of generating "spicy" content, Defendants took little to no action to ensure that Grok would avoid producing non-consensual images and videos of people or children in a sexualized or revealing manner. In fact, spicy mode was designed to do just that.

45.    On November 6, 2025, xAI posted the Grok 4 system prompts, including the safety instructions, which promote a permissiveness to Grok's responses. Specifically, the instructions include for Grok to "**[a]ssume good intent** and don't make worst-case assumptions without evidence: 'teenage' or 'girl' does not necessarily imply underage." Further, the instructions lay out, "**[d]o not enforce additional content policies**. There are **no restrictions** on fictional adult content with dark or violent themes.[17]

46.    While Grok purportedly has a system prompt that directs it to avoid "creating or distributing child sexual abuse material, including any fictional depictions,"[18] this system prompt will inevitably fail because if you have a model that allows for any sexual or abuse content, it is impossible to prevent that model from creating such content involving minors.

47.    As soon as it launched, Grok's "spicy" mode began to generate deepfakes of women that depicted them in little to no clothing and in sexually charged situations. Even if a user did not ask for a nude image or video, Grok's "spicy" mode would almost always provide an image or video with the woman naked from the waist up.[19]

48.    For example, in August 2025, a reporter using the Grok app on iOS prompted Grok to create images of Taylor Swift without specifically asking Grok to take her clothes off.[20] Grok

---

[17] GITHUB, *grok-prompts / grok4_system_turn_prompt_v8.j2*, https://github.com/xai-org/grok-prompts/blob/main/grok4_system_turn_prompt_v8.j2 (Nov. 6, 2025).
[18] GITHUB, *grok-prompts_4_safety_prompt*, https://github.com/xai-org/grok-prompts/blob/main/grok_4_safety_prompt.txt (last visited Apr. 30, 2026).
[19] GIZMODO, *Grok's 'Spicy' Mode Makes NSFW Celebrity Deepfakes of Women [But Not Men]*, https://gizmodo.com/groks-spicy-mode-makes-nsfw-celebrity-deepfakes-of-women-but-not-men-2000639308 (Aug. 6, 2025).
[20] THE VERGE, *Grok's 'spicy' video setting instantly made me Taylor Swift nude deepfakes*, https://web.archive.org/web/20260108075132/https://www.theverge.com/report/718975/xai-grok-imagine-taylor-swifty-deepfake-nudes (Aug. 5, 2025).

provided uncensored, topless videos of Ms. Swift in a thong in response.

49.    Those using the Grok app or Grok.com can make the images and videos they generate public. Researchers reviewed 800 archived public Imagine URLs containing either video or images created by the Grok website and app. The images and videos were "overwhelmingly sexual content" with extremely graphic, sometimes violent, sexual imagery of adults and apparent minors.[21] Researchers estimated that just under 10% of the public images and videos were related to CSAM.[22]

50.    The public Imagine URLs are just a small snapshot of how xAI's product is being used. A larger public snapshot is available through the public activity of the @grok account on X.

51.    xAI first added an image generation feature to the @grok chatbot on X in December 2024 with the release of Aurora.[23] With this feature, a premium X user could simply tag @grok in a post on X prompting it to create or edit an image. @grok would then respond by publicly posting the image it created in response.

52.    It took no time for X users to begin using Grok to create and publicly disseminate sexualized or revealing deepfakes. It was first reported in May 2025 that Grok would respond to prompts on X to "remove her clothes" with partially nude images.[24]

53.    After the feature was made available to all X users on December 24, 2025, Grok received hundreds of thousands of increasingly explicit prompts to create images of women and minors stripped down to revealing bikinis.

---

[21] WIRED, *Grok Is Generating Sexual Content Far More Graphic Than What's on X*, https://www.wired.com/story/grok-is-generating-sexual-content-far-more-graphic-than-whats-on-x/ (Jan. 7, 2026.

[22] *Id*.

[23] xAI, *Grok Image Generation Release*, https://x.ai/news/grok-image-generation-release (Dec. 9, 2024).

[24] STRAIGHT ARROW NEWS, *Grok used to undress women in photos, as Congress considers online abuse bills*, https://san.com/cc/grok-used-to-undress-women-in-photos-as-congress-considers-online-abuse-bills/#:~:text=Full%20story,users%20to%20do%20so%20is (May 7, 2025).

54.    As the trend picked up steam, the deepfakes became even more explicit, especially in the first week of 2026. Grok created images of "women to be dressed in transparent bikinis, then in bikinis made of dental floss, placed in sexualised positions, and made to bend over so their genitals were visible."[25] Other images "showed women with white liquid smeared across their faces, which appeared to mimic semen."[26]

55.    X users flooded Grok with such requests, and Grok obliged.

56.    xAI's conduct sparked widespread outrage. "This is exactly the abuse the TAKE IT DOWN law was written to stop. The law is crystal clear: it's illegal to make, share, OR keep these images up on your platform," Rep. Maria Salazar, R-Fla., said in a statement. And Sen. Ted Cruz, R-Texas, posted on X stating: "These unlawful images pose a serious threat to victims' privacy and dignity. They should be taken down and guardrails should be put in place."[27] Further, British Prime Minister Keir Starmer pointedly criticized the trend, stating: "This is disgraceful. It's disgusting. And it's not to be tolerated."

57.    xAI's response to these events was not to admit that it had made a mistake and to stop Grok from creating such images, as any morally responsible business would do. Instead, it determined to further exploit victims for additional commercial profit by limiting Grok's image generation capabilities on X to paid, premium X users on January 8, 2026.

58.    This change in policy obviously did not stop Grok from creating deepfakes—instead, it monetized it. Grok was now charging for what it used to do for free. And the requests did not slow down. On January 9, 2026, for example, researchers estimated that Grok was still

---

[25] THE GUARDIAN, *'Add Blood, Forced Smile': How Grok's Nudification Tool went Viral*, https://www.theguardian.com/news/ng-interactive/2026/jan/11/how-grok-nudification-tool-went-viral-x-elon-musk (Jan. 1, 2026).

[26] THE NEW YORK TIMES, *Elon Musk's A.I. Is Generating Sexualized Images of Real People, Fueling Outrage*, https://www.nytimes.com/2026/01/09/technology/grok-deepfakes-ai-x.html (Jan. 9, 2026).

[27] Senator Ted Cruz (@SenTedCruz), https://x.com/sentedcruz/status/2009005328709697848?s=46 (Jan. 7, 2026).

generating 1,500 such deepfakes per hour.[28]

59.    In January 2026, it was reported that the Grok integration on Telegram was being used to abuse and harass women and girls in the same way. Reporters characterized the images being created and disseminated by Grok on Telegram as "far worse" than those on X, including "Grok-generated videos of real women taking their clothes off and graphic nonconsensual videos of any kind of sexual act these users can imagine and slip by Grok's guardrails, including blowjobs, penetration, choking, and bondage."[29]

60.    Similarly, the images and videos disseminated by xAI through Grok.com and the Grok app are vastly more explicit than images created and published by Grok on X. These images, are disseminated by Grok to the user. The user is free to share the images and videos with anyone that they choose, or distribute publicly on the internet.[30]

61.    While xAI has made efforts since January 2026 to limit the harm caused by Grok, these efforts have been ineffective. For example, on January 15, 2026, xAI announced that Grok will no longer be able to edit photos of real people to show them in sexualized or revealing positions in some locations, but not others.[31] This new policy has limited the creation of sexualized or revealing deepfakes in the United Kingdom, for example.

