Sophia M. Rios (SBN 305801)
**BERGER MONTAGUE PC**
8241 La Mesa Blvd, Suite A
La Mesa, CA 91942
Tel: (619) 489-0300
Fax: (612) 584-4470
srios@bergermontague.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| JANE DOE, SOUTH CAROLINA ROE, NEW JERSEY DOE, and OHIO DOE, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>X.AI CORP. and X.AI LLC,<br><br>                    Defendants. | Case No. 5:26-cv-00772-PCP<br><br>**PLAINTIFF SOUTH CAROLINA DOE'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL SOUTH CAROLINA DOE TO COMPLY WITH FRCP 10(A), OR, IN THE ALTERNATIVE, FOR LEAVE TO MOVE FOR RECONSIDERATION OF ORDER GRANTING ADMINISTRATIVE MOTION TO PROCEED UNDER PSEUDONYM**<br><br>Date: July 9, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8, 4th Floor<br>Judge: Hon. P. Casey Pitts |

---

OPPOSITION TO DEFENDANTS' MOTION
TO COMPEL RE FRCP 10(A)

CASE NO. 5:26-CV-00772-PCP

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

I.    South Carolina Doe Should Be Allowed to Proceed Under a Pseudonym. ...................... 2

    A.    xAI Has Not Justified Reconsideration of the Court's Previous Order. .................... 2

    B.    xAI Has Not Made a Good Faith Showing of Prejudice. .......................................... 5

    C.    This Matter Involves Sensitive, Personal Information. .............................................. 7

    D.    Identifying South Carolina Doe Would Expose Her to Retaliatory Harm. ............. 10

    E.    The Public Interest Is Fully Served Without Disclosure of
        South Carolina Doe's Identity. ................................................................................. 15

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

Case                                                                                                                    Page(s)

*A.B. ex rel. W.F.B. v. San Francisco Unified Sch. Dist.*,
   No. C 07-4738 PJH, 2007 WL 2900527 (N.D. Cal. Oct. 2, 2007) ........................................... 4

*Adobe Sys. Inc. v. A & S Elecs., Inc.*, No. C,
   15-2288 SBA, 2016 WL 9105173 (N.D. Cal. Oct. 13, 2016)..................................................... 4

*Al Otro Lado, Inc. v. Nielsen*, No. 17-cv-02366-BAS-KSC,
   2017 WL 6541446 (S.D. Cal. Dec. 20, 2017)......................................................................... 5

*Bride v. Snap Inc.*,
   No. 2:21-CV-06680-FWS-MRW, 2025 WL 819567 (C.D. Cal. Feb. 21, 2025).................... 13

*Doe 1 v. Nat'l Collegiate Athletic Ass'n*, No.,
   22-CV-01559-LB, 2022 WL 3974098 (N.D. Cal. Aug. 30, 2022) ........................................... 9

*Doe #2 v. Johnson*,
   No. 2:24-CV-01844-DJC-AC, 2024 WL 6951453 (E.D. Cal. Sept. 5, 2024) .......................... 5

*Doe K.G. v. Pasadena hospital Ass'n, Ltd.*,
   No. 218CV08710ODWMAAX, 2019 WL 1612828 (C.D. Cal. Apr. 15, 2019) ................... 15

*Doe No. 1 v. Wynn Resorts Ltd.*,
   2022 WL 3214651 (D. Nev. Aug. 9, 2022)............................................................................ 6

*Doe P.B. v. Roblox Corp.*,
   No. 25-CV-10596-JST, 2026 WL 92058 (N.D. Cal. Jan. 13, 2026)........................................ 2

*Doe v. City of Apple Valley*,
   No. 20-CV-499 (PJS/DTS), 2020 WL 1061442 (D. Minn. Mar. 5, 2020) ............................ 15

*Doe v. City of Chicago*,
   360 F.3d 667 (7th Cir. 2004)............................................................................................. 10

*Doe v. Del Rio*,
   241 F.R.D. 154 (S.D.N.Y. 2006) ......................................................................................... 6

*Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*,
   596 F.3d 1036 (9th Cir. 2010)........................................................................................... 14

*Doe v. Mt. Diablo Unified Sch. Dist.*,
   No. 18-cv-02589-JSC, 2018 WL 2317804 (N.D. Cal. May 22, 2018) ............................... 2, 5

*Doe v. NFL Enters., LLC*,
   No. C 17-00496 WHA, 2017 WL 697420 (N.D. Cal. Feb. 22, 2017) ................................... 13

*Doe v. Noem*,
No. 2:25-CV-00633-DGE, 2025 WL 1295664 (W.D. Wash. May 5, 2025) .......................... 13

*Doe v. Penzato*,
No. 10-cv-5154 MEJ, 2011 WL 1833007 (N.D. Cal. May 13, 2011) .............................. 2, 3, 6

*Doe v. Purdue Univ.*,
No. 4:18-CV-89-JEM, 2019 WL 1757899 (N.D. Ind. Apr. 18, 2019) ................................. 13

*Doe v. Rostker*,
89 F.R.D. 158 (N.D. Cal. 1981) ..................................................................................... 3, 7, 8

*Doe v. Stanford Fed. Credit Union*,
No. 25-CV-07241-VKD, 2025 WL 2856301 (N.D. Cal. Oct. 8, 2025)............................... 4, 5

