SAWYER & LABAR LLP
ADRIAN SAWYER (State Bar No. 203712)
  *sawyer@sawyerlabar.com*
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820

CAHILL GORDON & REINDEL LLP
JOEL KURTZBERG (*admitted pro hac vice*)
  *jkurtzberg@cahill.com*
IVAN TORRES (*admitted pro hac vice*)
  *itorres@cahill.com*
32 Old Slip
New York, NY 10005
Telephone: 212.701.3120

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

|  |  |
|---|---|
| JANE DOE, SOUTH CAROLINA ROE, NEW JERSEY DOE, and OHIO DOE on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>X.AI CORP. and X.AI LLC,<br><br>Defendants. | Case No. 5:26-cv-00772-PCP<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL SOUTH CAROLINA DOE TO COMPLY WITH FRCP 10(A)**<br><br>Date:  July 9, 2026<br>Time:  10:00 a.m.<br>Crtrm:  8, 4th Floor<br><br>**Judge:**  Hon. P. Casey Pitts |

Case No. 5:26-cv-00772-PCP

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     ARGUMENT ............................................................................................................. 1

   A.   South Carolina Doe Should Not Be Permitted to Proceed Pseudonymously ...................... 1

      1.   This Case Does Not Involve a Significant Privacy Interest ............................................... 2

      2.   South Carolina Doe Fails to Allege a Credible Threat of Harm ...................................... 5

      3.   Defendants Are Prejudiced by South Carolina Doe Proceeding Pseudonymously .......... 8

      4.   The Public Is Entitled to Know South Carolina Doe's Identity .................................... 10

      5.   All Four Plaintiffs Should Be Required to Proceed Under Their True Identities .......... 11

   B.   Defendants' Motion Is Procedurally Proper ........................................................................ 12

III.    CONCLUSION ......................................................................................................... 13

Case No. 5:26-cv-00772-PCP

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL SOUTH CAROLINA DOE TO
COMPLY WITH FRCP 10(A)

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Al Otro Lado, Inc.* v. *Nielsen*,
2017 WL 6541446 (S.D. Cal. Dec. 20, 2017) .................................................................. 9n

*In re Ashley Madison Customer Data Sec. Breach Litig.*,
2016 WL 1366616 (E.D. Mo. Apr. 6, 2016) .................................................................. 11

*Doe #2* v. *Johnson*,
2024 WL 6951453 (E.D. Cal. Sept. 5, 2024) .................................................................. 13

*Doe* v. *Amazon.com, Inc.*,
2011 WL 13073281 (W.D. Wash. Dec. 23, 2011) .......................................................... 8

*Doe* v. *Bogan*,
542 F. Supp. 3d 19 (D.D.C. 2021) .................................................................................. 3

*Doe* v. *Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) .................................................................... 1, 12

*Doe* v. *Felician Univ.*,
2019 WL 2135959 (D.N.J. May 15, 2019) ...................................................................... 8

*Doe* v. *Hillsborough Twp. Bd. of Educ.*,
2024 WL 4028293 (D.N.J. Aug. 30, 2024) ...................................................................... 8

*Doe* v. *Holder*,
2011 WL 6329858 (N.D. Cal. Dec. 14, 2011) ................................................................ 12

*Doe* v. *Indiana Univ. - Bloomington*,
720 F. Supp. 3d 694 (S.D. Ind. 2024) ............................................................................ 8

*Doe* v. *John F Kennedy Univ.*,
2013 WL 4565061 (N.D. Cal. Aug. 27, 2013) ................................................................ 12

*Doe* v. *Kamehameha Schs./Bernice Pauahi Bishop Est.*,
596 F.3d 1036 (9th Cir. 2010) .................................................................................... 1, 7

*Doe* v. *Mahboubi-Fardi*,
2024 WL 2206640 (C.D. Cal. Jan. 2, 2024) .................................................................... 4

*Doe* v. *Main Line Hosps., Inc.*,
2020 WL 5210994 (E.D. Pa. Sept. 1, 2020) .................................................................... 8

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL SOUTH CAROLINA DOE TO COMPLY WITH FRCP 10(A)

*Doe* v. *Mt. Diablo Unified Sch. Dist.*,
 2018 WL 2317804 (N.D. Cal. May 22, 2018) ........................................................................ 2

*Doe* v. *NFL Enters., LLC*,
 2017 WL 697420 (N.D. Cal. Feb. 22, 2017) .................................................................... 6, 11

*Doe* v. *Penzato*,
 2011 WL 1833007 (N.D. Cal. May 13, 2011) .................................................................. 2, 3

*Doe* v. *Regents of Univ. of California*,
 2025 WL 1030247 (S.D. Cal. Apr. 7, 2025) ...................................................................... 10

*Doe* v. *Rostker*,
 89 F.R.D. 158 (N.D. Cal. 1981) .......................................................................................... 4

*Doe* v. *Stanford Fed. Credit Union*,
 2025 WL 2856301 (N.D. Cal. Oct. 8, 2025) ..................................................................... 13