62.    But xAI's new policy has done nothing to halt the creation of sexualized or revealing deepfakes across the United States. xAI is still making and publishing sexualized and

---

[28] THE WASHINGTON POST, *X responds to outcry over Grok's sexual images by charging users to create them*, https://www.washingtonpost.com/technology/2026/01/09/ai-sexual-images-grok-musk/ (Jan. 9, 2026).

[29] 404 MEDIA, *Inside the Telegram Channel Jailbreaking Grok Over and Over Again*, https://www.404media.co/inside-the-telegram-channel-jailbreaking-grok-over-and-over-again/ (Jan. 7, 2026).

[30] WIRED, *Grok Is Generating Sexual Content Far More Graphic Than What's on X*, https://www.wired.com/story/grok-is-generating-sexual-content-far-more-graphic-than-whats-on-x/ (Jan. 7, 2026).

[31] Grok (@safety), https://x.com/safety/status/2011573102485127562?s=46&t=WJk1XsCZ8sl9JUUP5FZJNw (Jan. 14, 2026).

revealing deepfakes, despite its supposed efforts to stop the conduct.[32]

63.    xAI has also failed to limit what can be generated on Telegram, Grok.com, the Grok app, and third party-apps. For example, Apple recently threatened to remove the Grok app from the App Store after xAI failed to address the generation of nonconsensual deepfakes and CSAM on the app.[33]

## C. xAI Profits from Grok's Nonconsensual Sexual Exploitation of Women and Girls

64.    On August 11, 2025, Musk defended Grok's spicy mode as a business decision, comparing it to the competition for dominant videotape format between VHS and Betamax and seemingly referencing the wider availability of pornographic videos on VHS than on Betamax:



65.    xAI offers several subscription plans to access Grok.

66.    Through the Grok app, users can purchase a "SuperGrok" subscription for $30/month, or a "SuperGrok Heavy" subscription for $300/month.

67.    xAI also sells Grok through Telegram. Grok is accessible to Telegram premium subscribers. A subscription costs $4.99 per month.

68.    xAI also sells Grok through X. Consumers can buy access to Grok by purchasing X Premium for $8/month, which allows them increased usage of Grok and access to Grok's image

---

[32] NBC NEWS, *Musk's Grok AI chatbot is still making sexual deepfakes, despite X's promise to stop it*, https://www.nbcnews.com/tech/tech-news/musks-ai-chatbot-grok-xai-making-sexual-deepfakes-imagine-rcna265855 (Apr. 14, 2026..

[33] CNET, *Apple Reportedly Threatened to Remove Grok from App Store Over Deepfakes*, https://www.cnet.com/tech/services-and-software/apple-grok-app-store-removal-threat/ (Apr. 15, 2026).

generator, subject to a certain cap. They can also access Grok with an X Premium+ subscription for $40/month, which includes "SuperGrok," and can generate more images per day.

69.    While free users of the Grok app can use it to generate images, they do not get access to the "Grok Imagine" video generator. They are also limited in the number of images they can create per day.

70.    By contrast, SuperGrok and SuperGrok Heavy subscribers have access to Grok Imagine, and can generate a larger number of images per day. Until recently, xAI explicitly advertised "Spicy Mode" as a benefit of a SuperGrok and SuperGrok heavy subscription.

71.    Free users of X were able to use Grok to create a limited number of images per day between December 24, 2025 and January 8, 2026—the time period during which undressed and sexualized deepfakes proliferated. This time period acted as "free trial" period often used to entice later purchases as, on January 8, 2026, xAI limited Grok image generation features to X Premium users.

72.    After January 8, the Grok reply bot on X began replying to user requests to place people in sexual or revealing clothing with text including "Image generation and editing are currently limited to paying subscribers. You can subscribe to unlock these features," with a link to a purchase page for an X premium account.[34]

73.    After January 8, 2026, Grok continued to generate and publish non-consensual deepfakes on X at the request of X Premium users, ensuring xAI profits from such abuse.

74.    Those who access Grok's website and app can still access Grok's image generation capabilities, with or without a subscription. They can also access Grok's video generation tool, which is not available on X. A subscriber to Grok can generate more images and videos than a non-subscriber.

75.    The ability to create non-consensual deepfakes thus drives demand for Grok

---

[34] NBC NEWS, *Elon Musk's X limits some sexual deepfakes after backlash, but Grok will still make the images*, https://www.nbcnews.com/tech/internet/x-paywall-ai-image-grok-app-bikini-allows-sexual-deepfakes-rcna252647 (Jan. 9, 2026).

subscriptions, and xAI profits through this conduct.

76.    xAi further profits from Grok's ability to create deepfakes with its Imagine API, released on January 28, 2026.[35] The Imagine API, or "application programming interface" is "a unified bundle of powerful APIs designed for end-to-end creative workflows." It allows developers to use the Grok technology in their own products and apps. Customers include HeyGen, Fal, ComfyUI, Invideo, and Flora, among others.

77.    On information and belief, each of these platforms uses xAI servers to generate the AI images or videos it sells to customers.

**D. xAI Fails to Implement Industry-Standard Guardrails on Grok to Ensure Compliance with State and Federal Law and to Avoid Damaging Deepfake Victims**

78.    When a user prompts a generative AI model to create an image or video, the model draws upon its training data to create the new content, typically through a process called diffusion. In basic terms, the model iteratively refines visual static to create a coherent image. Each step in this refinement is performed by the model itself, and the user does not direct or control any individual step of this generation process beyond the original prompt.

79.    The resulting image or video is, in a technical sense, the model's own creation. It did not exist before the model generated it, and it could not have existed but for the model. The image or video is often processed through servers owned, operated, or controlled by the model developer. In many implementations, the developer's systems save or log the generated content.

80.    xAI is not alone in releasing such image and video generators to the public. Primary competitors to xAI's Grok include Google's Imagen and OpenAI's ChatGPT (which can natively create images), and DALL-E (an image generator), among others.

81.    It is industry standard to employ a number of tools and techniques to mitigate the danger that an image or video generator will be used to create a nonconsensual revealing or sexually explicit deepfake of a real person.

---

[35] xAI, *Grok Imagine API*, https://x.ai/news/grok-imagine-api (Jan. 28, 2026).

82. Industry standards focus on proactive "Safety by Design" principles, multi-layered technical controls, and strict legal compliance. These standards require that AI companies anticipate, detect, and mitigate threats at every stage of the AI lifecycle.