*Doe v. U.S. Immigr. & Customs Enf't*,
No. 1:23-CV-00971-MLG-JMR, 2024 WL 4389461 (D.N.M. Oct. 3, 2024) ....................... 15

*Doe v. Unknown Party*,
No. CV-24-00252-PHX-DLR, 2024 WL 492231 (D. Ariz. Feb. 7, 2024) .............................. 7

*Doe v. Williams Bowers Mgmt. LLC*,
No. 3:23-CV-00477, 2023 WL 12091154 (M.D. Tenn. Nov. 7, 2023) .................................. 6

*Does I thru XXIII v. Advanced Textile Corp.*,
214 F.3d 1058 (9th Cir. 2000).....................................................................................Passim

*Fleites v. MindGeek S.A.R.L.*,
No. CV 21-04920-CJC(ADSX), 2021 WL 2766886 (C.D. Cal. June 28, 2021) .............. 3, 7, 8

*H.C.R. v. Mullin*,
No. 2:25-CV-747-SPC-DNF, -- F.Supp.3d --,
2026 WL 850555 (M.D. Fla. Mar. 27, 2026)........................................................................ 15

*Heineke v. Santa Clara Univ.*,
No. 17-CV-05285-LHK, 2017 WL 6026248 (N.D. Cal. Dec. 5, 2017)............................... 4, 5

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
No. 23-MD-03084-CRB (LJC), 2025 WL 2076632 (N.D. Cal. July 22, 2025) ...................... 4

*Jacobellis v. State of Ohio*,
378 U.S. 184 (1964) ................................................................................................................ 9

*Jane Roes 1-2 v. SFBSC Mgmt., LLC*,
77 F. Supp. 3d 990 (N.D. Cal. 2015) ...................................................................................... 9

*K.H.B. by & through K.D.B. v. UnitedHealthcare Ins. Co.*,
No. C 18-04175 WHA, 2018 WL 4053457 (N.D. Cal. Aug. 24, 2018) ................................... 2

*Lam Rsch. Corp. v. Schunk Semiconductor*,
   65 F. Supp. 3d 863 (N.D. Cal. 2014) ................................................................................... 3

*Roe v. San Jose Unified Sch. Dist. Bd.*,
   No. 20-CV-02798-LHK, 2021 WL 292035 (N.D. Cal. Jan. 28, 2021).................................... 13

*United States v. Doe*,
   655 F.2d 920 (9th Cir. 1980).............................................................................................. 2

*Z.A. v. Lam*,
   No. 25-CV-06815-RMI, 2025 WL 2551848 (N.D. Cal. Aug. 15, 2025)............................. 4, 5

Rules

Fed. R. Civ. P. 10(1)............................................................................................................... 2

## **INTRODUCTION**

This case is about the harm caused when Defendants xAI Corp. and xAI LLC (together, "xAI") created and disseminated millions of sexualized and revealing deepfakes using its generative artificial intelligence ("AI") model Grok without the consent of those depicted. Plaintiffs South Carolina Doe, South Carolina Roe, New Jersey Doe, and Ohio Doe have chosen to stand up for the women and others to whom xAI demeaned in this manner. Both public figures and non-public figures who have taken a stance against xAI's conduct have faced increased online harassment, including the proliferation of sexualized and revealing deepfakes, created using Grok. Fearing the same retaliation faced by those who have opposed xAI's conduct, Plaintiffs filed their complaint using pseudonyms. Having stripped them of their clothes, xAI now seeks to strip Plaintiffs of their pseudonyms in an obvious effort to intimidate Plaintiffs into dropping the litigation by compounding the same harms that they seek to remedy.[1] As this Court has already ruled, these facts support allowing South Carolina Doe—and all Plaintiffs—to remain pseudonymous. ECF No. 9.

Asking this Court to reverse itself, xAI suggests that the abuse it has perpetuated is no big deal. In xAI's Motion to Compel Compliance with Federal Rule of Civil Procedure 10(a), or, in the Alternative, Motion for Leave to Move for Reconsideration (ECF No. 35 ("Mot." or "Motion")), xAI discounts the image-based sexual abuse that has had devastating psychological and real-life consequences for victims. xAI seeks to minimize the risk of harm to South Carolina Doe because it claims that the well-documented instances of retaliation happening to others who opposed xAI's practices or simply asked xAI to stop are somehow too different to be relevant to the Court's analysis. But there is no reason to think that the documented harm to others who have opposed the same conduct by xAI, including non-public figures like New Jersey Doe, will not recur here. For this reason, and because xAI can point to no real prejudice from allowing South

---

[1] xAI has also opposed Plaintiffs South Carolina Roe, New Jersey Doe, and Ohio Doe's Administrative Motion to Proceed Pseudonymously. (ECF No. 34.) While these Plaintiffs lack a right of reply, the Administrative Motion should be granted for the same reasons noted herein.

Carolina Doe to proceed pseudonymously, this Court should decline xAI's invitation to reconsider its previous ruling. This Court should continue to protect South Carolina Doe from the significant risk of retaliation and abuse that disclosure of her identity would foreseeably trigger. This protection is essential to vindicating Plaintiffs' and the Class's rights.