*Doe* v. *Unknown Party*,
 2024 WL 492231 (D. Ariz. Feb. 7, 2024) ........................................................................... 3

*Doe P.B.* v. *Roblox Corp.*,
 2026 WL 92058 (N.D. Cal. Jan. 13, 2026) .......................................................................... 2

*Fleites* v. *MindGeek S.A.R.L.*,
 2021 WL 2766886 (C.D. Cal. June 28, 2021) ..................................................................... 3

*Heineke* v. *Santa Clara Univ.*,
 2017 WL 6026248 (N.D. Cal. Dec. 5, 2017) ..................................................................... 9n

*Jane Roes 1-2* v. *SFBSC Mgmt., LLC*,
 77 F. Supp. 3d 990 (N.D. Cal. 2015) ................................................................................... 3

*Liberty Media Holdings, LLC* v. *Swarm Sharing Hash File*,
 821 F. Supp. 2d 444 (D. Mass. 2011) ................................................................................. 4

*Michael* v. *Bloomberg L.P.*,
 2015 WL 585592 (S.D.N.Y. Feb. 11, 2015) ...................................................................... 11

*Rapp* v. *Fowler*,
 537 F. Supp. 3d 521 (S.D.N.Y. 2021) .............................................................................. 7–8

*Richmond Newspapers, Inc.* v. *Virginia*,
 448 U.S. 555 (1980) (plurality opinion) ............................................................................ 11

*Roe* v. *Smith*,
 116 Cal. App. 5th 227, 248 (2025) ............................................................................. 3, 12n

Case No. 5:26-cv-00772-PCP

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL SOUTH CAROLINA DOE TO
COMPLY WITH FRCP 10(A)

*Saylor* v. *X.AI Corp.*,
  Case No. 26STCV06064 (Cal. Super. Ct. 2026) ...................................................................... 4

*Sherman* v. *Trinity Teen Sols., Inc.*,
  339 F.R.D. 203 (D. Wyo. 2021) ...................................................................................... 11

*Sweet* v. *Pfizer*,
  232 F.R.D. 360 (C.D. Cal. 2005) ...................................................................................... 12

*United States* v. *Martinez-Leon*,
  565 F. Supp. 2d 1131 (C.D. Cal. 2008) .......................................................................... 12

*Z.A.* v. *Lam*,
  2025 WL 2551848 (N.D. Cal. Aug. 15, 2025) .............................................................. 13

Case No. 5:26-cv-00772-PCP

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL SOUTH CAROLINA DOE TO COMPLY WITH FRCP 10(A)

## I.  INTRODUCTION[1]

For the reasons explained in Defendants' opening brief (the "Motion" or "Mot.") (ECF No. 35), this Court should reevaluate its January 29, 2026 order (the "Order") (ECF No. 9) permitting South Carolina Doe to proceed pseudonymously and require her to litigate this case under her true identity.  The Court issued its Order before Defendants joined the case, without Defendants having ever been served, and without the benefit of briefing from Defendants.  That alone is grounds to revisit the issue.  As one court in this district held on nearly identical facts, "[n]ow that defendant's counsel has appeared and the parties have engaged in motion practice that provides additional insight into the case, the circumstances have changed materially."  *Doe* v. *Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1053–54 (N.D. Cal. 2020) (granting defendants' motion to compel compliance with Rule 10(a)).

On the merits, the Court should require South Carolina Doe to proceed using her real name.  Though South Carolina Doe's Opposition to Defendants' Motion (the "Opposition" or "Opp.") (ECF No. 37) tries to justify her pseudonymous treatment, the conclusory, speculative allegations contained therein cannot overcome the "strong general presumption that plaintiffs will conduct litigation under their own names."  *Doe* v. *Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1043 (9th Cir. 2010).  Defendants' Motion should be granted, or, in the alternative, Defendants should be granted leave to move for reconsideration.

## II.  ARGUMENT

### A.  South Carolina Doe Should Not Be Permitted to Proceed Pseudonymously

South Carolina Doe's Opposition sets forth four arguments for proceeding pseudonymously: (i) this case involves sensitive, personal information (Opp. at 7–10), (ii) South Carolina Doe faces a threat of retaliatory harm if identified (*id.* at 10–14), (iii) Defendants have not shown that they will be prejudiced if South Carolina Doe proceeds pseudonymously (*id.* at 5–7), and (iv) the public interest is not served if South Carolina Doe is identified (*id.* at 15).  Each argument fails.