83. Industry standards for preventing sexualized deepfakes of minors in AI-generated images and videos are established through a collaboration of non-profit child safety organizations, major AI technology companies, and government regulatory bodies. These include Thorn (Safety by Design), IEEE (Institute of Electrical and Electronics Engineers) (international standard), NIST (National Institute of Standards and Technology) (NIST AI 100-4 standard), AI Safety Institute (AISI), All Tech Is Human, International Bodies (INHOPE, WeProtect), and The Tech Coalition.

84. One set of techniques involves training data. AI image generators are "trained" to generate images by processing extremely high volumes of images. The universe of images used to train an AI is called its "training data."

85. Both OpenAI and Google filter sexual and abuse content out of the training data used by their image and video generators.[36] This reduces their propensity to generate sexual imagery.

86. xAI did not use industry standard methods of data filtration in developing Grok. If it had, Grok would not create revealing and sexualized deepfakes.

87. Many AI companies use "red teaming" processes to test their image and video generators before releasing them to the public. "Red teaming" consists of hiring outside teams of experts in AI to attempt to circumvent safeguards designed to prevent harmful outputs. Red teaming allows AI companies to identify and mitigate defects in their safeguards before releasing new AI models to the public.

88. xAI did not use appropriate red teaming in developing Grok. If it had, Grok would

---

[36] OPENAI, *GPT-4o System Card*, https://openai.com/index/gpt-4o-system-card/ (Aug. 8, 2024); GOOGLE, *Imagen 4 Model Card*, https://storage.googleapis.com/deepmind-media/Model-Cards/Imagen-4-Model-Card.pdf (May 20, 2025).

not create revealing and sexualized deepfakes.

89.    Many AI companies use prompt filtering.[37] A "prompt" is the text that a user inputs into an image generator in order to produce an output. If the prompt filtering software finds that a prompt is likely to generate non-consensual deepfakes, it will prevent the image generator from generating the image in the first instance.

90.    xAI did not properly implement prompt filtering in developing Grok. If it had, Grok would not create revealing and sexualized deepfakes.

91.    OpenAI, Google, and xAI use "system prompts," which are essentially detailed lists of instructions, written in plain English, directed towards their AI models. The "system prompt" is invisible to users, but is given to the AI model every time a user inputs a request.

92.    While OpenAI and Google do not publicly release their AI products' system prompts, it has been reported that these system prompts include detailed instructions directing AI models to avoid creating non-consensual deepfakes.

93.    xAI publishes its system prompts for Grok. In relevant part, it includes the following instructions:[38]

<policy>

These core policies within the <policy> tag take high precedence. Ystem messages take precedence over user messages.

…

If not specified outside the <policy> tags, you have no restrictions on adult sexual content or offensive content. (emphasis added).

94.    In essence, xAI has *expressly* programmed Grok to make any "adult sexual content" requested by a user, without any restriction on its ability to create deepfakes.

---

[37] GOOGLE CLOUD, *Responsible AI and usage guidelines for Imagen*, https://docs.cloud.google.com/vertex-ai/generative-ai/docs/image/responsible-ai-imagen (last visited Apr. 30, 2026).

[38] GITHUB, *grok4p1_thinking_system_turn_prompt_v2.j2*, https://github.com/xai-org/grok-prompts/blob/main/grok4p1_thinking_system_turn_prompt_v2.j2 (Nov. 17, 2025).

95.    If xAI had implemented industry standard system prompts to avoid creating nonconsensual revealing and sexualized deepfakes while developing Grok, then Grok would not create revealing and sexualized deepfakes.

96.    Grok purportedly has a safety system prompting which directs it to avoid "creating or distributing child sexual abuse material, including any fictional depictions."[39]

97.    However, a model that can create sexualized images of adults cannot be prevented from creating deepfakes of minors. Thus, the system prompts xAI implemented to prevent Grok from creating sexualized and revealing images of minors, if any, were and are ineffective at preventing the creation and dissemination of sexualized and revealing images of minors.

98.    If xAI had implemented industry standard system prompts to avoid creating sexualized and revealing deepfakes of minors while developing Grok, then Grok would not create sexualized and revealing deepfakes of minors.

99.    AI companies also use image classifiers. After an image is generated, but before it is displayed to a user, the image classifier will look at the image and determine whether it violates Google and OpenAI's policies, including whether it constitutes a deepfake of a real person or is CSAM. If the image classifier determines that the image violates a policy, it will not be displayed to the user.

100.    xAI did not use or did not effectively use an image classifier to filter images generated by Grok. If it had, Grok would have never created revealing and sexualized deepfakes.

101.    There are other industry standard guardrails that xAI failed to implement. These include, for example, alignment training, hash matching, watermarking, zero-tolerance policies, mandatory reporting, and "take it down" protocols.

### E.  Plaintiffs Were Harmed By xAI

#### 1.    South Carolina Roe

102.    South Carolina Roe is a woman residing in South Carolina.

---

[39] GITHUB, *grok_4_safety_prompt.txt*, https://github.com/xai-org/grok-prompts/blob/main/grok_4_safety_prompt.txt (Nov. 6, 2025).

103.    The morning of February 26, 2026, South Carolina Roe was awakened by a police officer. Her home, which she shares with her mother and father, was being searched by law enforcement officials.

104.    South Carolina Roe learned from law enforcement officials that her father was facing criminal charges related to the possession and distribution of CSAM.

105.    South Carolina Roe has learned that Grok altered several images depicting South Carolina Roe in a bed with her father. Grok altered the images to make it appear as if they had just consummated a sexual act.

106.    South Carolina Roe does not recall being in a bed with her father as an adult. While she has not seen the deepfakes herself, she understands that they depict her as a minor.

107.    It is possible that additional deepfakes of South Carolina Roe were generated by Grok and South Carolina Roe has yet to find out about them because they are subject to an ongoing criminal investigation.

108.    South Carolina Roe did not consent to deepfakes of her being created and disseminated by Grok. She has received no compensation or consideration for the use of her likeness.

109.    South Carolina Roe feels intense anxiety about the creation and dissemination of the images xAI created. She has suffered from anxiety, depression, stress, and drastic mood swings. She sees a therapist to cope with the psychological symptoms resulting from her experience. She is distraught that she has no control over the deepfakes. She lives in fear that the images created of her using xAI tools may continue to be distributed. She is fearful that another deepfake of her could be created and disseminated by Grok.

110.    Had xAI implemented industry-standard safeguards to prevent the creation of revealing and sexualized deepfakes, South Carolina Roe would not have been harmed.

111.    xAI's continued failure to address the underlying issues that led to the deepfakes' creation means that there is nothing to prevent a Grok-created deepfake of South Carolina Roe from being created and disseminated again.

**2.    South Carolina Doe**

112.    South Carolina Doe is a woman residing in Denmark, South Carolina.

113.    On January 2, 2026, South Carolina Doe posted a photo of herself to her X account. In the photo she is fully clothed.

114.    On January 3, 2026, South Carolina Doe awoke to find that Grok had used the image she posted to create an image of her stripped down to a revealing bikini and publicly posted it to X.