**I.      SOUTH CAROLINA DOE SHOULD BE ALLOWED TO PROCEED UNDER A PSEUDONYM.**

The general rule is that complaints state the names of the parties. *See* Fed. R. Civ. P. 10(1). In the Ninth Circuit, however, pseudonyms are permitted when "necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment." *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1980). *See also K.H.B. ex. rel K.D.B. v. UnitedHealthcare Ins. Co.*, No. 18-cv-04175-WHA, *K.H.B. by & through K.D.B. v. UnitedHealthcare Ins. Co.*, No. C 18-04175 WHA, 2018 WL 4053457, at *1 (N.D. Cal. Aug. 24, 2018), at *1 (N.D. Cal. Aug. 24, 2018). Courts "balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).

District Courts have broad discretion to determine whether a plaintiff may proceed anonymously. Consistent with *Advanced Textile* and other Ninth Circuit precedent, courts in this district regularly permit parties to proceed pseudonymously when sensitive issues are relevant to the litigation.[2]

**A.      xAI Has Not Justified Reconsideration of the Court's Previous Order.**

This Court has already ruled on the substance of xAI's Motion, and xAI does not meet its burden to show that this Court was wrong. In its Order granting South Carolina Doe's Motion to Proceed Under Pseudonym, this Court noted that the "most compelling" situations

---

[2] *See*, *e.g.*, *Doe P.B. v. Roblox Corp.*, No. 25-CV-10596-JST, 2026 WL 92058, at *1 (N.D. Cal. Jan. 13, 2026); *Doe v. Mt. Diablo Unified Sch. Dist.*, No. 18-cv-02589-JSC, 2018 WL 2317804, at *2 (N.D. Cal. May 22, 2018); *Doe v. Penzato*, No. 10-cv-5154 MEJ, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011).

warranting use of a pseudonym "involve matters which are highly sensitive, such as social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity." ECF No. 9 at 2 (quoting *Doe v. Rostker*, 89 F.R.D. 158, 162 (N.D. Cal. 1981)). This case involves allegations of a "highly sensitive, personal, and sexual nature" in the form of sexualized and revealing deepfakes, which is particularly harmful here because "all of her information would be easily searchable such that anyone with internet access will have all the necessary information to quickly ascertain Plaintiff's identity and to find the deepfake whose dissemination led to the harms underlying the complaint." *Id.* at *3 (quoting *Fleites v. MindGeek S.A.R.L.*, No. CV 21-04920-CJC(ADSX), 2021 WL 2766886, at *1 (C.D. Cal. June 28, 2021)). Additionally, this Court found that public reporting revealed a "disturbing pattern of retaliation against women, both generally and those publicly opposing Grok's creation of explicit deepfakes," thus posing a serious risk of retaliation to South Carolina Doe. *Id.*

In its Motion, xAI acts as if the Court did not make these findings and enter this order. Try as it might to cast its Motion as seeking leave to file a motion to reconsider "in the alternative," xAI's Motion at its core seeks reconsideration because it asks the Court to reverse a previous order. *Lam Rsch. Corp. v. Schunk Semiconductor*, 65 F. Supp. 3d 863, 869 (N.D. Cal. 2014) (treating motion as motion for reconsideration because "[c]ourts routinely look to the substance of the motion rather than how it is styled in determining the standard to apply"). Pursuant to Local Rule 7-9, reconsideration is available only under a narrow set of circumstances. xAI must show that "a material difference in fact or law exists from that which was presented to the Court," there are "new material facts or a change of law" after the Court's order, or that there was a "[m]anifest failure by the Court to consider material facts or dispositive legal arguments." LR 7-9(b). None of these circumstances are present here.

xAI also unreasonably delayed in bringing its Motion. *See* LR 7-9(b) (requiring "reasonable diligence"). x.AI Corp. was served on February 10, 2026, and xAI's counsel met with Plaintiffs' counsel a week later. ECF No. 12. And yet xAI waited more than three months

to move for reconsideration of the Court's order. Courts have found unreasonable delay when parties have sought reconsideration of orders sooner than xAI did. *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-MD-03084-CRB (LJC), 2025 WL 2076632, at *5 (N.D. Cal. July 22, 2025) (denying reconsideration because two-and-a-half month delay was unreasonable). The fact that South Carolina Doe filed an Amended Complaint is no excuse. xAI cites no new information that it did not know in February to support reconsideration. It also knew that the Amended Complaint would feature South Carolina Doe's pseudonym. xAI's Motion can be denied on this basis alone. *Id.*

Even if xAI showed reasonable diligence, the only "manifest error" xAI asserts is the fact that the Court granted an administrative motion allowing South Carolina Doe to proceed under a pseudonym before xAI was served. But the Court's order contained no error, much less a manifest error. Mot. at 19-20. Contrary to xAI's assertion, there is also nothing unusual about a motion to proceed under a pseudonym taking the form of an administrative motion. *See*, *e.g.*, *Z.A. v. Lam*, No. 25-CV-06815-RMI, 2025 WL 2551848, at *1 (N.D. Cal. Aug. 15, 2025) (granting administrative motion to proceed anonymously); *Heineke v. Santa Clara Univ.*, No. 17-CV-05285-LHK, 2017 WL 6026248, at *23 (N.D. Cal. Dec. 5, 2017) (same); *A.B. ex rel. W.F.B. v. San Francisco Unified Sch. Dist.*, No. C 07-4738 PJH, 2007 WL 2900527, at *1 (N.D. Cal. Oct. 2, 2007) (same). While administrative motions are inappropriate if a motion is "governed" by a Federal Rule of Civil Procedure, motions to proceed pseudonymously are not governed by Rule 10, which provides no relevant standard here and does not provide the basis for any part of Plaintiff's request for relief. *Adobe Sys. Inc. v. A & S Elecs., Inc.*, No. C 15-2288 SBA, 2016 WL 9105173, at *3 (N.D. Cal. Oct. 13, 2016). For this reason, it is unsurprising that xAI can cite no case holding that a motion to proceed under a pseudonym cannot be brought as an administrative motion.