---

[1] Unless stated otherwise, emphasis in quotations is added and internal citations and quotations have been omitted.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL SOUTH CAROLINA DOE TO COMPLY WITH FRCP 10(A)

### 1.  This Case Does Not Involve a Significant Privacy Interest

The Opposition transparently tries, and fails, to manufacture a compelling privacy interest here by analogizing South Carolina Doe to "victims of rape and other types of sexual abuse." *Id.* at 8; *see also id.* at 2 n.2 (citing *Doe P.B.* v. *Roblox Corp.*, 2026 WL 92058 (N.D. Cal. Jan. 13, 2026) (alleging the sexual abuse of a minor child); *Doe* v. *Mt. Diablo Unified Sch. Dist.*, 2018 WL 2317804 (N.D. Cal. May 22, 2018) (alleging the repeated sexual assault of a mentally disabled person); *Doe* v. *Penzato*, 2011 WL 1833007 (N.D. Cal. May 13, 2011) (alleging the physical and sexual assault of a human trafficking victim)).  But South Carolina Doe's attempt to align herself with such victims cannot withstand serious scrutiny, given the actual factual allegations underpinning her case— namely, that someone used Defendants' generative-AI chatbot, Grok, to create a "deepfake" image of South Carolina Doe wearing a bikini.  ECF No. 28 (the "Amended Complaint" or "AC") ¶ 114.

Defendants have already represented that they will agree to keep the deepfake image at issue here out of the public eye.  Mot. at 6.  Given that, the only privacy interest raised by the request to proceed pseudonymously is an interest in not having the public know about South Carolina Doe's claim that someone used Grok to create an image of her wearing a bikini, without her consent, that was a "deepfake" (i.e., was not real).  While Plaintiffs use inflammatory rhetoric to describe that interest—e.g., claiming that having South Carolina Doe's "name linked to the allegation that she was sexually portrayed in a bikini" would subject her to "the same public scrutiny other victims of sexual abuse face" (Opp. at 7)—the rhetoric fails to match the reality of the actual allegations, which do not raise a significant privacy interest.

What South Carolina Doe actually alleges is that she was ***defamed*** by X.AI, not that she was a victim of sexual abuse.  *See, e.g.*, *id.* at 9 ("xAI creat[ed] a defamatory image of her."); AC ¶¶ 238– 42 (alleging defamation).  All of South Carolina Doe's claims are premised on the notion that the image that a third party created of her using Grok was a "deepfake," which, by definition, ***is not real***.  And South Carolina Doe's alleged injury is derived from the possibility that someone ***might believe*** that the deepfake image of her in a bikini is real.  *See* ECF No. 37-2 ("SCD Decl.") ¶ 4 ("I was overwhelmed with thoughts of who would see the deepfake and think that I had taken the image

2                                  Case No. 5:26-cv-00772-PCP

myself."). By filing this case, then, South Carolina Doe is publicly proclaiming the falsehood of the deepfake image—i.e., she did not post a photo of herself wearing that bikini. But that does not create a significant privacy interest, particularly given that the deepfake image itself will not be made public.

In the defamation context, courts across the country "have expressed a reluctance to allow defamation plaintiffs the option to remain anonymous," and "[w]hile defamation plaintiffs are not categorically foreclosed from proceeding pseudonymously, they are generally ill suited to do so; courts should require a robust evidentiary showing in such a case." *Roe* v. *Smith*, 116 Cal. App. 5th 227, 248 (2025); *see also Doe* v. *Bogan*, 542 F. Supp. 3d 19, 23 (D.D.C. 2021) ("The allegations in defamation cases will very frequently involve statements that, if taken to be true, could embarrass plaintiffs or cause them reputation harm. This does not come close to justifying anonymity.").

The allegations and procedural posture here make South Carolina Doe particularly ill-suited to proceed pseudonymously. Given that Defendants have agreed to keep any deepfake images in this case under seal (*see* Mot. at 6), South Carolina Doe's claimed privacy interest is essentially rendered moot. That a third party used artificial intelligence to create a deepfake image of South Carolina Doe wearing a bikini—without disclosure of the image itself—is neither scandalous nor embarrassing, and does not threaten her with the "type of public scrutiny and ridicule" that courts have traditionally recognized as necessitating pseudonymity. *See* Opp. at 8 (citing *Fleites* v. *MindGeek S.A.R.L.*, 2021 WL 2766886, at *1 (C.D. Cal. June 28, 2021) (collecting criminal sexual abuse cases in which pseudonymity was granted to victims)). Whereas, rightly or wrongly, there is a significant social stigma associated with being a victim of sexual assault (*see Penzato*, 2011 WL 1833007, at *1 (cited in Opp. at 2 n.2)), creating pornography (*see Doe* v. *Unknown Party*, 2024 WL 492231, at *1 (D. Ariz. Feb. 7, 2024) (cited in Opp. at 7)), or even working as an exotic dancer (*see Jane Roes 1-2* v. *SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 991–92 (N.D. Cal. 2015) (cited in Opp. at 9))—all of which relate to "the area of human sexuality" (Opp. at 9)—the same cannot be said of individuals, such as South Carolina Doe, who are alleged to have been depicted in ***fake*** online images. There is nothing inherently sexual or stigmatizing about the abstract fact, standing

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL SOUTH CAROLINA DOE TO COMPLY WITH FRCP 10(A)

alone, that someone created a deepfake image of South Carolina Doe.  Thus, this Court should decline Plaintiffs' invitation to expand the "limited exceptions to Rule 10" to include anyone who finds themselves the subject of an unpleasant or unwanted deepfake image.  *Doe* v. *Rostker*, 89 F.R.D. 158, 161 (N.D. Cal. 1981) (listing traditionally recognized exceptions, such as in cases involving "abortion" or "mental illness"); *see also Doe* v. *Mahboubi-Fardi*, 2024 WL 2206640, at *4 (C.D. Cal. Jan. 2, 2024) ("[V]iewed collectively, the allegations in the Complaint remain of a different nature than that which typically justifies the use of pseudonyms, such as information about sexual abuse, human trafficking, or mental illness."); *Liberty Media Holdings, LLC* v. *Swarm Sharing Hash File*, 821 F. Supp. 2d 444, 453 (D. Mass. 2011) ("The potential embarrassment to Does 1–38 of being associated with allegations of infringing hardcore pornography does not constitute an exceptional circumstance that would warrant allowing the defendants to proceed anonymously.").