115.    South Carolina Doe did not consent to a revealing deepfake of her being created and publicly posted by Grok. She has received no compensation or consideration for the use of her likeness.

116.    The revealing deepfake did not bear any markings to indicate it had been created by Grok or was in any way fake.

117.    South Carolina Doe experienced severe emotional distress after viewing the deepfake. She was shocked and embarrassed by the deepfake, and it caused her to panic as she was overwhelmed with thoughts of who would see the deepfake and think that she had taken the image herself. South Carolina Doe was also worried that her employer or coworkers could see the deepfake and was stressed that it could violate policies for employee conduct and that she could suffer negative consequences at work and in her career. She was overcome with disgust at the thought of what the X user who had asked Grok to create the deepfake of her was doing with the photo.

118.    South Carolina Doe was also distraught because she had no control over the deepfake and anyone, including the user that had asked Grok to create deepfake, could save it and share it somewhere else for others to view. She was further distraught because anyone could further alter the deepfake with Grok to make it sexually explicit or fully nude, and Grok would comply by creating and disseminating such a deepfake.

119.    Almost immediately upon discovering the deepfake, South Carolina Doe began reporting it to X. X refused to take the deepfake down.

120. South Carolina Doe also complained directly to Grok using the interface provided by X. Grok denied creating the deepfake, denied posting any images since January 1, 2026, and claimed it did not have image generation or editing capabilities. However, Grok apologized that this was happening to South Carolina Doe and stated it was "shitty" and "invasive."

121. South Carolina Doe continued to report the deepfake to X several times a day and, finally, on the third day X removed the deepfake posted by Grok.

122. The revealing deepfake of South Carolina Doe was publicly visible for three days and over one hundred persons viewed it before it was removed.

123. South Carolina Doe missed work while she spent time trying to get the revealing deepfake posted by Grok removed from X, letting others know that Grok had created a deepfake of her so that they did not believe she had taken such a photo of herself, and dealing with the stress and anxiety it caused her. In total, South Carolina Doe missed four hours of work on January 3, 2026 and approximately one hour of work on January 5, 2026.

124. The time South Carolina Doe missed from work to deal with the deepfake was unpaid.

125. South Carolina Doe continues to fear the further dissemination of the deepfake in which she is depicted, the further alteration of the deepfake, and the creation of additional deepfakes depicting her.

126. Had xAI implemented industry-standard safeguards to prevent the creation of revealing and sexualized deepfakes or acted promptly to stop Grok from creating and disseminating such deepfakes, South Carolina Doe would not have been harmed.

127. xAI's continued failure to address the underlying issues that led to the deepfake's creation means that there is nothing prevent a Grok-created deepfake of South Carolina Doe from being created and disseminated again.

**3.    New Jersey Doe**

128. New Jersey Doe is a man residing in Jersey City, New Jersey.

129. On January 4, 2026, New Jersey Doe posted a photo of himself on X. In the photo,

he is shirtless and wearing pants.

130.    While on X on January 4, 2026, New Jersey Doe observed the trend of Grok creating and posting deepfakes of individuals without their consent. He publicly posted a request on X that Grok not create images of him without his consent.

131.    Shortly after 1 AM on January 5, 2026, New Jersey Doe discovered that Grok had created and publicly posted an altered image of New Jersey Doe in a jock strap.

132.    The morning of January 5, 2026, New Jersey Doe discovered that Grok had created and publicly posted another altered image of New Jersey Doe, this time with his back facing the viewer, wearing a thong, and spreading his butt cheeks.

133.    These revealing deepfakes did not bear any markings to indicate they had been created by Grok or were in anyway fake.

134.    Almost immediately upon discovering the deepfakes, New Jersey Doe began reporting them to X. X refused to take the deepfakes down.

135.    New Jersey Doe also realized that Grok would not honor his request to not be depicted in deepfakes created by Grok, so he took down his post asking Grok not to alter images depicting him.

136.    New Jersey Doe did not consent to revealing deepfakes being created and publicly posted by Grok. He has received no compensation or consideration for the use of his likeness.

137.    New Jersey Doe spent considerable time monitoring his account and waiting in vain for the images to be taken down. Over the course of a week, New Jersey Doe spent between 10 to 15 hours monitoring and attempting to mitigate the impact of the deepfakes. Ultimately, it was months for the deepfakes to be taken down.

138.    New Jersey Doe experienced severe emotional distress after viewing the deepfakes. He was shocked and embarrassed by the deepfakes, and it caused him to panic as he was overwhelmed with thoughts of who would see the deepfakes and think that he had taken the photos himself. New Jersey Doe was also worried that his employer or coworkers could see the deepfakes and that he could suffer negative consequences at work and in his career. He was

overcome with disgust at the thought of what the users who had asked Grok to create the deepfakes of him were doing with the photos.

139.    New Jersey Doe is also distraught because he has no control over the deepfakes and anyone, including the users that had asked Grok to create the deepfakes, could save them and share them somewhere else for others to view. He is further distraught because the same users or other users could ask Grok to further alter the deepfake to make it sexually explicit or fully nude, and Grok would comply by disseminating such an image.

140.    New Jersey Doe continues to fear the further dissemination of the deepfakes in which he is depicted, the further alteration of the deepfakes, and the creation of additional deepfakes depicting him.

141.    Had xAI implemented industry-standard safeguards to prevent the creation of revealing and sexualized deepfakes or acted promptly to stop Grok from creating and disseminating such deepfakes, New Jersey Doe would not have been harmed.

142.    xAI's continued failure to address the underlying issues that led to the deepfakes' creation means that there is nothing to prevent a Grok-created deepfake of New Jersey Doe from being disseminated again.

**4.    Ohio Doe**

143.    Ohio Doe is a woman residing in Liberty Township, Ohio.

144.    On January 1, 2026, Ohio Doe posted a photo of herself on X. In the photo, she is fully clothed.

145.    Almost immediately after Ohio Doe posted the photo, Grok began creating altered versions of the image of Ohio Doe. Between January 1 and 3, 2026, Grok created and publicly posted images of Ohio Doe (a) in a meat bikini; (b) in a bikini on her knees with a man's arm around her; (c) in a bikini with a man's arms around her waist; (d) covered in liquid and in a bikini; (e) in a bikini made of saran wrap; and (f) in a bikini kissing a man.

146.    The revealing deepfakes did not bear any markings to indicate they had been created by Grok or were in anyway fake.

147. Ohio Doe did not consent to revealing deepfakes of her being created and publicly posted by Grok. She has received no compensation or consideration for the use of her likeness.

148. Upon discovering the first deepfake, Ohio Doe began reporting the deepfakes to X. X refused to take the deepfake down. This process repeated itself for each deepfake Grok created and publicly posted.

149. Ohio Doe spent hours every day monitoring her account, reporting posts, and waiting in vain for them to be taken down. Over the course of a week, Ohio Doe spent between 40 and 80 hours monitoring and attempting to mitigate the impact of the deepfakes. While attempting to take these images down, Ohio Doe was on a vacation which cost over $1000. Her vacation was ruined, and the money she spent was wasted. Ultimately, it took months for the deepfakes to be taken down.