Likewise, district courts frequently grant motions to proceed anonymously before a complaint is served. *See*, *e.g.*, *Doe v. Stanford Fed. Credit Union*, No. 25-CV-07241-VKD, 2025 WL 2856301, at *1 (N.D. Cal. Oct. 8, 2025) (granting motion to proceed anonymously

before any defendant appeared); *Z.A. v. Lam*, No. 25-CV-06815-RMI, 2025 WL 2551848, at *1 (N.D. Cal. Aug. 15, 2025) (same); *Doe*, 2018 WL 2317804, at *2 (same). Of course, a defendant can seek reconsideration later "if they can make a good faith showing of prejudice." *Stanford Fed. Credit Union*, 2025 WL 2856301, at *2; *Doe #2 v. Johnson*, No. 2:24-CV-01844-DJC-AC, 2024 WL 6951453, at *1 (E.D. Cal. Sept. 5, 2024) (allowing later-appearing defendants to "seek reconsideration"). If the Court treats xAI's Motion as seeking reconsideration, xAI's relief should be granted only if it meets the standard for reconsideration and makes a "good faith showing of prejudice." *Stanford Fed. Credit Union*, 2025 WL 2856301, at *2. Whether the Court characterizes xAI's entire motion as seeking reconsideration or not, the harm faced by South Carolina Doe drastically outweighs the non-existent prejudice to xAI.

### B.    xAI Has Not Made a Good Faith Showing of Prejudice.

Allowing Plaintiff to proceed pseudonymously will not prejudice xAI in any material way. Now that a protective order is in place, South Carolina Doe has shared her identity with xAI's counsel. This disclosure eliminates any risk of prejudice to xAI. *See*, *e.g.*, *Heineke*, 2017 WL 6026248, at *23 (finding no prejudice in part because party already knew the name of party who sought to proceed under pseudonym); *Al Otro Lado, Inc. v. Nielsen*, No. 17-cv-02366-BAS-KSC, 2017 WL 6541446, at *6 (S.D. Cal. Dec. 20, 2017) (finding "no prejudice" where Defendants knew true identity of plaintiffs). xAI's claimed prejudice is illusory.

Notably, while South Carolina Doe's counsel offered to meet and confer regarding any possible prejudice resulting from any Plaintiff proceeding under a pseudonym, xAI did not request to meet and confer before filing its Motion. Rios Decl. ¶ 9. Had xAI agreed to meet and confer instead of filing this Motion, the parties would have likely found ways to minimize or eliminate any claimed prejudice. Regardless, any possible prejudice is non-existent or can be mitigated as this case proceeds.

First, in asserting that xAI will not be able to consult with potential witnesses, xAI confuses a protective order issue for a pseudonymity issue. Mot. at 10-11. The Court ordered

that xAI and the Clerk use "only Plaintiff's pseudonym" in filings and to redact any documents containing her real name. ECF No. 9. The Protective Order, which xAI signed and stipulated to fully knowing that Plaintiff intended to designate her identity as "confidential," governs what xAI can or cannot say to potential witnesses, not the Court's order allowing South Carolina Doe to proceed under a pseudonym. ECF No. 20; Rios Decl. ¶ 4. The distinction between witness issues posed by pseudonymity and protective orders is well-illustrated by a case upon which xAI relies, *Doe No. 1 v. Wynn Resorts Ltd.*, where the plaintiff sought to both proceed anonymously *and* to conceal their identity from the defendant pursuant to a protective order. No. 19-cv-01904-GMN(VCF), 2022 WL 3214651, at *2 (D. Nev. Aug. 9, 2022). The prejudice in *Wynn Resorts* is not present here because xAI's counsel can share relevant information about South Carolina Doe in compliance with the Protective Order. This case is also unlike *Doe v. Del Rio*, where the court found that it was possible that unknown witnesses would be prevented from stepping forward if a plaintiff were allowed to proceed under a pseudonym. 241 F.R.D. 154, 159 (S.D.N.Y. 2006). This is not a case like *Del Rio* involving events that occurred on a public street where an unknown witness may materialize to say what really happened. To the extent there are other witnesses or events of which the parties are currently unaware, they can be documented and identified more readily. *Doe v. Williams Bowers Mgmt. LLC*, No. 3:23-CV-00477, 2023 WL 12091154, at *4 (M.D. Tenn. Nov. 7, 2023) (distinguishing *Del Rio* on this basis).

xAI's concerns with "increased complexity and costs" are also overstated. Mot. at 11. Again, xAI is confusing a protective order issue for a pseudonymity issue. The Court's order only affects how the parties and the Court can disclose a single piece of information on the public docket. Typing South Carolina Doe's pseudonym costs no more money or time than typing her real name. Redacting her real name will take next to no time. Moreover, given the nature of this case, "it is likely that Defendants will have to redact information regardless of whether Plaintiff's identity is made public." *Doe v. Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *4 (N.D. Cal. May 13, 2011). xAI concedes that the images it created should be

treated as confidential. There will be sealing and redacting in this case regardless of whether South Carolina Doe is allowed to proceed under a pseudonym.