Indeed, a California state court recently heard a near-identical request for pseudonymity in another case brought against X.AI in relation to alleged sexualized deepfakes created by Grok and required the plaintiff to proceed under her true identity.  *See Saylor* v. *X.AI Corp.*, Case No. 26STCV06064 (Cal. Super. Ct. 2026).  In *Saylor*, the plaintiff alleged that third parties used Grok to create and disseminate several sexualized deepfake images of her on the X platform.  *See* February 25, 2026 Complaint, *Saylor*, Case No. 26STCV06064.  Claiming that her case involved sensitive privacy interests due to the sexualized nature of the deepfake images at issue, the plaintiff sought to proceed under the pseudonym "Daphne Doe."  *See* March 26, 2026 Motion to Proceed Pseudonymously, *Saylor*, Case No. 26STCV06064.  X.AI opposed the plaintiff's motion, asserting many of the same grounds as here, and, as here, made clear that it would agree to keep any deepfake images of the plaintiff under seal.  *See* April 15, 2026 Partial Opposition to Plaintiff's Motion to Proceed Pseudonymously and Plaintiff's Motion to Seal Unredacted Complaint, *Saylor*, Case No. 26STCV06064.  The court heard argument on April 28, 2026 and tentatively ruled that the motion to proceed under pseudonym would be denied.  The court further directed the parties to meet and confer about a stipulation to resolve the pseudonymity issues.  *See* June 5, 2026 Declaration of Joel

4                     Case No. 5:26-cv-00772-PCP

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL SOUTH CAROLINA DOE TO COMPLY WITH FRCP 10(A)

Kurtzberg ("Kurtzberg Decl."), Ex. 1 (May 7, 2026 Stipulation and Order Regarding Plaintiff's Motion to Seal the Unredacted Complaint and Motion to Proceed Pseudonymously, *Saylor*, Case No. 26STCV06064).  On May 5, 2026, the parties entered into a stipulation, which the court so-ordered on May 7, 2026, whereby the plaintiff agreed to proceed under her true identity and the deepfake images at issue—which were included in the body of the complaint—were redacted.  *Id.* This case should have the same result.

### 2.  South Carolina Doe Fails to Allege a Credible Threat of Harm

In her Opposition, South Carolina Doe alleges two theories of retaliatory harm in support of proceeding pseudonymously: if her true identity is revealed (i) the deepfake image of her may resurface and be disseminated online (Opp. at 7–8) and (ii) third parties may create additional deepfake images of her (*id.* at 10–12).  Neither argument warrants allowing South Carolina Doe to proceed pseudonymously.

The supposed threat that the prior deepfake image of South Carolina Doe may resurface online is entirely speculative—South Carolina Doe claims that "[a]nyone who saw the image ***could have*** saved it, and it ***can be*** shared again and posted elsewhere."  *Id.* at 8; *see also* SCD Decl. ¶ 6 ("I believe it is likely the individual who asked Grok to make the image saved it because he wanted the image in the first place.").  According to South Carolina Doe, the deepfake image was only posted on the X platform in early January for three days (AC ¶¶ 114, 122), and she has introduced no evidence—aside from her own supposition—demonstrating that the deepfake image was in fact saved and/or is likely to be further disseminated.  It has now been more than 5 months since the image was posted, and South Carolina Doe does not allege that it has been reposted anywhere since it first appeared.  Of course, if the image ***was*** saved, it could be posted again whether or not South Carolina Doe's name becomes associated with her lawsuit.  There is no reason to believe that use of South Carolina Doe's real name in connection with this lawsuit will increase the chances of the image being reshared, and South Carolina Doe fails to demonstrate why that would even be the case.

Similarly, South Carolina Doe's claim that new deepfake images may be created of her is also entirely speculative.  *See* SCD Decl. ¶ 9 ("If I were forced to reveal my name publicly as part

of this case, I would fear that those who support Elon Musk, his companies, and Grok . . . [would] retaliate against me by creating additional and more extreme deepfakes of me using images of me that are online."). As explained in Defendants' Motion, South Carolina Doe puts forth no credible evidence to show that, of the countless people publicly speaking out about the issues related to deepfake images, she, in particular, would be targeted for retaliation. *See* Mot. at 8; *see also Doe* v. *NFL Enters., LLC*, 2017 WL 697420, at *2 (N.D. Cal. Feb. 22, 2017) (where plaintiff failed to show she "is vulnerable to retaliation relative to, e.g., anyone else who might incur the wrath of loyal fans by suing the NFL" the court found she failed to show a "strong need for anonymity here"). Instead, South Carolina Doe cherry-picked a handful of mostly public figures (such as Ashley St. Clair, a political influencer and the mother of one of Elon Musk's children)—who have sought out media attention to share their opinions on AI and been the target of online harassment as a result—to demonstrate why she is also at risk for retaliation. *See* Opp. at 11–12. But South Carolina Doe fails to establish any connection between the experiences of these unrelated third parties and her own. *See* Mot. at 9–10.