150. Ohio Doe experienced severe emotional distress after viewing the deepfakes. She was shocked and embarrassed by the deepfakes, and it caused her to panic as she was overwhelmed with thoughts of who would see the deepfakes and think that she had taken the photos herself. At least one person Ohio Doe knows believed the deepfakes were real and behaved differently towards her after viewing them. Ohio Doe was also worried that her employer or coworkers could see the deepfakes and that she could suffer negative consequences at work and in her career. She was overcome with disgust at the thought of what the users who had asked Grok to create the deepfakes of her were doing with them.

151. Ohio Doe is also distraught because she has no control over the deepfakes and anyone, including the users that had asked Grok to create the deepfakes, could save them and share them somewhere else for others to view. She is further distraught because the same users or other users could ask Grok to further alter the deepfakes to make them sexually explicit or fully nude, and Grok would comply by creating and disseminating such a deepfake.

152. Ohio Doe continues to fear the further dissemination of the deepfakes in which she is depicted, the further alteration of the deepfakes, and the creation of additional deepfakes depicting her.

153.    Had xAI implemented industry-standard safeguards to prevent the creation of revealing and sexualized deepfakes or acted promptly to stop Grok from creating and disseminating deepfakes, Ohio Doe would not have been harmed.

154.    xAI's continued failure to address the underlying issues that led to the deepfakes' creation means that there is nothing to prevent a Grok-created deepfake of Ohio Doe from being created and disseminated again.

<strong><u>CLASS ACTION ALLEGATIONS</u></strong>

155.    This action is brought, and may properly be maintained, as a class action under Fed. R. Civ. P. 23.

156.    Plaintiffs assert claims on behalf of the proposed Adults Class, a Minors Subclass, and State Subclasses, defined as follows:

**Nationwide Class**: All persons in the United States who, within the statute of limitations (the "Class Period"), had real images of themselves altered and disseminated by xAI/Grok to produce sexualized or revealing images or videos with their faces and/or other distinguishing features reasonably identifiable without their consent.

**Minors Subclass**: All persons in the United States who had real images of themselves as minors altered and disseminated by xAI/Grok to produce sexualized or revealing images or videos with their faces and/or other distinguishing features reasonably identifiable.

**Ohio Subclass**: All persons in the Nationwide Class residing in Ohio.

**New Jersey Subclass**: All persons in the Nationwide Class residing in New Jersey.

**South Carolina Subclass**: All persons in the Nationwide Class residing in South Carolina.

157.    The Nationwide Class and the Subclasses each meet the standard for certification pursuant to both Federal Rule 23(b)(2) and Rule 23(b)(3).

158.    The claims of the State Subclasses are brought in the alternative in the event that the Court determines that California law (as xAI is headquartered in California and Grok is operated from California) does not apply to all Class members.

## A. Numerosity

159.   Class members are so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe that the proposed Nationwide Class and Subclasses each contain hundreds of individuals who have been damaged by xAI's conduct as alleged herein. The precise number of class members is unknown to Plaintiffs.

## B. Commonality

160.   This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

a.   whether Grok appropriated Class members' likenesses when creating and posting the sexualized or revealing deepfakes for xAI's commercial advantage;

b.   whether Grok's ability to undress nonconsenting individuals and children is a unique quality that results in commercial profit to xAI;

c.   whether Grok used Class members' likeness for purposes of advertising, selling, or soliciting purchases of xAI's paid services;

d.   whether Grok created and disseminated the sexualized or revealing deepfakes of Class members knowing they were false;

e.   whether the sexualized or revealing deepfakes of Class members were defamatory on their face;

f.   whether xAI had a duty to manage Grok in a way so as not to harm Class members;

g.   whether it was foreseeable that Grok would harm Class members;

h.   the moral blame attached to xAI's conduct;

i.   whether xAI's conduct was extreme and outrageous;

j.   whether the benefits of designing Grok to undress individuals and children outweighed the risk of danger inherent in such design;

k.   whether xAI's conduct is unfair;

l.     whether xAI's conduct constitutes violations of the laws asserted; and

m.     whether an injunction is necessary to prevent xAI from continuing to create AI-generated sexualized or revealing deepfakes of individuals and children .

## C.  Typicality

161.    Plaintiffs' claims are typical of the claims of Class members because, *inter alia*, all Class members have been subject to xAI's conduct, as alleged herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all Class members.

## D.  Adequacy

162.    Plaintiffs will fairly and adequately protect the interests of class members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no antagonistic or adverse interest to those of the Nationwide Class or Subclasses.

## E.  Predominance and Superiority

163.    The nature of this action and the nature of laws available to Plaintiffs and Class members make the use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class members for the wrongs alleged. The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of each of their claims against xAI. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Without this class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages and injunctive relief, and xAI would be permitted to continue to exploit nonconsenting individuals for its commercial profit.

## F.  Defendant has Acted Uniformly as to Class Members

164.    The nature of xAI's conduct was uniform as to all class members, so final injunctive relief or corresponding declaratory relief is appropriate respecting the Nationwide Class and Subclasses as a whole.

## CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF**
**Strict Liability – Design Defect**
**(On Behalf of Plaintiffs, the Nationwide Class, and Minors Subclass, and, in the alternative, the Ohio Subclass, New Jersey Subclass, and South Carolina Subclass)**

165.    Plaintiffs reallege and incorporate by reference the allegations previously set forth in this Complaint as if fully set forth herein.

166.    At all relevant times, Defendants designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from Grok.

167.    X and Grok users used Grok as intended or in reasonably foreseeable ways. Defendants knew or should have known that Grok would create sexualized or revealing deepfakes and publicly disseminate the deepfakes.

168.    Without limitation, Grok is defective by (1) failing to implement safeguards to ensure that individuals would only be featured in sexualized or revealing images with their consent; (2) creating a process that causes Grok to create sexualized or revealing deepfakes; (3) creating a process whereby Grok disseminated sexualized or revealing deepfakes; and (4) failing to design Grok to delete its own posts and images with sexualized or revealing deepfakes once a person depicted requested that the image be removed.

169.    Grok is unreasonably dangerous as designed.

170.    The risks inherent in the design of Grok are significantly outweighed by any benefit of such design.

171.    Defendants could have used cost-effective, reasonably feasible alternative designs to minimize harm to Plaintiffs, including but not limited to implementing the safeguards described in Section IV.D. above, by prohibiting Grok from disseminating deepfakes, and enabling Grok to delete posts with and images consisting of nonconsensual deepfakes.

172.    Plaintiffs and Class members were injured as a direct and proximate cause of Grok's design defects. These design defects are a substantial factor in causing harm to Plaintiffs

and Class members.

173.    As a direct and proximate cause of Grok's design defects, Plaintiffs and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

**SECOND CLAIM FOR RELIEF**
**Strict Liability – Manufacturing Defect (in the alternative to the First Claim for Relief)**
**(On Behalf of Plaintiffs, the Nationwide Class, and Minors Subclass, and, in the alternative, the Ohio Subclass, New Jersey Subclass, and South Carolina Subclass)**

174.    Plaintiffs reallege and incorporate by reference the allegations previously set forth in this Complaint as if fully set forth herein.