Concerns about the impact of pseudonymity on a jury are also misplaced and premature. Mot. at 11. Before a jury trial and "at each stage in the proceedings," the Court can enter appropriate orders to "mitigate that prejudice" through jury instructions and other procedures. *Advanced Textile Corp.*, 214 F.3d at 1068. If these minimal-to-nonexistent burdens sufficed to outweigh a plaintiff's justified concerns about highly sensitive information and retaliation, then no plaintiff could ever proceed under a pseudonym. South Carolina Doe's concerns are serious and far outweigh xAI's claimed prejudice.

### C.    This Matter Involves Sensitive, Personal Information.

Allowing Plaintiff to remain anonymous will preserve privacy in a matter of sensitive and highly personal nature because it will prevent the same highly embarrassing and revealing deepfake that caused her severe distress from being surfaced again. Courts have recognized that plaintiffs who allege the invasion of highly personal and embarrassing interests can proceed anonymously because of the sensitive nature of their allegations. *Doe v. Unknown Party*, No. CV-24-00252-PHX-DLR, 2024 WL 492231, at *3 (D. Ariz. Feb. 7, 2024) (allowing individual alleging revenge pornography to remain anonymous); *Fleites*, 2021 WL 2766886, at *1 (allowing individuals depicted in sexually explicit videos to remain anonymous). This case is about highly personal and embarrassing deepfakes depicting Plaintiffs that were disseminated without their consent. Granting xAI's Motion risks further dissemination of the same images, which would mean that the "injury litigated against would occur as a result of the disclosure of the plaintiff's identity." *Rostker*, 89 F.R.D. at 162.

First, xAI claims that keeping the deepfake image itself under seal is sufficient to protect South Carolina Doe from "the type of social stigmatization that would justify anonymity." Mot. at 6. Not so. South Carolina Doe's name linked to the allegation that she was sexually portrayed in a bikini without her consent, will necessarily cause the same public scrutiny other victims of sexual abuse face. Questions such as whether she was "asking for it," "had done it before," or

whether her "skirt was too short," would be raised and examined publicly. Victims should not be subject to this type of public scrutiny and ridicule for attempting to remedy violations of their autonomy and consent, which is one of the reasons why courts regularly protect the identities of victims of rape and other types of sexual abuse. *See Fleites*, 2021 WL 2766886, at *1 ("Courts have specifically recognized that the use of pseudonyms may be appropriate in cases involving crimes relating to sexual abuse and exploitation.") (collecting cases). Victims of image-based sexual abuse, such as South Carolina Doe, should be treated no differently. South Carolina Doe's public identification would also necessarily point the public to the nonconsensual, revealing deepfake that Grok created and posted of her. Am. Compl. ¶¶ 114, 121; Decl. of South Carolina Doe ¶¶ 2-3. Anyone who saw the image could have saved it, and it can be shared again and posted elsewhere, further threatening South Carolina Doe's reputation and employment. Am. Compl. ¶¶ 117-18, 125, 127; Decl. of South Carolina Doe ¶¶ 6-7. This is a common problem with "digital sexual abuse." Ella Chakarian, *What It's Like to Get Undressed by Grok*, Rolling Stone (Jan. 19, 2026) ("Rolling Stone Article") (noting that the fact that an image "could have been screenshotted, downloaded, shared" and that aspect is a "really complex thing for people to grapple with").[3] South Carolina Doe's fear that the deepfake will resurface is well-founded: deepfakes created and posted by Grok but deleted from X have already begun resurfacing in other online forums. *Id.* (describing how Reddit users tracked down original Grok deepfakes and posted them). The interest in keeping private the "highly sensitive, personal, and sexual nature" of South Carolina Doe's deepfake weighs strongly in favor of allowing South Carolina Doe to proceed anonymously. *Fleites*, 2021 WL 2766886, at *1. xAI does not dispute that anyone could have saved this image, nor does xAI contend that this image cannot be found elsewhere on the internet, meaning that the "injury litigated against would occur as a result of the disclosure of the plaintiff's identity." *Rostker*, 89 F.R.D. at 162.

---

[3] *Available at* https://www.rollingstone.com/culture/culture-features/grok-sexualized-image-xai-elon-musk-women-1235501436/.

xAI seeks to minimize South Carolina Doe's privacy concerns by misconstruing them. She does not feel "embarrassed due to her association with this case[.]" Mot. at 12. Instead, she has experienced emotional distress from xAI creating a defamatory image of her and violating her autonomy and consent in the process. Courts in this District have held that cases that address "the area of human sexuality" are the kind of unusual case where pseudonymity is warranted. *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 994 (N.D. Cal. 2015) (collecting cases and granting pseudonymity to nude dancers in wage-and-hour case); *see Doe 1 v. Nat'l Collegiate Athletic Ass'n*, No. 22-CV-01559-LB, 2022 WL 3974098, at *2 (N.D. Cal. Aug. 30, 2022) (rejecting argument that pseudonymity is warranted only in cases involving sexual assault).