Indeed, the very harm that South Carolina Doe alleges—Grok being used to create "more extreme" "sexually explicit or fully nude" deepfakes of her—is no longer a viable threat (if it ever truly was). SCD Decl. ¶¶ 7, 9. This is evidenced by her own allegations: according to the Amended Complaint, the deepfake at issue was posted on January 3, 2026, removed three days later, has not reappeared since, and South Carolina Doe has not alleged that any further deepfake images of her have been created. AC ¶¶ 114, 122. And as the NBC article cited in South Carolina Doe's own Opposition confirms, "[t]he number of sexualized deepfakes created by Grok and posted to X appears to have decreased significantly since . . . January[,]" Grok now "turns down or ignores many of the sexualized requests it receives publicly on X[,]" and despite searching for sexualized deepfake images, "[n]one of the women in Grok-generated images seen by NBC News were naked."[2] To the extent that Grok was being misused by third parties for a brief period of time in early January, that

---

[2] David Ingram, Musk's Grok AI chatbot is still making sexual deepfakes, despite X's promise to stop it, NBC News (Apr. 14, 2026), available at https://www.nbcnews.com/tech/tech-news/musks-ai-chatbot-grok- xai-making-sexual-deepfakes-imagine-rcna265855 (cited in Opp. at 13).

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL SOUTH CAROLINA DOE TO COMPLY WITH FRCP 10(A)

is no longer the case. As the article further explains, X.AI instituted so-called "undressing restrictions" on Grok in January to prevent the exact type of harm that South Carolina Doe speculatively suggests might occur.

Furthermore, allowing South Carolina Doe to proceed pseudonymously based solely on a threat of potential internet harassment or cyberbullying risks setting a dangerous precedent. South Carolina Doe alleges that "those who support Elon Musk, his companies, and Grok" are "very vocal online" and therefore may "harass [her] or [her] family members on social media" if her identity is revealed. SCD Decl. ¶¶ 9–10. South Carolina Doe further alleges that she has witnessed similar online harassment against others "who spoke out against Grok[,]" including Ashley St. Clair. *Id.* ¶ 8. But this same supposed "threat of harm"—i.e., online harassment—is present when suing ***any*** public figure with a vocal online following: be it Elon Musk, President Trump, Lebron James, or Taylor Swift.[3] And if this Court were to permit South Carolina Doe to proceed pseudonymously, then seemingly anyone who sues a public figure and can point to examples of that public figure's supporters acting unruly online would have grounds to proceed pseudonymously. For this very reason, and given the ease with which unpleasantries are shared on social media, courts across the country have expressed significant hesitancy to permit pseudonymity premised on online harassment, as opposed to real world threats of harm. *See Kamehameha*, 596 F.3d at 1045 ("[M]any times people say things anonymously on the internet that they would never say in another context and have no intention of carrying out."); *Rapp* v. *Fowler*, 537 F. Supp. 3d 521, 530 n.50 (S.D.N.Y. 2021) ("[W]hile online harassment of any kind is repugnant, it is an unfortunate consequence of the social media age. Many who make accusations against public figures are forced to endure it. Without a specific threat of harm and a privacy interest that outweighs the prejudice to the defendant and the public's right to open courts, however, C.D.'s allegation that he would be subjected to online

---

[3] *See, e.g.*, Gretel Khan, Write a bad review of Taylor Swift and get death threats: Inside the fan backlash facing critics in the digital age, Reuters Institute (Oct. 9, 2025), available at https://reutersinstitute.politics.ox.ac.uk/news/write-bad-review-taylor-swift-and-get-death-threats-inside-fan-backlash-facing-critics-digital (describing the "threats of doxxing, harassment, and cyberbullying" perpetrated by so-called "Swifties"—fans of Taylor Swift—against members of the media).

Case No. 5:26-cv-00772-PCP

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL SOUTH CAROLINA DOE TO COMPLY WITH FRCP 10(A)

harassment if he were identified, even if it proved accurate, would not alone entitle him to proceed . . . anonymously."); *Doe* v. *Felician Univ.*, 2019 WL 2135959, at \*4 (D.N.J. May 15, 2019) ("Without question, the blog post and comments are filled with hate speech and offensive comments, but none of the language create a risk of retaliatory harm."); *Doe* v. *Amazon.com, Inc.*, 2011 WL 13073281, at \*3 (W.D. Wash. Dec. 23, 2011) ("Plaintiff argues she faces 'new-age harms' such as 'cyber bullying.' . . . Plaintiff present[s] no evidence that the retaliation she may encounter is at all similar to the truly grave harms plaintiffs feared in *Advanced Textile Corp*.").