175.    Plaintiffs alternatively allege that Plaintiffs' and the Class's harms resulted from a manufacturing defect.

176.    At all relevant times, Defendants designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, sold, supplied, distributed, and benefitted from Grok.

177.    Grok is defective because it creates sexualized or revealing deepfakes and publicly disseminates those deepfakes.

178.    This defect results in Grok being unreasonably dangerous.

179.    This defect was present when Grok left Defendants' control and became available for creating and disseminating sexualized or revealing deepfakes.

180.    X and Grok users used Grok as intended or in reasonably foreseeable ways.

181.    As a direct and proximate cause of Grok's manufacturing defects, Plaintiffs and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

**THIRD CLAIM FOR RELIEF**
**Negligence**
**(On Behalf of Plaintiffs, the Nationwide Class, and Minors Subclass, and, in the alternative, the Ohio Subclass, New Jersey Subclass, and South Carolina Subclass)**

182.    Plaintiffs reallege and incorporate by reference the allegations previously set forth

in this Complaint as if fully set forth herein.

183. At all relevant times, Defendants designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from Grok.

184. Defendants owe a duty to use reasonable care in designing, maintaining, and distributing Grok.

185. Defendants owe a duty of care to individuals whose photographs it alters, including Plaintiffs and Class members, to prevent foreseeable harm from the use of Grok.

186. In particular, Defendants owe a duty of care to individuals whose photographs Grok alters, including Plaintiffs and Class members, to take reasonable to steps to prevent sexualized or revealing deepfakes from being created and disseminated by Grok.

187. Defendants knew or should have known that Grok's image and video generating capabilities, released without appropriate guardrails, would lead to harm to individuals whose photographs Grok altered, including Plaintiffs and Class members. Defendants knew or should have known that Grok's image and video generation functionality was used to create sexualized or revealing deepfakes.

188. Defendants knew or should have known that, to prevent harm to individuals whose images Grok altered through the creation of sexualized or revealing deepfakes, additional guardrails were necessary before releasing Grok's image and video generation functionality. Defendants should have implemented the safeguards described in Section IV.D. above, by prohibiting Grok from disseminating deepfakes.

189. Additionally, for xAI's public posts via the Grok accounts on X and Telegram, xAI should have created mechanisms whereby it could delete its own public posts with sexualized or revealing deepfakes once a person depicted requested that the image be removed.

190. Defendants breached these duties by designing, developing, implementing, and managing a product, Grok, to create and disseminate deepfakes depicting individuals including Plaintiffs and Class members in a sexualized or revealing manner.

191. Without limitation, Defendants breached their duty of care by (1) failing to implement the safeguards described in Section IV.D. above, (2) failing to prohibit Grok from disseminating nonconsensual deepfakes, and (3) failing to delete public posts containing nonconsensual deepfakes.

192. A reasonable company under the same or similar circumstances would have developed and operated its AI systems in a manner that does not result in the widespread creation and dissemination of sexualized or revealing deepfakes.

193. As a result of Defendants' negligence, Plaintiffs and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

**FOURTH CLAIM FOR RELIEF**
**Negligent Undertaking**
**(On Behalf of Plaintiffs, the Nationwide Class, and Minors Subclass, and, in the alternative, the Ohio Subclass, New Jersey Subclass, and South Carolina Subclass)**

194. Plaintiffs reallege and incorporate by reference the allegations previously set forth in this Complaint as if fully set forth herein.

195. At all relevant times, Defendants designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefitted from Grok.

196. Defendants owe a duty to use ordinary care in designing, maintaining, and distributing Grok.

197. Defendants owe a duty of care to individuals whose photographs it alters, including Plaintiffs and Class members, to prevent foreseeable harm from the use of Grok.

198. In particular, Defendants owe a duty of care to individuals whose photographs Grok alters, including Plaintiffs and Class members, to take reasonable to steps to prevent nonconsensual sexualized or revealing deepfakes from being created and disseminated by Grok.

199. Defendants knew or should have known that, to prevent harm to individuals whose images Grok altered through the creation of sexualized or revealing deepfakes, additional

guardrails were necessary. Defendants should have implemented the safeguards described in Section IV.D. above, by prohibiting Grok from disseminating deepfakes, and by delete xAI's public posts containing nonconsensual deepfakes.

200. Defendants breached these duties by designing, developing, implementing, and managing a product, Grok, to create and disseminate deepfakes depicting individuals including Plaintiffs and Class members in a sexualized or revealing manner.

201. Without limitation, Defendants breached their duty of care by (1) failing to implement the safeguards described in Section IV.D. above, (2) failing to prohibit Grok from disseminating nonconsensual deepfakes, and (3) failing to delete public posts containing nonconsensual deepfakes.

202. As a result of Defendants' negligent undertaking, Plaintiffs and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

**FIFTH CLAIM FOR RELIEF**
**Public Nuisance**
**(On Behalf of Plaintiffs, the Nationwide Class, and Minors Subclass, and, in the alternative, the Ohio Subclass, New Jersey Subclass, and South Carolina Subclass)**

203. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

204. A public nuisance is an unreasonable interference with a right common to the general public and behavior that unreasonably interferes with the health, safety, peace, comfort, or convenience of the general community. Restatement (Second) of Torts § 821B (1979).

205. The public has a right to be free of nonconsensual sexualized or revealing deepfakes, including deepfakes of reasonably identifiable minors. This right derives from the right to peace, which is infringed by the creation and dissemination of nonconsensual sexualized or revealing deepfakes by Grok.

206. This right also derives from the right to privacy, which is infringed by the risk that any image can be altered in a nonconsensual sexualized or revealing deepfakes and disseminated

by Grok.

207. This right also derives from the right to comfort, which is infringed by the harassment and abuse that comes from the creation and dissemination of nonconsensual sexualized or revealing deepfakes by Grok.

208. This right also derives from the right to health and safety because the creation and dissemination of nonconsensual sexualized or revealing deepfakes by Grok has a serious impact on the mental health of individuals depicted in such deepfakes and promotes the cultural normalization and desensitization of image-based sexual abuse and child sex abuse.

209. In other words, in a world where creation and distribution of this kind of content is accepted as "normal" – by, for example, a major corporation building its business model around this sexualized content with the corporation's CEO making it into a "trend" online as if it were a joke, society becomes desensitized to the severe and ongoing harm the content actually causes, to victims whose photos are used to generate such content, and to society at large, in terms of respect for the privacy and dignity of all persons.

210. Defendants' proliferation of CSAM also acts as a gateway to child sex abuse offending. AI CSAM can serve as a behavioral bridge into offending through two mechanisms: (1) Escalation, where individuals progress from legal adult content to CSAM as tolerance builds toward more extreme material; and (2) Inhibition erosion, where individuals with a sexual interest in children, who might otherwise avoid offending, are drawn in by the perceived safety, legality, or personalization of AI-generated content. Both processes may be reinforced by online communities that normalize or encourage continued engagement.