xAI's argument also poses difficult line-drawing problems for other Plaintiffs. xAI created an image of South Carolina Roe as a minor, in a compromising position with her father.[4] Am. Compl. ¶¶ 103-106; Decl. of South Carolina Roe ¶¶ 4-5. New Jersey Doe was depicted by xAI wearing a thong and spreading his butt cheeks. *Id.* ¶ 132; Decl. of New Jersey Doe ¶ 5-6. xAI created images of Ohio Doe (a) in a meat bikini; (b) in a bikini on her knees with a man's arm around her; (c) in a bikini with a man's arms around her waist; (d) covered in liquid and in a bikini; (e) in a bikini made of saran wrap; and (f) in a bikini kissing a man. *Id.* ¶ 145; Decl. of Ohio Doe ¶ 3-4. xAI effectively suggests that only pornography can form the basis of a legitimate privacy concern based on the creation of a video or image. As noted above, this is not the standard because allegations related to "the area of human sexuality" pose legitimate privacy concerns. *SFBSC Mgmt.*, LLC, 77 F. Supp. 3d at 994. Even if this were the standard, all of the images of Plaintiffs are, at the very least, compromising, and some are pornographic. *See* Merriam-Webster Dictionary, Pornography ("the depiction of erotic behavior (as in pictures, movies, or writing) intended to cause sexual excitement"); *Jacobellis v. State of*

---

[4] The public identification of South Carolina Roe poses additional serious privacy concerns, including the fact public identification would publicly reveal a victim in a pending criminal case involving CSAM. Decl. of South Carolina Roe ¶¶ 1-7, 11-12.

*Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring) (noting that to try to define pornography "trying to define what may be indefinable" and that "I know it when I see it[.]"). Courts have sensibly avoided these line-drawing exercises by finding that plaintiffs who allege harm of a sexual nature have substantial and justifiable privacy concerns. Here, the unique nature of South Carolina Doe's privacy concerns weighs heavily in favor of anonymity.

### D.   Identifying South Carolina Doe Would Expose Her to Retaliatory Harm.

Public identification will also significantly increase the "risk of retaliatory physical or mental harm" to South Carolina Doe because, once the public knows her identity, individuals can and likely will create even more disturbing deepfakes of her. *Advanced Textile Corp.*, 214 F.3d at 1068. The "danger of retaliation" is a "compelling ground" to allow the use of a pseudonym. *See Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004). The risk here is especially pronounced because the owner of xAI, Elon Musk, and xAI's product, Grok, have very vocal supporters online that have targeted women and other individuals who have opposed xAI's creation and distribution of deepfakes for online harassment, particularly by creating even more extreme deepfakes. Once someone is identified as the opposition, they are commonly subject to vicious campaigns of harassment and intimidation. This harm is both reasonable and severe.

People who have spoken up specifically about xAI's recent conduct in which Plaintiffs were swept up have been subject to retaliatory harassment. New Jersey Doe, for example, publicly posted on X to request that Grok not create images depicting him. Decl. of New Jersey Doe ¶¶ 2-7. For this, he was subjected to abuse. Trolls asked xAI to create sexualized, revealing, and degrading deepfakes of him, and xAI obliged. *Id.* Plaintiffs observed this pattern across the internet, whether the person opposing xAI was a public figure or not. Decl. of Ohio Doe ¶¶ 8-9; Decl. of South Carolina Doe ¶¶ 8-9; Decl. of South Carolina Roe ¶¶ 9-10. Whenever someone has tried to oppose xAI's practices, there is severe and clear retaliation. The

images get worse, both in terms of quantity and severity. Decl. of Ohio Doe ¶¶ 8-9; Decl. of South Carolina Doe ¶¶ 8-9; Decl. of South Carolina Roe ¶¶ 9-10.

Contrary to xAI's assertion that only "public figures" have faced retaliation, this pattern has recurred for seemingly everyone who has opposed xAI's practices whether they are public figures or not. Mot. at 15. For example, xAI created a deepfake of a 22-year-old photographer in a bikini covered in baby oil, after which she censored and reshared the image on X to "raise awareness of the dangers of Grok's new feature."[5] This "attracted an onslaught of new abuse" that included "even more disturbing sexual images of her." *Id*. As this non-public figure stated, "People saw it was upsetting me and I didn't like it and they kept doing more and more." The extreme images Grok generated of her included fully nude images and one with a ball gag in her mouth with her eyes rolled back. *Id.* Plaintiffs personally observed retaliation for *anyone* who opposed xAI on X. Decl. of Ohio Doe ¶¶ 8-9; Decl. of South Carolina Doe ¶¶ 8-9; Decl. of South Carolina Roe ¶¶ 9-10. New Jersey Doe, a non-public figure, also believes the deepfakes xAI generated of him were in retaliation for a post in which he asked Grok not to make such images. Decl. of New Jersey Doe ¶¶ 2-7.

Of course, the experience of public figures is also relevant because, if South Carolina Doe's identity is made public, she may well become a public figure. As evidenced by the countless articles cited herein, xAI's practices, and the individuals opposing them, have attracted public attention. Even xAI's Motion attracted press attention.[6] The examples of Emma's Myspace and Ashley St. Clair demonstrate why South Carolina Doe desires to not be publicly identified. Emma's Myspace, an X user described in the Rolling Stone Article, was also the subject of a retaliation campaign where "users tried to track down and spread the

---

[5] Amelia Gentleman and Helena Horton, 'Add blood, forced smile': how Grok's nudification tool went viral, The Guardian (Jan. 11, 2026), available at https://www.theguardian.com/news/ng-interactive/2026/jan/11/how-grok-nudification-tool-went-viral-x-elon-musk.