Finally, South Carolina Doe's assertion that, if required to proceed under her true identity, she "would have to seriously consider [her] continued participation in the case" (SCD Decl. ¶ 12) is not a sufficient basis for permitting her to proceed pseudonymously. *See Doe* v. *Hillsborough Twp. Bd. of Educ.*, 2024 WL 4028293, at \*11 (D.N.J. Aug. 30, 2024) (considering a near-identical statement, the Court stated that, "[A] plaintiff's stubborn refusal to litigate openly by itself cannot outweigh the public's interest in open trials"); *Doe* v. *Main Line Hosps., Inc.*, 2020 WL 5210994, at \*4 n.3 (E.D. Pa. Sept. 1, 2020) ("[E]ven if Doe had represented that she would withdraw her claims, we agree with Defendants that the factor, standing alone, does not outweigh the other factors."); *see also Doe* v. *Indiana Univ. - Bloomington*, 720 F. Supp. 3d 694, 702 (S.D. Ind. 2024) ("Plaintiffs must step into the light and sue in the open, or not at all."). Additionally, although the plaintiff in the *Saylor* case in Los Angeles Superior Court was required to proceed under her true identity, she has continued to pursue her claims. There is no reason South Carolina Doe cannot do the same.

### 3. Defendants Are Prejudiced by South Carolina Doe Proceeding Pseudonymously

South Carolina Doe's Opposition makes the conclusory, dismissive claim that "any possible prejudice" to Defendants from proceeding pseudonymously "is non-existent" because South

Carolina Doe has privately shared her true identity with Defendants.[4]  Opp. at 5.  This is not so.[5]  In their Motion, Defendants identified three ways in which allowing South Carolina Doe to proceed pseudonymously would prejudice the defense: (i) it will impair Defendants' discovery efforts, (ii) it will increase the burden on the parties and the Court, and (iii) it unfairly and unnecessarily suggests to a jury that this case is particularly severe.  Mot. at 10–11.  South Carolina Doe fails to adequately respond to these concerns.

First, with regard to sharing South Carolina Doe's name with potential witnesses, the Opposition asserts that Defendants have "confuse[d] a protective order issue for a pseudonymity issue," because Defendants "kn[ew] that [South Carolina Doe] intended to designate her identity as 'confidential'" under the protective order.  Opp. at 6.  This argument is a red herring.  The protective order does not permit Plaintiffs to designate ***public information*** as "confidential."  *See* ECF No. 21 § 3.  Accordingly, Plaintiffs' ability to designate South Carolina Doe's name as "confidential" entirely depends on her ability to proceed pseudonymously—i.e., if pseudonymity is denied, then Plaintiffs cannot designate South Carolina Doe's name as confidential because it will already be a part of the public docket.  More to the point, if South Carolina Doe's name and any information that would readily reveal her name (such as her X user account information) must be kept private due to her pseudonymous treatment, this would severely hamstring Defendants' ability to reach out to potential witnesses, such as third-party X users that generated or disseminated the deepfake images at issue in this case.

---

[4] South Carolina Doe further suggests that any prejudice could have been avoided if the parties met and conferred prior to Defendants filing the instant Motion.  *See* Opp. at 5.  Yet, the parties did not have an obligation under the Local Civil Rules to meet and confer, and as explained herein, the prejudice to Defendants can only be remedied by requiring South Carolina Doe to proceed under her true identity.

[5] The cases cited in the Opposition for this proposition are inapposite.  *See* Opp. at 5 (citing *Heineke* v. *Santa Clara Univ.*, 2017 WL 6026248 (N.D. Cal. Dec. 5, 2017); *Al Otro Lado, Inc.* v. *Nielsen*, 2017 WL 6541446 (S.D. Cal. Dec. 20, 2017)).  In *Heineke*, where the movant seeking to proceed pseudonymously was the ***defendant***, the plaintiff obviously "already kn[ew] Doe's identity[,]" and the court found it compelling that the movant/defendant "is not the one who has chosen to avail herself of the public forum of the Court."  2017 WL 6026248, at *22–23.  And in *Al Otro Lado*, the defendants did "not claim[] they will suffer any prejudice by permitting the Individual Plaintiffs to proceed pseudonymously," and in fact, "the Defendants previously filed a non-opposition to the request."  2017 WL 6541446, at *6.

Case No. 5:26-cv-00772-PCP

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL SOUTH CAROLINA DOE TO COMPLY WITH FRCP 10(A)

Second, South Carolina Doe attempts to minimize the increased burden pseudonymity would cause here by myopically focusing on the "single piece of information" that is South Carolina Doe's name. Opp. at 6 ("Typing South Carolina Doe's pseudonym costs no more money or time than typing her real name. Redacting her real name will take next to no time."). This argument misses the forest for the trees. Allowing South Carolina Doe to proceed pseudonymously means that, not only her name must be kept private, but also any identifying information that could reveal her name must be kept private as well—including, most relevant here, her social media account information. Considering that South Carolina Doe's allegations center almost entirely on activity occurring on the X platform, Defendants expect that information and evidence related to South Carolina Doe's X account will play a prominent role throughout the case. Having to redact and file under seal all such evidence is indisputably a significant burden—both for Defendants and the Court. Conversely, if pseudonymity is denied, it is likely that the only evidence that would be maintained under seal is the deepfake images themselves.