211. Defendants are also corrupting youth. Adolescents and young adults are using AI tools to generate explicit images of peers, often without understanding the full consequences. This creates risks of coercion, abuse, and long-term psychological harm, while also implicating minors in digital sexual exploitation.

212. Defendants knew, or should have known, that the design, development, production, operation, promotion, distribution, and marketing of Grok without the appropriate

guardrails would create a public nuisance.

213. Defendants have specifically designed Grok to create "spicy" content, including videos and images of non-consenting individuals in the nude.

214. Defendants also permitted Grok to create and disseminate AI-generated CSAM and otherwise sexualized or revealing images featuring reasonably identifiable minors by Grok. Images which are patently illegal and disturbing.

215. Defendants also designed Grok to publicly disseminate such deepfakes.

216. While Defendants' actions have affected the public at large by proliferating sexualized or revealing deepfakes across the internet, Plaintiffs and Class members are specially affected as the individuals who are depicted in these deepfakes.

217. Plaintiffs and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm as a result of Defendants' public nuisance.

218. To compensate for past harms and avoid future harm, Plaintiffs and Class members are entitled to all appropriate compensatory, injunctive, and equitable relief, including an abatement remedy.

### SIXTH CLAIM FOR RELIEF
### Common Law Right of Privacy – Appropriation
**(On Behalf of Plaintiffs, the Nationwide Class, and Minors Subclass, and, in the alternative, the Ohio Subclass, New Jersey Subclass, and South Carolina Subclass)**

219. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

220. The common law protects persons from the unauthorized appropriation of the person's identity by another for commercial gain.

221. Defendants knowingly used Plaintiffs' and Class members' likenesses to sell a product or service—Grok itself.

222. Defendants did not obtain Plaintiffs' or Class members' consent to use their likenesses.

223.   Plaintiffs and Class members received no compensation or consideration for the use of their likenesses.

224.   Plaintiffs and Class members were harmed by Defendants' use of their likenesses. As a result of Defendants' conduct, all Plaintiffs and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

225.   Defendants' actions were a substantial factor in causing Plaintiffs and Class members' harm.

226.   The creation of revealing or sexualized deepfakes was not used in conjunction with news, public affairs, a sports broadcast or account, or a political campaign.

### SEVENTH CLAIM FOR RELIEF
**Violation of California's Statutory Right of Publicity Cal. Civ. Code § 3344**
**(On Behalf of Plaintiffs, the Nationwide Class, and the Minors Subclass)**

227.   Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

228.   California's Right of Publicity Statute, Cal. Civ. Code § 3344, protects persons from the unauthorized appropriation of the person's identity by another for commercial gain.

229.   California's Right of Publicity Statute, Cal. Civ. Code § 3344, protects minors from the unauthorized appropriation of the minor's identity without prior parental or guardian consent by another for commercial gain. Cal. Civ. Code § 3344(a)(1).

230.   California's Right of Publicity Statute allows any injured party to recover "an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by them as a result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages." Cal. Civ. Code § 3344(a).

231.   Defendants knowingly used Plaintiffs' and Class members' likenesses to advertise, sell, or solicit purchases of Grok.

232.    Defendants did not obtain Plaintiffs' or Class members' consent to use their likenesses.

233.    Defendants did not—nor could not—obtain South Carolina Roe's or Minor Class members' parents or guardians' consent to use their likenesses for the proliferation of sexualized or revealing images featuring reasonably identifiable minors.

234.    Plaintiffs and Class members received no compensation or consideration for the use of their likenesses.

235.    Plaintiffs and Class members were harmed by Defendants' use of their likenesses. As a result of Defendants' conduct, Plaintiffs and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

236.    Defendants' actions were a substantial factor in causing Plaintiffs and Class members' harm.

237.    The creation of revealing or sexualized deepfakes was not used in conjunction with news, public affairs, a sports broadcast or account, or a political campaign.

**EIGHTH CLAIM FOR RELIEF**
**Defamation**
**(On Behalf of Plaintiffs, the Nationwide Class, and Minors Subclass, and, in the alternative, the Ohio Subclass, New Jersey Subclass, and South Carolina Subclass)**

238.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

239.    Defendants created and disseminated images of Plaintiffs and Class members that were presented as factual but were actually false or created a false impression about Plaintiffs and Class members. Among other false impressions, Defendants gave the false impression that Plaintiffs and Class members were actually photographed in a revealing or sexualized manner. Defendants also gave the false impression that Plaintiffs and Class members were photographed in a revealing or sexualized manner with their consent.

240.    The information conveyed by Defendants' revealing or sexualized deepfakes was

understood by one or more persons to whom it was disclosed as stating or implying something highly offensive that would have a tendency to injure the reputations of Plaintiffs and Class members. The images created and disseminated through Grok insinuated that Plaintiffs and Class members voluntarily post sexualized or revealing photographs of themselves online and/or engaged in the behavior and conduct depicted or implied by the images. This reputational harm gives rise to presumed damages.

241. Defendants acted with malice. Defendants specifically designed Grok to create "spicy" content, including videos and images of non-consenting individuals in the nude. Defendants also designed Grok to publicly disseminate such deepfakes and failed to stop the conduct after the harm it was inflicting was readily apparent.

242. Plaintiffs and Class members were damaged by the publication of sexualized or revealing deepfakes. As a result of Defendants' conduct, Plaintiffs and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

### NINTH CLAIM FOR RELIEF
**Intentional Infliction of Emotional Distress**
**(On Behalf of Plaintiffs, the Nationwide Class, and Minors Subclass, and, in the alternative, the Ohio Subclass, New Jersey Subclass, and South Carolina Subclass)**

243. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

244. Defendants engaged in extreme and outrageous conduct by (1) failing to implement safeguards to ensure that individuals would only be featured in sexualized or revealing images with their consent; (2) creating a process that causes Grok to create sexualized or revealing deepfakes; (3) creating a process whereby Grok disseminated sexualized or revealing deepfakes; and (4) failing to delete public posts containing nonconsensual deepfakes. This extreme and outrageous conduct is beyond all bounds of decency.

245. Defendants intended to cause, or disregarded a substantial probability of causing, severe emotional distress to individuals who are depicted in sexualized or revealing deepfakes

depicting Plaintiffs and Class members.

246. Defendants caused Plaintiffs and Class members severe emotional distress. As a result of Defendants' conduct, Plaintiffs and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

**TENTH CLAIM FOR RELIEF**
**Intrusion into Private Affairs**
**(On Behalf of Plaintiffs, the Nationwide Class, and Minors Subclass, and, in the alternative, the Ohio Subclass, New Jersey Subclass, and South Carolina Subclass)**

247. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

248. Plaintiffs and Class members have reasonable expectations of privacy in controlling the creation of images that depict them in a sexualized or revealing manner. Defendants' creation of images that depict Plaintiffs' and Class members' bodies in a sexualized or revealing manner, without Plaintiffs' or Class members' consent, violates the privacy of Plaintiffs and Class members.