[6] *See* Mike Curley, Musk's XAI Opposes Anonymity In Deepfake Suit, Law360 (May 18, 2026), available at https://www.law360.com/articles/2478866/musk-s-xai-opposes-anonymity-in-deepfake-suit.

images of Emma" on Reddit after she opposed xAI's practices. *See* Rolling Stone Article. Similarly, the influencer Ashley St. Clair faced a campaign of harassment and retaliation after speaking up when she discovered that Grok had "undressed" her in a post. *St. Clair v. xAI et al.*, Case No. 26-cv-00386 (S.D.N.Y), Dkt. 1-1. St. Clair spoke up, posting publicly that she did not consent to Grok creating this image. *Id.* ¶ 21. What followed was a deluge of abusive and harassing images. *Id*. ¶¶ 26-27. South Carolina Doe personally witnessed abuse of Ashley St. Clair increase after she made it known she would take legal action to stop the deepfake abuse. Decl. of South Carolina Doe ¶ 8. Similarly, those that have taken a broader stance against the use of AI for image-based sexual abuse have become targets of deepfake abuse by Grok users. For example, three staffers at Collective Shout, an Australian organization that combats sexploitation and has spoken up against deepfakes specifically, "were undressed by Grok, morphed into extreme violent abuse material depicting them tortured and murdered and turned into AI deepfake porn videos performing oral sex."[7]

The point of such harassment is to prevent people from opposing Elon Musk, xAI, and the belief held by some that they have the right to use Grok to create any image they want of whomever they want, no matter how debasing the AI-generated image is. Individuals who publicly oppose practices like xAI's dissemination of sexualized and revealing deepfakes "face relentless gendered disinformation, deepfake attacks, and coordinated harassment campaigns [online] designed to silence, shame, and push them out of public life."[8] "The point" of such online harassment "is to make you not want to speak out, to make you not want to stand up for the truth, to just retreat into anonymity online."[9]

---

[7] *Media Release: Collective Shout calls on app stores to remove Grok until xAI disables nudifying feature used on three of our team* (Feb. 2, 2026), COLLECTIVE SHOUT, https://www.collectiveshout.org/media-release-collective-shout-demands-removal-of-grok-from-app-stores.
[8] *AI and anonymity fuel surge in digital violence against women* (Nov. 20, 2025), UN News, https://news.un.org/en/story/2025/11/1166411#:~:text=Women%20leaders%2C%20journalists%2C%20activists%2C,report%20receiving%20online%20death%20threats.
[9] *Available at* https://www.pbs.org/newshour/show/women-face-new-sexual-harassment-with-deepfake-pornography.

The Court cannot ignore this sad reality, the fact that this case has drawn significant public attention, or the pattern of harm that has recurred for people who oppose xAI. Courts in analogous circumstances take note of a pattern of retaliation and find that a plaintiff's fears are serious and well founded. *Doe v. Noem*, No. 2:25-CV-00633-DGE, 2025 WL 1295664, at *3 (W.D. Wash. May 5, 2025) (noting that, "in current social context," there are many individuals who oppose criminal immigrants who would retaliate against plaintiff and "[t]hat risk is especially acute online"); *Doe v. Purdue Univ.*, No. 4:18-CV-89-JEM, 2019 WL 1757899, at *3 (N.D. Ind. Apr. 18, 2019) (citing public reporting that "[t]here is a documented risk of retribution to individuals who allege sexual assault" and noting that the case drew "media attention and public comment"). xAI cannot distinguish the painful retaliation facing every other person who has spoken up publicly against xAI simply because it did not happen to South Carolina Doe.

The documented pattern of retaliation that has happened *this year* distinguishes the cases upon with xAI relies. *Roe v. San Jose Unified Sch. Dist. Bd.*, No. 20-CV-02798-LHK, 2021 WL 292035, at *9 (N.D. Cal. Jan. 28, 2021) (holding that plaintiffs did not show threat of retaliation because they relied on "threats made over 12 years ago" in very different circumstances); *Doe v. NFL Enters., LLC*, No. C 17-00496 WHA, 2017 WL 697420, at *2 (N.D. Cal. Feb. 22, 2017) (holding that plaintiffs did not show threat of retaliation because harms to other cheerleaders were "based on cheerleading" and not opposing the NFL). Unlike in other cases cited by xAI, the threat remains real because Grok continues to operate as it did before.[10] *Bride v. Snap Inc.*, No. 2:21-CV-06680-FWS-MRW, 2025 WL 819567, at *5 (C.D. Cal. Feb. 21, 2025) (holding that plaintiffs did not show threat of retaliation because harassment happened years ago and defendant ended the product that allowed harassment).