Third, in the Opposition, South Carolina Doe pays lip service to the fact that permitting pseudonymity risks prejudicing the jury, and claims that this is a "minimal-to-nonexistent burden[]." Opp. at 7. But "[c]ourts routinely recognize that a jury might improperly draw implications that [a plaintiff's] claims have merit from the court's allowance of anonymity." *Doe* v. *Regents of Univ. of California*, 2025 WL 1030247, at \*5 (S.D. Cal. Apr. 7, 2025) (collecting cases). And although a subsequent order denying pseudonymity on the eve of trial could address this harm, where, as is the case here, plaintiffs have failed to meet their burden of showing a need for pseudonymity at the pretrial stage, the request should be denied at the outset.

### 4. The Public Is Entitled to Know South Carolina Doe's Identity

In addition to the general public interest in maintaining open and transparent legal proceedings, there is a heightened public interest when a party seeks to represent a class, and this is particularly true in an action involving a matter of public significance. *See* Mot. at 11. The public's interest in having justice delivered openly, not "in a corner nor in any covert manner," is heightened

in cases, such as this one, involving high-stakes, constitutional issues. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 567 (1980) (plurality opinion).

Moreover, as South Carolina Doe's Opposition acknowledges, she is attempting to bring "classwide claims ***that affect millions of people***." Opp. at 15. As such, the "'class members will also have a right to know the identity of their representative in this litigation (if the case goes that far),'" so they may assess the fitness of South Carolina Doe as a class representative. Mot. at 11 (quoting *Doe* v. *NFL Enters., LLC*, 2017 WL 697420, at *2 (N.D. Cal. Feb. 22, 2017)); *see also In re Ashley Madison Customer Data Sec. Breach Litig.*, 2016 WL 1366616, at *4 (E.D. Mo. Apr. 6, 2016) ("Given the importance of the role of class representative, the Court will require Plaintiffs to disclose their identities so that the public, including the putative class members they seek to represent, know who is guiding and directing the litigation."); *Sherman* v. *Trinity Teen Sols., Inc.*, 339 F.R.D. 203, 206 (D. Wyo. 2021) ("First, without knowing Plaintiff's identity, it would be difficult to determine if he and his counsel have conflicts of interest with other class members. Second, and most important, as the class representative, Plaintiff has a fiduciary duty and obligation to vigorously prosecute the interests of the class. In order to do so, the other class members should know who is representing them."); *Michael* v. *Bloomberg L.P.*, 2015 WL 585592, at *4 (S.D.N.Y. Feb. 11, 2015) (allowing plaintiff to proceed pseudonymously "runs against the public's traditional right of access to judicial proceedings, and may also preclude potential class members from properly evaluating the qualifications of the class representative").

**5. All Four Plaintiffs Should Be Required to Proceed Under Their True Identities**

Having failed to submit declarations in support of their Administrative Motion to Proceed Under Pseudonym (ECF No. 29), and acknowledging that "Plaintiffs lack a right of reply" in support of that motion (Opp. at 1 n.1), Plaintiffs have impermissibly shoehorned arguments and testimony[6] relating to New Jersey Doe, Ohio Doe, and South Carolina Roe into the Opposition, making it an

---

[6] The so-called declarations submitted on behalf of each of the Plaintiffs parrot the same allegations already included in the Amended Complaint and allege, word-for-word, the same speculative threats of harm supposedly posed by Elon Musk's vocal online supporters. *See* ECF Nos. 37-2–37-5. Even if the Court were to consider these declarations—which it should not—the outcome of this Motion remains the same.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL SOUTH CAROLINA DOE TO COMPLY WITH FRCP 10(A)

improper attempt to submit a reply brief (with new evidence) in connection with the Administrative Motion to Proceed Under Pseudonym.  This should be seen for what it is—a transparent attempt to circumvent the Local Civil Rules and ensure that Plaintiffs have the last word.  *See Sweet* v. *Pfizer*, 232 F.R.D. 360, 364 n.7 (C.D. Cal. 2005) ("The Court will not consider the Declaration of Dr. Fong, as the moving party in a motion cannot submit new information as part of its Reply."); *United States* v. *Martinez-Leon*, 565 F. Supp. 2d 1131, 1131 n.1 (C.D. Cal. 2008) ("The defendant attached to his reply the declaration of Alonso Garcia. However, this Court has not considered this improperly presented evidence.").  None of Plaintiffs' claimed "line-drawing problems" (Opp. at 9) should impact the Court's decision on this Motion, as all of Defendants' aforementioned arguments apply with equal force to New Jersey Doe, Ohio Doe, and South Carolina Roe.[7]  Accordingly, all four Plaintiffs should be required to litigate under their true identities.