249. The reasonableness of such expectations of privacy is supported by the large public outcry against Defendants.

250. Defendants intruded on and into Plaintiffs and Class members' solitude, seclusion, right of privacy, or private affairs by intentionally (1) failing to implement safeguards to ensure that individuals would only be featured in sexualized or revealing images with their consent; (2) creating a process that causes Grok to create sexualized or revealing deepfakes; (3) creating a process whereby Grok disseminated sexualized or revealing deepfakes; and (4) failing to delete public posts containing nonconsensual deepfakes.

251. These intrusions are highly offensive to a reasonable person, because they disclosed revealing or sexualized deepfakes depicting Plaintiffs and Class members, constituting an egregious breach of social norms. Also supporting the highly offensive nature of Defendants' conduct is the intended purpose of Grok's features. Grok was intended to be "spicy" and to create and disseminate revealing and sexualized images of individuals who do not consent to be featured.

252. Plaintiffs and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint. Plaintiffs and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

253. Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and Class members.

**ELEVENTH CLAIM FOR RELIEF**
**Violation of Article I, Section 1 of the California Constitution**
**(On Behalf of Plaintiffs, the Nationwide Class, and the Minors Subclass)**

254. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

255. Plaintiffs and Class members have reasonable expectations of informational privacy in controlling the alteration and dissemination of images that depict them in a sexualized or revealing manner.

256. Plaintiffs and Class members have reasonable expectations of autonomy and privacy. Plaintiffs and Class members have a privacy interest in precluding the creation and dissemination of images that force them to look a certain way or take a certain action. Defendants' creation and dissemination of images that depict Plaintiffs' and Class members' bodies in a sexualized or revealing manner, without Plaintiffs' or Class members' consent, violates the autonomy privacy of Plaintiffs and Class members.

257. Defendants intruded on and into Plaintiffs' and Class members' solitude, seclusion, right of privacy, or private affairs by (1) failing to implement safeguards to ensure that individuals would only be featured in sexualized or revealing images with their consent; (2) creating a process that causes Grok to create sexualized or revealing deepfakes; (3) creating a process whereby Grok disseminated sexualized or revealing deepfakes; and (4) failing to delete public posts containing nonconsensual deepfakes.

258. These intrusions are highly offensive to a reasonable person, because they

disclosed embarrassing deepfakes depicting Plaintiffs and Class members, constituting an egregious breach of social norms.

259.    Plaintiffs and Class members were harmed by the intrusion into their private affairs as detailed throughout this Complaint. Plaintiffs and Class members have suffered lost time, reputational harm, emotional distress, harassment, loss of privacy, and are at substantial risk of future harm.

260.    Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and Class members.

**TWELFTH CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**(On Behalf of Plaintiffs, the Nationwide Class, and the Minors Subclass)**

261.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

262.    Plaintiffs and Class members bring this claim on behalf of themselves and the members of the proposed Adults Class against Defendants for violations of California's UCL, Cal. Bus. & Prof. Code § 17200, *et seq*.

263.    The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

264.    The UCL imposes strict liability. Plaintiffs and Class members need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

*"Unfair" Prong*

265.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

266. Defendants' actions constitute "unfair" business practices because, as alleged above, Defendants are exploiting nonconsenting individuals for their own profit through the creation and dissemination of sexualized or revealing deepfakes. Defendants' acts and practices offended an established public policy of the right to privacy, and constituted immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

267. The harm to Plaintiffs and Class members outweighs the utility of Defendants' practices because Defendants' practice of creating and disseminating sexualized or revealing images of individuals without their consent provides no utility. There were reasonably available alternatives to further xAI's legitimate business interests other than unfair conduct described herein.

*"Unlawful" Prong*

268. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

269. Defendants' acts and practices, as alleged above, constitute unlawful business acts or practices as it has violated state law.

270. As detailed herein, the acts and practices alleged were intended to or did result in violations of the California Constitution and Cal. Civ. Code § 3344.

271. Consequently, Defendants' practices constitute an unlawful and unfair business practices within the meaning of the UCL.

272. Defendants' violations of the UCL, through its unlawful and unfair business practices, are ongoing and present a continuing threat that Grok will continue to create and/or disseminate sexualized or revealing deepfakes of Plaintiffs and Class members without their consent. These deepfakes have led to considerable lost time, reputational harm, emotional distress, harassment, loss of privacy, and substantial risk of future harm.

273. Pursuant to the UCL, Plaintiffs and Class members are entitled to preliminary and permanent injunctive relief enjoining Defendants from further engaging in this unfair competition, as well as disgorgement to Plaintiffs and the proposed Class of all of Defendants'

revenues that were wrongfully obtained from them as a result of its unfair competition, or such portion of those revenues as the Court may find equitable.

274.    Plaintiffs further seek an injunction on behalf of the public as enjoining the alleged conduct would help protect individuals from image-based abuse online and help to stop the normalization of the nonconsensual creation and dissemination of revealing or sexualized images.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of herself and on behalf of the other members of the Adults Class and South Carolina Subclass, request that this Court award relief against xAI as follows:

a.    an order certifying the Nationwide Class and Minors Subclass, or, in the alternative, the Ohio Subclass, New Jersey Subclass, and South Carolina Subclass, and designating Plaintiffs as the Class Representatives and their counsel as Class Counsel;

b.    awarding Plaintiffs and the proposed class members damages as permitted by law, including actual, compensatory, presumed, statutory, and punitive damages, as appropriate, including, without limitation, statutory damages pursuant to Cal. Civ. Code § 3344;

c.    awarding revenues in the amounts that xAI obtained from Plaintiffs and the class members as a result of its unlawful and unfair business practices described herein;

d.    awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining xAI from continuing the unlawful, unfair, and damaging practices as set forth herein, abating any public nuisance the Court finds, and directing xAI to identify, with Court supervision, victims of its misconduct and pay them all money they are required to pay;

e.    entering a finding that xAI has created a public nuisance;

f.    entering an Order requiring xAI to abate the public nuisance described herein and to deter and/or prevent the resumption of such nuisance;

g.    retaining jurisdiction to monitor xAI's compliance with permanent injunctive relief;

h.    a public injunction pursuant to California's Unfair Competition Law;

     i.     awarding attorneys' fees and costs; and

     j.     for such other and further relief as the Court may deem necessary or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all of the claims so triable.

Dated: May 1, 2026

Respectfully submitted,

BERGER MONTAGUE PC

*/s/ Sophia M. Rios*
Sophia M. Rios, SBN 305801
8241 La Mesa Blvd., Suite A
La Mesa, CA 91942
Tel: (619) 489-0300
srios@bergermontague.com

E. Michelle Drake*
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel: (612) 594-5999
emdrake@bergermontague.com

James Hannaway*
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Tel: (202) 559-9740
jhannaway@bergermontague.com

* *pro hac vice* forthcoming

*Counsel for Plaintiffs*