---

[10] Musk's Grok AI chatbot is still making sexual deepfakes, despite X's promise to stop it (Apr. 14, 2026), available at https://www.nbcnews.com/tech/tech-news/musks-ai-chatbot-grok-xai-making-sexual-deepfakes-imagine-rcna265855

*Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.* is likewise not on point. 596 F.3d 1036 (9th Cir. 2010). There, the Ninth Circuit evaluated whether threats on the internet supported a threat of physical threats to plaintiffs. *Id.* at 1045. The Ninth Circuit found that the people carrying out online threats were not actually threatening physical harm, and that the vast majority of "threats" were non-violent or political in nature. *Id.* Here, while there is no current threat of physical danger, the threat of online abuse is all too real and uncontroverted. Unlike threats of physical harm made online, the generation and dissemination of deepfakes is abuse that is perpetuated the moment the image is created—the image cannot be erased from the internet, it can show up in Plaintiffs real lives at any time without exculpatory context, and cause real damage to Plaintiffs' reputations, in addition to the psychological harm that occurs once Plaintiffs discover the images. Nothing about the threat of retaliation faced by South Carolina Doe "demonstrates frustration, a joke, or political commentary instead of a true intent to harm." *Id.* at 1044

Ignoring the widespread retaliation faced by individuals like South Carolina Doe, xAI focuses myopically on whether South Carolina Doe has documented "specific allegations of harm or threats of harm that she has personally suffered[.]" Mot. at 15. In other words, xAI asks the Court to find that South Carolina Doe cannot show a threat of retaliation because she has not been retaliated against yet. But avoiding retaliation is the entire point of South Carolina Doe's desire to remain anonymous. No court has restricted anonymity to those already facing retaliation because a "*risk* of retaliatory physical or mental harm" suffices. *Advanced Textile Corp.*, 214 F.3d at 1068 (emphasis added). Here, South Carolina Doe has outlined the fear of retaliation she faces,[11] a fear made all the more reasonable and severe by the supporting declarations of her fellow Plaintiffs and all available public reporting addressing this issue. Nothing more is required.

---

[11] xAI's objection that South Carolina Doe should not be able to submit evidence "on reply, which would deprive Defendants of the ability to respond" is nonsensical. Mot. at 15 n.4. xAI will file a reply in which it can respond.

**E.    The Public Interest Is Fully Served Without Disclosure of South Carolina Doe's Identity.**

The public's interest is fully served without disclosure of South Carolina Doe's name. South Carolina Doe's specific identity is incidental to the classwide claims that affect millions of people. The information relevant to the merits of the action will still be available to the public. *See*, *e.g.*, *Doe v. U.S. Immigr. & Customs Enf't*, No. 1:23-CV-00971-MLG-JMR, 2024 WL 4389461, at *3 (D.N.M. Oct. 3, 2024) (allowing class representatives to use pseudonyms partly because "the core issues and developments in the case will be publicly accessible"). For this reason, "individuals using pseudonyms often serve as class representatives." *H.C.R. v. Mullin*, No. 2:25-CV-747-SPC-DNF, -- F.Supp.3d --, 2026 WL 850555, at *13 (M.D. Fla. Mar. 27, 2026) (collecting cases); *see also Advanced Textile Corp.*, 214 F.3d at 1073 (allowing anonymity for collective action named plaintiffs).

Moreover, requiring disclosure of South Carolina Doe's identity in this context would ultimately deter, not advance, the public interest as Plaintiffs and other individuals would be less likely to pursue legal action to stop xAI's misconduct as well as pursue other actions to stop image-based abuse. Decl. of Ohio Doe ¶ 12; Decl. of South Carolina Doe ¶ 12; Decl. of South Carolina Roe ¶ 12; Decl. of New Jersey Doe ¶ 13. *See Doe K.G. v. Pasadena hospital Ass'n, Ltd.*, No. 218CV08710ODWMAAX, 2019 WL 1612828, at *1 (C.D. Cal. Apr. 15, 2019) ("the public's interest in allowing alleged victims of sexual assault to proceed anonymously outweighs any public interest in the plaintiff's identity"). "Indeed, the public has an interest in such cases being decided on the merits." *Advanced Textile Corp.*, 214 F.3d at 1073; *see also Doe v. City of Apple Valley*, No. 20-CV-499 (PJS/DTS), 2020 WL 1061442, at *3 (D. Minn. Mar. 5, 2020) ("Given the stigma and fear of violence previously mentioned," disclosing class representatives' identity "would likely discourage individuals from stepping forward and seeking redress"). At the very least, as with other prejudice claimed by xAI, any concern about the ability of the class to vet South Carolina Doe's adequacy can be managed as this case progresses.

## <u>CONCLUSION</u>

Here, the balance of interests weighs decisively in favor of allowing South Carolina Doe to proceed anonymously. Thus, to protect South Carolina Doe's sensitive information and prevent further online abuse, the Court should grant this Motion.

Dated: May 29, 2026                                    Respectfully submitted,

                                                       BERGER MONTAGUE PC

                                                       <u>/s/ Sophia M. Rios</u>
                                                       Sophia M. Rios, SBN 305801
                                                       8241 La Mesa Blvd., Suite A
                                                       La Mesa, CA 91942
                                                       Tel: (619) 489-0300
                                                       srios@bergermontague.com

                                                       E. Michelle Drake*
                                                       1229 Tyler Street NE, Suite 205
                                                       Minneapolis, MN 55413
                                                       Tel: (612) 594-5999
                                                       emdrake@bergermontague.com

                                                       James Hannaway, *pro hac vice*
                                                       1001 G Street, NW
                                                       Suite 400 East
                                                       Washington, DC 20001
                                                       Tel: (202) 559-9740
                                                       jhannaway@bergermontague.com

                                                       * *pro hac vice* forthcoming

                                                       *Counsel for Plaintiffs*