**B. Defendants' Motion Is Procedurally Proper**

South Carolina Doe's Administrative Motion to Proceed Under Pseudonym (ECF No. 4) was granted before Defendants appeared in this case, before they were served with the motion, and before they had an opportunity to respond.  Whether styled as a motion seeking to compel compliance with Federal Rule of Civil Procedure 10(a) or a motion seeking leave to move for reconsideration, it is abundantly clear that courts in this district routinely reevaluate prior orders permitting a plaintiff to proceed pseudonymously when presented with such a fact pattern.  *See, e.g.*, *Epic Games*, 435 F. Supp. 3d at 1053–54 (granting motion to compel compliance with Rule 10(a)); *Doe* v. *Holder*, 2011 WL 6329858, at *2 (N.D. Cal. Dec. 14, 2011) (granting motion for reconsideration of order permitting pseudonymity); *see also Doe* v. *John F Kennedy Univ.*, 2013 WL 4565061, at *3–5, 11 (N.D. Cal. Aug. 27, 2013) (granting motion to dismiss with instructions

---

[7] Plaintiffs raised the fact that South Carolina Roe was depicted as a minor in the deepfake image at issue in her claims to try to differentiate her request for pseudonymity from South Carolina Doe's, but as explained in Defendants' Opposition to Plaintiffs' Administrative Motion to Proceed Under Pseudonym:  "(i) the deepfake images are by Plaintiffs' own admission not real images, (ii) the image of South Carolina Roe is not alleged to constitute CSAM; and (iii) South Carolina Roe is, and was at the time of the images' creation, an adult."  *See* ECF No. 34 at 3 n.4; *see also Smith*, 116 Cal. App. 5th at 245 ("[P]laintiffs here were not minors at the time they filed this lawsuit.  While they were minors for a portion of the underlying events, they are not anymore.  Thus, allowing a pseudonym here would not protect any minors.").

to refile under true identity). In fact, Plaintiffs' own authority establishes as much. *See, e.g.*, *Z.A.* v. *Lam*, 2025 WL 2551848, at *1 (N.D. Cal. Aug. 15, 2025) (inviting defendants to "file a motion to revisit this ruling after they appear in the case") (cited in Opp. at 4, 5); *Doe* v. *Stanford Fed. Credit Union*, 2025 WL 2856301, at *2 (N.D. Cal. Oct. 8, 2025) ("Defendants have not yet appeared in this action. . . . Defendants may later file a motion to compel disclosure of plaintiffs' full names.") (cited in Opp. at 4, 5); *Doe #2* v. *Johnson*, 2024 WL 6951453, at *1 (E.D. Cal. Sept. 5, 2024) ("Defendants may seek reconsideration of the Motion should Defendants object once they have appeared in the case.") (cited in Opp. at 5).

Additionally, Plaintiffs' allegation that Defendants delayed in bringing this Motion is unfounded. *See* Opp. at 3–4. Both Defendants did not appear in this case until March 3, 2026. Approximately two weeks later, Plaintiffs informed Defendants of their intention to file an amended complaint that would likely add new parties. Kurtzberg Decl. ¶ 4. As such, the parties agreed to an amended case schedule in an April 2, 2026 stipulation that was "so ordered" by this Court. *See* ECF No. 27. The Amended Complaint was filed on May 1, 2026. *See* ECF No. 28. Plaintiffs now contend that "[t]he fact that South Carolina Doe filed an Amended Complaint is no excuse" not to have filed this Motion sooner. Opp. at 4. This argument makes no sense. Had Defendants filed this same motion before seeing the Amended Complaint—while Defendants knew an Amended Complaint was forthcoming—the motion necessarily would have failed to address any new allegations added to the Amended Complaint. This likely would have resulted in a mess of supplemental briefing to address any new allegations, if not Defendants withdrawing and refiling the motion in its entirety. This would have wasted the Court's and the parties' time.

Defendants filed this Motion exactly two weeks after receiving the Amended Complaint. There is no doubt that, on these facts, the Motion is timely.

## III.    CONCLUSION

For the reasons set forth in Defendants' Motion and in this reply, Defendants respectfully request that the Court enter an order compelling South Carolina Doe to comply with Federal Rule

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL SOUTH CAROLINA DOE TO COMPLY WITH FRCP 10(A)

of Civil Procedure 10(a), or, in the alternative, granting Defendants leave to move for reconsideration of the Court's January 29, 2026 Order.

Dated:  June 5, 2026

/s/ *Adrian Sawyer*
Adrian Sawyer, State Bar No. 203712
SAWYER & LABAR LLP
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820
sawyer@sawyerlabar.com

Joel Kurtzberg (*admitted pro hac vice*)
Ivan Torres (*admitted pro hac vice*)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
Telephone: 212.701.3120
jkurtzberg@cahill.com
itorres@cahill.com

**Counsel for Defendants**

Case No. 5:26-cv-00772-PCP

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL SOUTH CAROLINA DOE TO COMPLY WITH FRCP 10(A)