SAWYER & LABAR LLP
ADRIAN SAWYER (State Bar No. 203712)
  sawyer@sawyerlabar.com
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820

CAHILL GORDON & REINDEL LLP
JOEL KURTZBERG (admitted pro hac vice)
  jkurtzberg@cahill.com
IVAN TORRES (admitted pro hac vice)
  itorres@cahill.com
32 Old Slip
New York, NY 10005
Telephone: 212.701.3120

**Counsel for Defendants**
*X.AI Corp. and X.AI LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| JANE DOE, SOUTH CAROLINA ROE, NEW JERSEY DOE, and OHIO DOE on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>X.AI CORP. and X.AI LLC,<br><br>Defendants. | Case No. 5:26-cv-00772-PCP<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Date: July 30, 2026<br>Time: 10:00 a.m.<br>Crtrm: 8, 4th Floor<br><br>**Judge:** Hon. P. Casey Pitts |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 30, 2026 at 10:00 a.m. or as soon thereafter as counsel may be heard, before the Honorable P. Casey Pitts, located at 280 South 1st Street, San Jose, CA 95113, defendants X.AI Corp. and X.AI LLC will, and hereby do, move this Court for an order granting their Motion to Transfer this Action to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a), in its entirety, and transferring this action to the Northern District of Texas.  This motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth below, the Declarations of Megan Scolari and Joel Kurtzberg and exhibits attached thereto, arguments of counsel, and any other matters properly before the Court.

## RELIEF REQUESTED

Defendants request that the Court transfer this action in its entirety to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

## STATEMENT OF THE ISSUE TO BE DECIDED

Should this action be transferred in its entirety to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) because (1) the mandatory forum-selection clause in the X Corp. User Terms of Service requires that New Jersey Doe's, Ohio Doe's, and South Carolina Doe's claims be brought exclusively in a Texas court and (2) the interests of justice favor transferring South Carolina Roe's claims with the rest of the action?

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................................... 3

    A.   Plaintiffs' Allegations .................................................................................................. 3

    B.   The FSC Plaintiffs' Agreement to the X Terms of Service ........................................ 5

III.    PROCEDURAL HISTORY ............................................................................................... 11

IV.     ARGUMENT ..................................................................................................................... 12

    A.   The FSC Plaintiffs' Claims Should Be Transferred in Accordance with the Forum-Selection Clause in the X Terms of Service ............................................................... 12

        1.   The FSC Plaintiffs Were on Notice of and Assented to the X Terms of Service ........... 13

        2.   The Mandatory Forum-Selection Clause in the X Terms of Service Applies to the FSC Plaintiffs' Claims ........................................................................................... 15

        3.   Defendants Are Intended Beneficiaries of the X Terms of Service ............................... 16

        4.   The Forum-Selection Clause Is Valid and Enforceable ........................................... 18

    B.   South Carolina Roe's Claims Should Be Transferred in the Interests of Justice ................ 19

        1.   South Carolina Roe's Choice of Forum Is Entitled to Little Deference ......................... 20

        2.   Judicial Economy Would Be Best Served by Transferring South Carolina Roe's Claims as Well .............................................................................................................. 20

        3.   South Carolina Roe Is Bound by Her Litigation Decisions ........................................... 21

V.      CONCLUSION ................................................................................................................. 22

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adibzadeh* v. *Best Buy, Co. Inc.*,
2021 WL 4440313 (N.D. Cal. Mar. 2, 2021) .......................................................... 13

*Aimone* v. *Investorflow LLC*,
2023 WL 3483287 (N.D. Cal. May 15, 2023) ........................................................ 20

*Atl. Marine Constr. Co.* v. *U.S. Dist. Ct. for the W. Dist. of Tex.*,
571 U.S. 49 (2013) ......................................................................................... 12, 19

*Balsam* v. *Tucows Inc.*,
627 F.3d 1158 (9th Cir. 2010) .............................................................................. 16

*Bromlow* v. *D & M Carriers, LLC*,
438 F. Supp. 3d 1021 (N.D. Cal. 2020) ................................................................ 21

*Brown* v. *Artec Glob. Media, Inc.*,
2017 WL 11596885 (S.D. Cal. July 5, 2017)................................................... 20, 21

*Collins* v. *BMW of N. Am., LLC*,
2021 WL 242938 (S.D. Cal. Jan. 25, 2021) ......................................................... 17

*Countrywide Home Loans, Inc.* v. *Mortgage Guaranty Insurance Corp.*,
642 F.3d 849 (9th Cir. 2011).......................................................................... 1 n.3

*Cung Le* v. *Zuffa, LLC*,
108 F. Supp. 3d 768 (N.D. Cal. 2015) .......................................................... 20, 22

*Doe* v. *X Corp.*,
2025 WL 3500543 (N.D. Cal. Nov. 6, 2025)...............................................*passim*

*eBay Inc.* v. *Digital Point Sols., Inc.*,
608 F. Supp. 2d 1156 (N.D. Cal. 2009) ................................................................ 16

*Eliza Labs, Inc.* v. *X Corp.*,
2025 WL 3003766 (N.D. Cal. Oct. 27, 2025)...............................................*passim*

*Enomoto* v. *Siemens Indus., Inc.*,
2023 WL 6278876 (N.D. Cal. Sept. 25, 2023)......................................... 19, 20, 21

*Fenix Partners Grp., LLC* v. *T&T Glob. Logistics Servs. & Trading Joint Stock Co.*,
2024 WL 6840048 (N.D. Cal. Jan. 18, 2024) ....................................................... 18

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)

*Hernandez* v. *WM Wholesale, LLC*,
    2025 WL 2551105 (C.D. Cal. Mar. 28, 2025) ...................................................................... 16

*Indep. Fin. Grp., LLC* v. *Quest Tr. Co.*,
    2021 WL 2550397 (N.D. Cal. June 22, 2021) ...................................................................... 21

*Lawson* v. *DoorDash, Inc.*,
    2023 WL 2782314 (N.D. Cal. Jan. 31, 2023) .................................................................. 14, 19

*Lentini* v. *Kelly Servs., Inc.*,
    2017 WL 4354910 (N.D. Cal. Oct. 2, 2017) ........................................................................ 17

*Li* v. *Amazon.com Servs. LLC*,
    2023 WL 8720669 (N.D. Cal. Dec. 18, 2023) ........................................................... 12, 13, 18

*Link* v. *Wabash R. Co.*,
    370 U.S. 626 (1962) ........................................................................................................... 14

*Lou* v. *Belzberg*,
    834 F.2d 730 (9th Cir. 1987) .............................................................................................. 20

*Ludlow* v. *Flowers Foods, Inc.*,
    2022 WL 1787094 (S.D. Cal. June 1, 2022) ........................................................................ 16

*Manetti-Farrow, Inc.* v. *Gucci Am., Inc.*,
    858 F.2d 509 (9th Cir. 1988) .............................................................................................. 17

*Moretti* v. *Hertz Corp.*,
    2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ...................................................................... 16

*Priority Bus. Servs., Inc* v. *S. E. Pers. Leasing, Inc*,
    2020 WL 5260643 (C.D. Cal. May 20, 2020)...................................................................... 21

*United States ex rel. Relator LLC* v. *Duff*,
    2026 WL 730807 (N.D. Cal. Mar. 16, 2026) ...................................................................... 20

*Serfontein* v. *Ford Motor Co.*,
    2023 WL 5207465 (C.D. Cal. Mar. 8, 2023) ....................................................................... 16

*Sinatra* v. *Nat'l Enquirer, Inc.*,
    854 F.2d 1191 (9th Cir. 1988)............................................................................................. 18

*Sun* v. *Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018)............................................................................. 13, 15, 18, 19

*Trupia* v. *X Corp.*,
    2026 WL 381823 (N.D. Cal. Feb. 11, 2026)............................................................... 3, 14, 18

Case No. 5:26-cv-00772-PCP

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)

**Statutes**

28 U.S.C. § 1404(a)...............................................................................................................*passim*

Cal. Civ. Code § 1559 .......................................................................................................... 16

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.     INTRODUCTION[1]**

Plaintiffs, on behalf of themselves and a putative nationwide class with various putative subclasses, filed the Amended Complaint (the "Amended Complaint" or "AC") (ECF No. 28) against defendants X.AI Corp. and X.AI LLC (collectively, "Defendants" or "X.AI") in the wrong forum. The claims of New Jersey Doe, Ohio Doe, and South Carolina Doe[2] (collectively, the "FSC Plaintiffs") are all governed by the mandatory, valid, and enforceable forum-selection clause in the X Corp. Terms of Service (the "X Terms of Service"), which requires that their claims be brought exclusively in a Texas court because the claims all relate to conduct that allegedly occurred on the X platform (*see, e.g.*, AC ¶¶ 32, 113, 114, 119–121, 129, 131, 134, 144–45, 148–49), and the X Terms of Service expressly apply to affiliates of X Corp., including the X.AI Defendants here. South Carolina Roe's claims, though not brought in relation to conduct alleged to have occurred on the X platform, should also be transferred with the remainder of the case in the interests of justice. Accordingly, this Court should transfer this entire action to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).[3]

---

[1] Unless stated otherwise, emphasis in quotations is added and internal citations and quotations have been omitted.

[2] New Jersey Doe, Ohio Doe, and South Carolina Roe's Administrative Motion to Proceed Under Pseudonyms (ECF No. 29) and Defendants' Motion to Compel South Carolina Doe to Comply with FRCP 10(A), or, in the Alternative, for Leave to Move for Reconsideration of Order Granting Administrative Motion to Proceed Under Pseudonym (ECF No. 35) are both currently pending before this Court. Defendants oppose any of the Plaintiffs proceeding pseudonymously. However, until the Court has ruled on the aforementioned motions, Defendants refer to each Plaintiff by the pseudonym assigned in the Amended Complaint.

[3] Earlier today, Defendants filed a Motion for a Mandatory Stay of the Action Pursuant to 18 U.S.C. § 1595(b)(1) or, in the Alternative, for a Stay Pursuant to the Court's Discretionary Powers (the "Motion to Stay"). ECF No. 39. Given the mandatory nature of the stay provision set forth in 18 U.S.C. § 1595(b)(1), Defendants respectfully submit that the Court should address Defendants' Motion to Stay before addressing Defendants' present motion to transfer. *See Countrywide Home Loans, Inc.* v. *Mortgage Guaranty Insurance Corp.*, 642 F.3d 849 (9th Cir. 2011) (reversing a district court's order remanding the case to state court where a motion for a mandatory stay under the Federal Arbitration Act's mandatory stay provision was pending, because "the FAA's mandatory terms . . . required the district court to reach the merits of [the motion to stay under the FAA] before it remanded the suit back to state court").

Case No. 5:26-cv-00772-PCP

As to the FSC Plaintiffs, the forum-selection clause in the X Terms of Service mandates transfer for at least the following four reasons:

*First*, the FSC Plaintiffs have expressly agreed to the X Terms of Service, which include a forum-selection clause that, on its face, governs any disputes about actions taken by the user or others on the X platform. As the allegations of the Amended Complaint make clear, the FSC Plaintiffs are active on the X platform, posting photos of themselves to their respective accounts. *See* AC ¶¶ 113, 129, 144. The FSC Plaintiffs affirmatively assented to the X Terms of Service by (i) clicking on an acknowledgement of those terms (the "Got it" button) after receiving clear notice of the terms (June 5, 2026 Declaration of Megan Scolari ("Scolari Decl.") ¶ 37) and (ii) continuing to use the X platform after being notified of the updated X Terms of Service, which under the terms, constitutes acceptance (*id.* ¶ 38). The FSC Plaintiffs are therefore bound by those terms, which require "all disputes related to" the X Terms of Service or the use of the "Services"—defined broadly to cover any activity on the X platform[4]—"including without limitation disputes related to or arising from any Content (whether your or others' Content), or your or others' use of the Services" to be brought "exclusively" in the courts located in Texas. *Id.* ¶ 15.

*Second,* the FSC Plaintiffs' claims are covered by the forum-selection clause because they are based entirely on conduct alleged to have happened on the X platform. The FSC Plaintiffs allege that they posted photos of themselves on X (*see* AC ¶¶ 113, 129, 144); Grok's image-generation feature was integrated into the X platform, where it was allegedly misused by X users to create and disseminate deepfake images of the FSC Plaintiffs on X (*see id.* ¶¶ 32, 114, 131, 145); and the FSC Plaintiffs allegedly took several steps on the X platform to have the deepfake images removed (*see id.* ¶¶ 119–21, 134, 148–49).

---

[4] The "Services" are defined to cover "your and other users' access to and use of, and anything otherwise relating to, our or our corporate affiliates' services, including our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services (https://help.x.com/rules-and-policies/x-services-and-corporate-affiliates) that link to these Terms (collectively, the 'Services')." Scolari Decl. ¶ 16.

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)

***Third,*** the X Terms of Service expressly state that the forum-selection clause covers actions brought against "corporate affiliates" of X Corp., such as X.AI.[5]  According to the terms, "[t]he choice of law and forum selection provisions" "shall also extend to disputes involving our U.S. corporate affiliates, who are intended third-party beneficiaries of this [provision]."  Scolari Decl. ¶ 15.

***Fourth,*** the forum-selection clause in the X Terms of Service is valid and enforceable. Courts across the country—including at least three courts in this District—have uniformly upheld and enforced the forum-selection clause in the X Terms of Service.  *See Doe* v. *X Corp.*, 2025 WL 3500543, at *4 (N.D. Cal. Nov. 6, 2025); *Eliza Labs, Inc.* v. *X Corp.*, 2025 WL 3003766, at *4 (N.D. Cal. Oct. 27, 2025); *Trupia* v. *X Corp.*, 2026 WL 381823, at *1 (N.D. Cal. Feb. 11, 2026).

South Carolina Roe's claims should also be transferred to Texas with the rest of the case because (i) South Carolina Roe is an out-of-state plaintiff whose choice of forum is entitled to little deference, (ii) courts routinely transfer cases in their entirety where, as is the case here, the claims are inextricably intertwined and raise similar legal and factual issues, and (iii) by choosing to litigate alongside the FSC Plaintiffs after receiving notice of the forthcoming motion to transfer, South Carolina Roe is bound by the forum-selection clause too.

Defendants respectfully request that this Court grant Defendants' motion and transfer this case to the Northern District of Texas.

## II.    FACTUAL BACKGROUND

### A.  Plaintiffs' Allegations

**<u>Grok</u>**

Grok is a generative-AI model that was created and is owned and operated by X.AI.  AC ¶¶ 24, 30.  Grok may be accessed through the Grok app, Grok.com, and a variety of platforms into which Grok has been integrated.  *Id.* ¶¶ 31–32, 36.  Plaintiffs allege that Grok can be used to generate so-called deepfake images "in which a person's face, body, or voice has been digitally altered by AI

---

[5] The X.AI Defendants are corporate affiliates of X Corp.  All three entities are under common ownership and control of X.AI Holdings LLC.  Scolari Decl. ¶ 40.

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)

so that they appear to be doing something they did not actually do." *Id.* ¶ 1. In December 2024, Grok was integrated into the X platform. *Id.* ¶ 34. Approximately one year later, in December 2025, Grok's image generation feature "was made available to all X users," allowing them to "tag @grok in a post on X prompting it to create or edit an image" and "@grok would then respond by publicly posting the image it created in response." *Id.* ¶¶ 51–53. According to Plaintiffs, this allowed X users to create and disseminate deepfake images on the X platform through the use of Grok. *Id.* On January 8, 2026, Grok's image generation feature was restricted and could no longer be used by all X users. *Id.* ¶ 57.

**New Jersey Doe**

Plaintiff New Jersey Doe created his X account on March 25, 2009. Scolari Decl. ¶ 7. On January 4, 2026, he posted a shirtless photo of himself on the X platform. AC ¶ 129. New Jersey Doe alleges that the following day, on January 5, 2026, he "discovered that Grok had created and publicly posted" two deepfake images of him on the X platform without his consent. *Id.* ¶¶ 131–32. New Jersey Doe alleges that he reported the deepfake images to X in an attempt to have them removed. *Id.* ¶ 134.

**Ohio Doe**

Plaintiff Ohio Doe created her X account on March 18, 2024. Scolari Decl. ¶ 7. On January 1, 2026, she posted a photo of herself on the X platform. AC ¶ 144. Ohio Doe alleges that between January 1, 2026 and January 3, 2026, "Grok created and publicly posted" at least six deepfake images of her on the X platform without her consent. *Id.* ¶ 145. Ohio Doe alleges that she reported the deepfake images to X in an attempt to have them removed. *Id.* ¶ 148.

**South Carolina Doe**

Plaintiff South Carolina Doe created her X account on May 6, 2011. Scolari Decl. ¶ 7. On January 2, 2026, she posted a photo of herself on the X platform. AC ¶ 113. South Carolina Doe alleges that the following day, on January 3, 2026, she discovered "that Grok had used the image she posted to create" and "publicly post[]" a deepfake image of her on the X platform without her

consent. *Id.* ¶ 114. South Carolina Doe alleges that she reported the deepfake image to X in an attempt to have it removed. *Id.* ¶ 119.

**South Carolina Roe**

South Carolina Roe is an adult woman residing in South Carolina. *Id.* ¶ 102. She is not alleged to be an X user. On February 26, 2026, South Carolina Roe was informed that her father was arrested on "criminal charges related to the possession and distribution of CSAM." *Id.* ¶¶ 103–04. South Carolina Roe alleges that her father used Grok to alter several images of her as a minor "to make it appear as if [she and her father] had just consummated a sexual act." *Id.* ¶¶ 105–06. The Amended Complaint does not allege that these deepfake images were created or disseminated on the X platform. *Id.* ¶¶ 105–11.

**The Claims Asserted**

Based on these allegations, Plaintiffs purport to assert twelve causes of action against X.AI, on behalf of themselves and a putative nationwide class with various putative subclasses, including: (1) strict liability design defect, (2) strict liability manufacturing defect, (3) negligence, (4) negligent undertaking, (5) public nuisance, (6) unauthorized appropriation in violation of the common law right of privacy, (7) violation of California's Right of Publicity Statute, Cal. Civ. Code § 3344, (8) defamation, (9) intentional infliction of emotional distress, (10) intrusion into private affairs, (11) violation of Article I, Section 1 of the California State Constitution, and (12) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. *Id.* ¶¶ 165–274. All claims relate to the alleged use of Grok by unnamed third parties to create and/or disseminate deepfake images of Plaintiffs without their consent.

**B. The FSC Plaintiffs' Agreement to the X Terms of Service**

In creating, accessing, and using their accounts on the X platform, the FSC Plaintiffs affirmatively agreed to the X Terms of Service in effect as of the day they signed up. When the FSC Plaintiffs created their accounts, the sign-up screen stated that, "[b]y signing up, you agree to the Terms of service" or that "[b]y clicking on 'Create my account' below, you are agreeing to the

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)

Terms of Service above." Scolari Decl. ¶ 8. The FSC Plaintiffs each clicked on the "Create my account" button, thereby agreeing to the X Terms of Service when creating their X accounts. *Id.*

At all relevant times, and including in the X Terms of Service that were operative when each of the FSC Plaintiffs created their accounts, the X Terms of Service have stated that they may be revised and that "[b]y continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms." *Id.* ¶ 36. X generally updates its Terms of Service and Privacy Policy on an annual basis. *Id.*

Since November 15, 2024, the X Terms of Service have contained a mandatory and exclusive forum-selection clause requiring disputes to be resolved in the federal or state courts in Texas. Specifically, the X Terms of Service in effect from November 15, 2024 through January 14, 2026 (the "Nov. 2024 Terms") stated that:

> [A]ll disputes related to these Terms or the Services, including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum. *Id.* ¶ 11.

X first gave notice to users of the Nov. 2024 Terms on October 16, 2024. *Id.* ¶ 20. In addition, between October 16, 2024 and April 14, 2025, X served the following prompt to X users when they logged into their X accounts:



Case No. 5:26-cv-00772-PCP

*Id.* As shown above, the prompt, which was entitled "Updates to our Terms of Service and Privacy Policy," stated plainly that X was "updating our Terms of Service and Privacy Policy" and suggested to users that "Now's a great chance to review them." *Id.* ¶ 21. The words "Terms of Service" and "Privacy Policy" were highlighted in blue font and were hyperlinked to the Terms and policies at issue. *Id.* The prompt also told users that "[i]f you want to learn more about these changes, head to the X Privacy Center." *Id.* ¶ 22. The term "X Privacy Center" was also highlighted in blue font and was hyperlinked to an October 16, 2024 post in the X Privacy Center, entitled "Updates to our Terms and Privacy Policy" that contained "a high-level recap of the primary changes that go into effect on November 15, 2024." *Id.* That high-level recap flagged six changes to the X Terms of Service in bullet point form. The very first bullet point highlighted the changes to the choice of forum clause in plain English as follows:

> **Governing law and forum changes**: For users residing outside of the European Union, EFTA States, and the United Kingdom, we've updated the governing law and forum for lawsuits to Texas as specified in our terms. For users residing in the European Union, EFTA States, and the United Kingdom, our terms are now governed by Irish law and the forum for lawsuits is Ireland to the extent permitted by law. *Id.* ¶ 23.

The October 16, 2024 post in the X Privacy Center also stated, "If you continue to use our products or services on or after November 15, 2024, you are agreeing to the updated X Terms of Service and Privacy Policy." *Id.* ¶ 24.

Further, beginning on October 16, 2024, the X Terms of Service webpage, which is accessible via hyperlink on every page of the X platform including the log in page, prominently displayed a banner at the top of the page stating, "We have made some updates to our Terms of Service. This version of the Terms of Service will go into effect on November 15, 2024. Until then, the current Terms of Service continue to apply." *Id.* ¶ 26. The X Terms of Service webpage displayed both the updated Nov. 2024 Terms and the prior version of the Terms directly underneath the Nov, 2024 Terms. *Id.*

Further, the Nov. 2024 Terms and the Texas forum-selection clause were also widely publicized. Immediately after X's announcement of the Nov. 2024 Terms on October 16, 2024, and in the

7                                            Case No. 5:26-cv-00772-PCP

months that followed, many news organizations published articles and reported about the Nov. 2024 Terms, including about the updated Texas forum-selection clause. *Id.* ¶ 27, Ex. 5 (*TechCrunch* Article (Oct. 17, 2024)); Ex. 6 (*Social Media Today* Article (Oct. 17, 2024)); Ex. 7 (*CNN* Article (Oct. 21, 2024)); Ex. 8 (*CNBC* Article (Nov. 22, 2024). Many of those articles hyperlinked to the Nov. 2024 Terms that were published on the X Terms of Service webpage, which at the time displayed a banner stating that the Nov. 2024 Terms "will go into effect on November 15, 2024." *Id.* ¶ 28.

In addition to the reasonable notices described above, according to X's records, New Jersey Doe, Ohio Doe, and South Carolina Doe each received the X login prompt and clicked on the "Got it" button assenting to the Nov. 2024 Terms on October 16, 2024, October 26, 2024, and October 16, 2024, respectively. *Id.* ¶ 37. Thus, the FSC Plaintiffs all received notice of the Nov. 2024 Terms, which included the mandatory Texas forum-selection clause.

On December 16, 2025, X first gave notice to users of another update to the X Terms of Service that would take effect on January 15, 2026 (the "Jan. 2026 Terms"). *Id.* ¶ 29. The Jan. 2026 Terms state, in relevant part:

> Notwithstanding any other agreement to the contrary, all disputes related to these Terms, the Services, or any patents — including without limitation disputes related to or arising from any Content (whether your or others' Content), or your or others' use of the Services or the complete or partial termination thereof — shall be brought and must proceed exclusively in the federal or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum. For the avoidance of doubt, the choice of law and forum selection provisions of this paragraph shall apply regardless of whether a dispute or any claims contained therein are based in contract, tort, statute, common law, or otherwise, and the choice of law and forum selection provisions of this paragraph shall apply to pending and future disputes and shall apply to your dispute regardless of when the conduct relating to the dispute arose or occurred. The choice of law and forum selection provisions of this paragraph shall also extend to disputes involving our U.S. corporate affiliates, who are intended third-party beneficiaries of this paragraph. *Id.* ¶ 15.

In addition, since December 16, 2025, X has served the following prompt to all X users when they log in to their X accounts:



*Id.* ¶ 29.  As shown above, the prompt, which was entitled "Updates to our Terms of Service and Privacy Policy," stated plainly that X was "updating our Terms of Service and Privacy Policy" and suggested to users that "Now's a great chance to review them."  *Id.* ¶ 30.  The words "Terms of Service" and "Privacy Policy" were highlighted in blue font and were hyperlinked to the Terms and policies at issue.  *Id.*  The prompt also told users that "[i]f you want to learn more about these changes, head to the X Privacy Center."  *Id.* ¶ 31.  The term "X Privacy Center" was also highlighted in blue font and was hyperlinked to a December 16, 2025 post in the X Privacy Center, entitled "Updates to our Terms and Privacy Policy" that contained "a summary of the primary changes that go into effect on January 15, 2026."  *Id.*  That summary flagged five changes to the X Terms of Service in bullet point form.  The very first bullet point highlighted the changes to the choice of forum clause in plain English as follows:

> **Governing law and disputes**: We've updated our Terms to clarify that the choice of law and courts we use to resolve disputes apply to both current and future lawsuits. For users outside the EU, EFTA States, and the UK, we've added details about how long you or X have to start a legal claim.  *Id.* ¶ 32.

The December 16, 2025 post in the X Privacy Center also stated, "If you continue to use our products or services on or after January 15, 2026, you agree to the updated X Terms of Service and Privacy Policy."  *Id.* ¶ 33.

Further, beginning on December 16, 2025, the X Terms of Service webpage, which is accessible via hyperlink on every page of the X platform including the log in page, prominently displayed a banner at the top of the page stating, "We have made some updates to our Terms of Service.  This version of the Terms of Service will go into effect on January 15, 2026.  Until then, the current Terms of Service continue to apply."  *Id.* ¶ 34.  The X Terms of Service webpage displayed both the updated Jan. 2026 Terms and the prior version of the Terms (the Nov. 2024 Terms) directly underneath the Jan, 2026 Terms.  *Id.*

According to X's records, New Jersey Doe, Ohio Doe, and South Carolina Doe each received the X login prompt and clicked the "Got it" button assenting to the Jan. 2026 Terms on December 16, 2025, January 1, 2026, and December 16, 2025, respectively.  *Id.* ¶ 37.  Thus, the FSC Plaintiffs all received notice of the Jan. 2026 Terms as well.[6]

The FSC Plaintiffs have also continued to actively use their X accounts.  New Jersey Doe's last post was on June 3, 2026, and his most recent access to the X platform was on June 4, 2026.  *Id.* ¶ 38.  Ohio Doe's last post was on April 19, 2026, and her most recent access to the X platform was on June 4, 2026.  *Id.*  South Carolina Doe's last post was on February 11, 2026, and her most recent access to the X platform was on June 4, 2026.  *Id.*  By continuing to use their accounts, the FSC Plaintiffs also consented to the X Terms of Service, which provide that, "We may revise these Terms from time to time. . . .  By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms."  *Id.* ¶ 17.

---

[6] On April 10, 2026, X made a nonmaterial change to the X Terms of Service, allowing lawsuits to be brought in Wichita County, Texas, in addition to Tarrant County, Texas.  Scolari Decl. ¶ 39. ("[A]ll disputes . . . shall be brought and must proceed exclusively in the federal or state courts located in Wichita County or Tarrant County, Texas, United States.").  By continuing to use the X platform, the FSC Plaintiffs have consented to this most recent version of the X Terms of Service as well.  *Id.* ("By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms.").

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)

The FSC Plaintiffs filed the Amended Complaint on May 1, 2026. Because the FSC Plaintiffs had assented to the X Terms of Service at the time of filing, they are bound by the mandatory forum-selection clause in place at that time.[7]

## III.  PROCEDURAL HISTORY

The original complaint (the "Original Complaint") (ECF No. 1) was filed on January 23, 2026, with a single named plaintiff, Jane Doe (now, referred to as South Carolina Doe in the Amended Complaint). Defendant X.AI Corp. was served on February 10, 2026, and Defendant X.AI LLC subsequently waived service on March 5, 2026. *See* ECF Nos. 12, 19.

On February 11, 2026, the day after X.AI Corp. was served, counsel for Defendants contacted Plaintiff's counsel via email regarding several preliminary matters. In this email, Defense Counsel wrote:

> "[B]ecause the Complaint makes clear that Plaintiff used the X platform and the allegations concern alleged wrongdoing that occurred on that platform, we believe that the case is governed by the X Corp. Terms of Service, which include a valid and enforceable forum selection clause (see § 6) requiring cases to be brought exclusively in Texas state courts in Tarrant County or in federal court in the Northern District of Texas. . . .  Please let us know if Plaintiff will agree to transfer the case to the Northern District of Texas, and, if not, why not. . . . [I]f a motion to transfer becomes necessary, we propose that the parties enter into a joint stipulation extending defendants' deadline for responding to the Complaint until after the Court has rendered a decision on any motion to transfer." June 5, 2026 Declaration of Joel Kurtzberg ("Kurtzberg Decl."), Ex. 1.

Thereafter, the parties entered into a stipulated briefing schedule for the forthcoming motion to transfer, which was set to be due on April 1, 2026. *See* ECF No. 18. Before this deadline, however, Plaintiffs informed Defendants that they intended to amend the Original Complaint and that they would potentially add additional named plaintiffs. Kurtzberg Decl. ¶ 4. On April 2, 2026, the parties entered into a new stipulation, (i) allowing Plaintiffs to file an amended complaint by May 1, 2026 and (ii) giving the parties seven days after the amended complaint was filed to meet

---

[7] Additionally, X.AI has its own terms of service—separate from the X Terms of Service—which contain a near-identical forum-selection clause setting the place of any litigation in the Texas courts as well. As relevant here, the X.AI terms of service also provide that "[u]se of Grok on the X platform is not governed by" the X.AI terms of service, and "[t]o access Grok on X, you must agree to the X Terms of Service." Scolari Decl. ¶ 41. As such, the uses of Grok on the X platform to generate the deepfake images alleged in the Amended Complaint are subject to and governed by the X Terms of Service.

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)

and confer and propose a new briefing schedule for the forthcoming motion to transfer. *See* ECF No. 27.

On May 1, 2026, Plaintiffs filed the Amended Complaint, adding New Jersey Doe, Ohio Doe, and South Carolina Roe. This motion to transfer followed in accordance with the agreed-upon briefing schedule.

## IV.    ARGUMENT

### A. The FSC Plaintiffs' Claims Should Be Transferred in Accordance with the Forum-Selection Clause in the X Terms of Service

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "When a case concerns an enforcement of a forum selection clause, Section 1404(a) provides a mechanism for its enforcement and 'a proper application of [the statute] requires that a forum-selection clause be given controlling weight in all but the most exceptional cases.'" *Li* v. *Amazon.com Servs. LLC*, 2023 WL 8720669, at *2 (N.D. Cal. Dec. 18, 2023) (quoting *Atl. Marine Constr. Co.* v. *U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 59–60 (2013)); *see also Atl. Marine*, 571 U.S. at 63 ("The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum. The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system. For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote the interest of justice, a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.").

"The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways. First, the plaintiff's choice of forum merits no weight. Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. Third, only public-interest factors remain, and those rarely override the parties' agreement." *Doe* v. *X Corp.*, 2025 WL 3500543, at

*4 (quoting *Atl. Marine*, 571 U.S. at 62–64). "Thus, '[o]nly under extraordinary circumstances unrelated to the convenience of the parties' should a motion to enforce a forum-selection clause be denied.'" *Eliza Labs*, 2025 WL 3003766, at *4 (quoting *Sun* v. *Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018)).

This Court should transfer the FSC Plaintiffs' claims to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a) because (i) the FSC Plaintiffs were on notice of and assented to the current X Terms of Service; (ii) the mandatory forum-selection clause in the X Terms of Service applies to the FSC Plaintiffs' claims; (iii) Defendants are intended beneficiaries of the X Terms of Service; and (iv) the mandatory forum-selection clause is valid and enforceable.

**1. The FSC Plaintiffs Were on Notice of and Assented to the X Terms of Service**

"Under California law, online agreement may be an enforceable contract based on inquiry notice if (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Doe* v. *X Corp.*, 2025 WL 3500543, at *5; *see also Li*, 2023 WL 8720669, at *6 (finding adequate notice of forum-selection clause where Amazon's "'[p]rivacy notice' and 'conditions of use' [] appear in blue, hyperlinked text" and plaintiffs "clicked the mandatory 'Place your order' button, which is accompanied by text stating 'By placing your order, you agree to Amazon's privacy notice and conditions of use'"); *Adibzadeh* v. *Best Buy, Co. Inc.*, 2021 WL 4440313, at *5 (N.D. Cal. Mar. 2, 2021) (finding consent to Best Buy's website's terms where "Sign In" button was followed by: "By continuing you agree to our Terms and Conditions"). In fact, "whether Plaintiffs actually reviewed the agreements is irrelevant, because what matters for purposes of resolving [a motion to transfer] is that Plaintiffs had the ***opportunity*** to read the updated agreements." *Eliza Labs*, 2025 WL 3003766, at *5 (emphasis in original).

Here, the conditions of notice and assent are easily met as to the FSC Plaintiffs and the current X Terms of Service. As both described and shown above, at all relevant times the X Terms

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)

of Service have been prominently linked via a blue hyperlink on X's home page. Beginning on December 16, 2025, when the X Terms of Service were updated, all users were given notice of these changes via a prompt on the X homepage, which included a button labeled "Got it" that users could affirmatively click to signal their assent to the updated terms. Scolari Decl. ¶ 29. Moreover, the X Terms of Service, and all relevant prior versions, explicitly state that by "continuing to access or use" the X platform, a user "agree[s] to be bound by the revised Terms [of Service]." *Id.* ¶ 36. Accordingly, the FSC Plaintiffs were given notice of and assented to the Jan. 2026 Terms when they (i) clicked on the "Got it" button and (ii) signed into and continued to use their X accounts after the Jan. 2026 Terms became effective.

Indeed, at least three courts in this District have already considered X's procedure for updating its Terms of Service and found that X's users were bound by the new version of the X Terms of Service. *See Doe* v. *X Corp.*, 2025 WL 3500543, at *6 ("the banner X displayed during a month-long period of notice[] [and] the noticeable font color and presentation of the Terms of Service hyperlink" combined with "Plaintiff's continued use of X after he created the account, and through the proceedings of this litigation demonstrate[d] his assent to Version 20 of X's Terms of Service"); *Eliza Labs*, 2025 WL 3003766, at *4 (the fact that plaintiffs "received and acknowledged in-app prompts as to X's updated Terms of Service" and continued to "sign[] in to the X platform" "leave[s] no doubt that Plaintiffs received sufficient notice of the Relevant Agreements, such that they had constructive knowledge of the Texas forum selection clauses"); *Trupia*, 2026 WL 381823, at *1 (enforcing X's Terms of Service because courts often "have enforced forum selection clauses in clickwrap agreements"). The facts of this case require the same result.

Furthermore, the FSC Plaintiffs are bound by the X Terms of Service for an additional reason—Plaintiffs' counsel was provided notice of the X Terms of Service and relevant forum-selection clause before filing the Amended Complaint. *See Lawson* v. *DoorDash, Inc.*, 2023 WL 2782314, at *3 (N.D. Cal. Jan. 31, 2023) ("'[E]ach party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.'") (quoting *Link* v. *Wabash R. Co.*, 370 U.S. 626, 634 (1962)). As described above,

14    Case No. 5:26-cv-00772-PCP

Defendants first informed Plaintiffs' counsel of their intent to transfer this action pursuant to the forum-selection clause in the X Terms of Service in a February 11, 2026 email.  Kurtzberg Decl., Ex. 1.  The FSC Plaintiffs, through their counsel, were put on actual notice of the forum-selection clause by that email.  Yet, thereafter, on May 1, 2026, Plaintiffs filed the Amended Complaint in this district anyway.  Both Plaintiffs' counsel and the FSC Plaintiffs were given actual notice of the X Terms of Service's forum-selection clause before filing the Amended Complaint.

### 2. The Mandatory Forum-Selection Clause in the X Terms of Service Applies to the FSC Plaintiffs' Claims

The FSC Plaintiffs' claims exclusively relate to conduct that occurred on the X platform— i.e., the alleged creation and dissemination of deepfake images on X—and thus fall squarely within the broad scope of the mandatory forum-selection clause in the X Terms of Service.  Specifically, the forum-selection clause requires that "***all disputes related to***" either the X Terms of Service, X's Services, or Content on the X platform be brought exclusively in the Texas courts and also provides that the "forum selection provisions . . . shall apply regardless of whether a dispute or any claims contained therein are based in contract, tort, statute, common law, or otherwise."  Scolari Decl. ¶ 15.

The Ninth Circuit has broadly interpreted "forum-selection clauses covering disputes 'relating to' a particular agreement [to] apply to any disputes that reference the agreement or have some logical or causal connection to the agreement."  *Sun*, 901 F.3d at 1086.  Thus, a "dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract."  *Id.*  "Courts have also held that broad venue clauses cover noncontractual claims that fall within the scope of the forum selection clause, including with respect to . . . claims brought under California Business and Professions Code § 17200."  *Eliza Labs*, 2025 WL 3003766, at *5.

Here, the alleged wrongdoing underlying the FSC Plaintiffs' claims all took place on the X platform.  Specifically, the FSC Plaintiffs each allege that: (i) they have accounts on the X platform (AC ¶¶ 113, 129, 144); (ii) they posted photos of themselves to their respective X accounts (*id.*); (iii) unnamed X users utilized Grok on the X platform to create deepfake images of the FSC Plaintiffs without their consent (*id.* ¶¶ 114–15, 131–32, 145); (iv) these deepfake images were

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)

posted to the X platform by Grok (*id.*); and (v) the FSC Plaintiffs reported the deepfake images to X, requesting that they be taken down (*id.* ¶¶ 119–21, 134–37, 148–49).  Thus, based on the FSC Plaintiffs' own allegations, the deepfake images at the heart of this case were created and disseminated on the X platform—i.e., they relate to X's Services and Content posted by the FSC Plaintiffs and others on the X platform, and are subject to the X Terms of Service.

### 3.    Defendants Are Intended Beneficiaries of the X Terms of Service

It makes no difference that Plaintiffs sued only X.AI, and not X Corp. itself.  That Defendants are non-signatories to the X Terms of Service does not mean that the X Terms of Service's forum-selection clause does not govern this dispute.  "Under California law, a 'contract, made expressly for the benefit of a third party, may be enforced by him at any time before the parties thereto rescind it.'"  *Balsam* v. *Tucows Inc.*, 627 F.3d 1158, 1161 (9th Cir. 2010) (quoting Cal. Civ. Code § 1559); *see also eBay Inc.* v. *Digital Point Sols., Inc.*, 608 F. Supp. 2d 1156, 1162 (N.D. Cal. 2009) ("In the Ninth Circuit, a third-party beneficiary of an agreement is bound by the terms of the agreement, including a valid forum selection clause.").

"A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident.  Although a third party need not be expressly named or identified in a contract, a party must demonstrate that [it] is a member of a class of persons for whose benefit it was made."  *Balsam*, 627 F.3d at 1161.  Courts in this Circuit routinely enforce contractual provisions on behalf of intended third-party beneficiaries where they are part of a class referenced in the operative agreement.  *See, e.g.*, *Hernandez* v. *WM Wholesale, LLC*, 2025 WL 2551105, at *4 (C.D. Cal. Mar. 28, 2025) (where the terms of use "specifically applie[d] to website affiliates[,]" affiliate was found to be "a third-party beneficiary of the forum selection clause"); *Moretti* v. *Hertz Corp.*, 2014 WL 1410432, at *4 (N.D. Cal. Apr. 11, 2014) (holding that car rental providers had standing to enforce forum-selection clause in terms of use that specifically mentioned "providers"); *see also Serfontein* v. *Ford Motor Co.*, 2023 WL 5207465, at *2 (C.D. Cal. Mar. 8, 2023) ("Adopting the analysis of a majority of other federal courts examining similar arbitration provisions under California law, the Court concludes that Defendant is an affiliate

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)

of Ford Motor Credit Company by virtue of their parent-subsidiary relationship and may enforce this arbitration provision as a third-party beneficiary."); *Ludlow* v. *Flowers Foods, Inc.*, 2022 WL 1787094, at *4 (S.D. Cal. June 1, 2022) ("The Court finds that the Arbitration Agreement is made for the benefit of Defendants because it covers claims involving them as 'affiliated companies.'"); *Collins* v. *BMW of N. Am., LLC*, 2021 WL 242938, at *4 (S.D. Cal. Jan. 25, 2021) (collecting cases).

Here, the X Terms of Service explicitly state that:  "The choice of law and forum selection provisions of this paragraph shall also extend to disputes involving our U.S. corporate affiliates, who are intended third-party beneficiaries of this paragraph."  Scolari Decl. ¶ 25.  Defendants are both "U.S. corporate affiliates" of X Corp. and are therefore "intended third-party beneficiaries" of, and should be afforded the benefit of, the X Terms of Service's forum-selection clause.  *Id.* ¶ 40.

Even if the forum-selection clause did not include an express designation of corporate affiliates, such as Defendants, as third-party beneficiaries, "non-parties to an agreement containing a forum-selection clause can benefit from such a clause in litigation concerning conduct related to the agreement." *Lentini* v. *Kelly Servs., Inc.*, 2017 WL 4354910, at *5 (N.D. Cal. Oct. 2, 2017); *see also Manetti-Farrow, Inc.* v. *Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) ("[A] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses" including where "the alleged conduct of the non-parties is so closely related to the contractual relationship").  Another court in this District recently found that an earlier version of the X Terms of Service (that did not include the "third-party beneficiary" language) applied to X.AI where the plaintiff's "claims against the X.AI Defendants also [fell] within the scope of the X User Terms."  *See Eliza Labs*, 2025 WL 3003766, at *5 ("[N]on-parties to an agreement containing a forum-selection clause, like the X.AI Defendants vis-à-vis the X User Terms, can benefit from such a clause where, as here, the litigation concern[s] conduct related to the agreement.").  The FSC Plaintiffs' claims relate to conduct on the X platform and therefore fall within the scope of the X Terms of Service.  As such, the X Terms of Service's forum-selection clause applies to claims against Defendants too.

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)

### 4.  The Forum-Selection Clause Is Valid and Enforceable

"Courts across the country have repeatedly upheld X's forum selection clause as valid and enforceable." *Doe* v. *X Corp.*, 2025 WL 3500543, at *7 (collecting cases).  In fact, three recent decisions from this District have similarly upheld the forum-selection clause in the X Terms of Service and transferred the cases to the Northern District of Texas where they belong.  *See id.* at *8; *Eliza Labs*, 2025 WL 3003766, at *7; *Trupia*, 2026 WL 381823, at *1.  This case compels the same result.

To the extent an independent analysis of the enforceability of the X Terms of Service's forum-selection clause is required, "[t]he party seeking to avoid a forum selection clause bears a heavy burden to establish a ground upon which the court will conclude the clause is unenforceable." *Li*, 2023 WL 8720669, at *2.  To meet this burden, a plaintiff must make "a strong showing" that "(1) the clause is invalid due to fraud or overreaching, (2) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court." *Sun*, 901 F.3d at 1087–88.  None of these factors is present here.

*First*, the FSC Plaintiffs do not "call into question whether the forum selection clauses were the product of fraud or overreaching." *See Eliza Labs*, 2025 WL 3003766, at *6.  Plainly, there are no grounds to do so.

*Second*, enforcing the forum-selection clause would not contravene a strong public policy of California.  As the FSC Plaintiffs acknowledge in their pleadings, they are residents of South Carolina, New Jersey, and Ohio, respectively.  AC ¶¶ 112, 128, 143.  California thus has a *de minimis* interest in providing them with a forum to seek redress.  *See Fenix Partners Grp., LLC* v. *T&T Glob. Logistics Servs. & Trading Joint Stock Co.*, 2024 WL 6840048, at *8 (N.D. Cal. Jan. 18, 2024) ("[W]eak state interests [are] present when nonresidents sue in California courts.") (quoting *Sinatra* v. *Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1200 (9th Cir. 1988)).

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)

***Third***, the FSC Plaintiffs do not, and cannot, plausibly claim that trial in the Northern District of Texas will be so gravely difficult and inconvenient that they will be deprived of their day in court. In fact, Texas is geographically closer to all three FSC Plaintiffs than California. As the Ninth Circuit has recognized, the inconvenience factor "is difficult to satisfy," because "[w]here the parties have agreed to a forum-selection clause, they 'waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.'" *Sun*, 901 F.3d at 1091 (quoting *Atl. Marine*, 571 U.S. at 64). Here, the clause itself expressly states that users "consent to personal jurisdiction in [Texas courts] and waive any objection as to inconvenient forum." Scolari Decl. ¶ 15. The FSC Plaintiffs are therefore hard pressed to claim that the Northern District of Texas imposes any burden, much less a sufficient burden to overcome the forum-selection clause in the X Terms of Service.

This action should have been filed in a Texas court, and Plaintiffs' failure to abide by the valid forum-selection clause in the X Terms of Service compels transfer to the Northern District of Texas.

## B. South Carolina Roe's Claims Should Be Transferred in the Interests of Justice

Because the FSC Plaintiffs' claims should be transferred to the Northern District of Texas under the X Terms of Service's forum-selection clause, South Carolina Roe's claims should be transferred as well in the interests of justice. When deciding whether to transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), courts "weigh multiple [public- and private-interest] factors to determine whether transfer is appropriate." *Lawson* v. *DoorDash, Inc.*, 2023 WL 2782314, at *2 (N.D. Cal. Jan. 31, 2023). "In analyzing convenience, the Court may consider: (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum." *Enomoto* v. *Siemens Indus., Inc.*, 2023 WL 6278876, at *5 (N.D. Cal. Sept. 25, 2023). However, "[t]he 'interests

of justice' consideration is the most important factor a court must consider, and may be decisive in a transfer motion even when all other factors point the other way." *Id.* at *6.

### 1. South Carolina Roe's Choice of Forum Is Entitled to Little Deference

Although a "[p]laintiff's choice of forum is generally afforded substantial weight[,]" "the degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice is not its residence." *United States ex rel. Relator LLC* v. *Duff*, 2026 WL 730807, at *2 (N.D. Cal. Mar. 16, 2026) (affording plaintiff's "choice of forum minimal deference" where plaintiff was "not located in the Northern District of California"); *see also Cung Le* v. *Zuffa, LLC*, 108 F. Supp. 3d 768, 779 (N.D. Cal. 2015) ("[T]he majority of the named plaintiffs do not reside in this district, rendering their choice of forum less significant."); *Aimone* v. *Investorflow LLC*, 2023 WL 3483287, at *6 (N.D. Cal. May 15, 2023) ("[T]he local interest factor does not support Aimone because he is not a 'California plaintiff.'"); *Lou* v. *Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[W]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."). Here, neither South Carolina Roe, nor any of the other named Plaintiffs, are residents of California. AC ¶¶ 102, 112, 128, 143. This Court, therefore, has little to no interest in providing a forum to an out-of-state plaintiff, especially where the rest of the case is already subject to transfer to the Northern District of Texas.

### 2. Judicial Economy Would Be Best Served by Transferring South Carolina Roe's Claims as Well

Given that the FSC Plaintiffs' claims should be transferred to the Northern District of Texas, it would be wasteful to retain South Carolina Roe's claims in this Court, thereby creating duplicative, parallel proceedings. *See Enomoto*, 2023 WL 6278876, at *6 ("A major consideration is the desire to avoid multiplicity of litigation from a single transaction. . . . [T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); *Brown* v. *Artec Glob. Media, Inc.*, 2017 WL 11596885, at *6 (S.D. Cal. July 5, 2017) ("If the Court allows this case to be split into two actions, i.e., one in this Court and one in the

District of Nevada, the two factfinders may be asked to make overlapping factual determinations, and parties and witnesses may be required to travel between the two Districts.").  Federal courts in California routinely transfer cases in their entirety, even where only some of the claims are subject to a forum-selection clause, if "the claims are inextricably intertwined" and "all spring from the same fundamental facts, would require litigation of the same essential questions, and would threaten to create inconsistent rulings if litigated in multiple forums."  *Indep. Fin. Grp., LLC* v. *Quest Tr. Co.*, 2021 WL 2550397, at *6 (N.D. Cal. June 22, 2021) (granting transfer where the "claims not governed by forum selection clauses" were "identical to the claims being transferred[,]" "will require resolution of the same legal and factual issues[,]" and "[m]any, if not all, of the witnesses will be the same"); *Brown*, 2017 WL 11596885, at *6 (transferring entire case where the forum-selection clause claims were "inextricably intertwined with the remaining claims"); *Priority Bus. Servs., Inc* v. *S. E. Pers. Leasing, Inc*, 2020 WL 5260643, at *6 (C.D. Cal. May 20, 2020) (claims not subject to mandatory forum-selection clause were transferred because they were "joined with the other Plaintiffs and are to be tried together").  Here, despite alleging minor factual differences— e.g., the use of Grok on the X platform vs. the use of Grok through the app or Grok.com—South Carolina Roe brings all of the same claims as the FSC Plaintiffs.  *See* AC ¶¶ 165–274.  Thus, if this case were to be split in two, each court would be tasked with deciding the same legal issues on near-identical facts—precisely the type of "multiplicity of litigation" "that § 1404(a) was designed to prevent."  *Enomoto*, 2023 WL 6278876, at *6.  Because Plaintiffs' claims are all "inextricably intertwined," this action should be transferred in its entirety.

### 3.  South Carolina Roe Is Bound by Her Litigation Decisions

By choosing to file her claims together with the FSC Plaintiffs, South Carolina Roe should be compelled to litigate in Texas too.  Months before she became a party to this litigation, South Carolina Roe, through her counsel, was given notice that Defendants intended to move to transfer South Carolina Doe's (then, Jane Doe's) claims to Texas based on the forum-selection clause in the X Terms of Service.  Kurtzberg Decl., Ex. 1.  Nevertheless, South Carolina Roe joined the Amended Complaint—as opposed to filing her own lawsuit—which not only intertwined her claims with those

of South Carolina Doe, but with two additional plaintiffs (New Jersey Doe and Ohio Doe) whose claims are also subject to the forum-selection clause in the X Terms of Service.  At least two courts in this District have found that a party may be bound by an otherwise unrelated forum-selection clause by virtue of choosing to litigate alongside plaintiffs that are already bound by that clause. *See Bromlow* v. *D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1029 (N.D. Cal. 2020) ("[T]he Court concludes that all Plaintiffs should be bound by the forum-selection clause.  Any plaintiff not aware of Mr. Walters's ICEOLA and accompanying forum-selection clause was put on constructive notice as of October 24, 2019, when Freymiller filed its first motion to transfer, and still Plaintiffs filed an amended complaint and forged ahead with Mr. Walters as a co-plaintiff.  ***In so doing, Mr. Bromlow and Mr. Stewart assumed the risk that Freymiller would invoke the forum-selection clause and move to transfer this matter to the forum identified therein***."); *Cung Le*, 108 F. Supp. 3d at 775 n.4 ("Consequently, the non-signatory plaintiffs have subjected their cases to the applicable forum selection clause by choosing to join a collective action with other plaintiffs who are signatories since the language of the clause makes clear that it applies to ***actions*** to interpret or enforce the contracts, not just individual claims.") (emphasis in original).  South Carolina Roe had notice of the forum-selection clause and forthcoming motion to transfer; by choosing to join the Amended Complaint she assumed the risk that she would be bound by the forum-selection clause too.

## V.   CONCLUSION

Defendants respectfully request that the Court transfer this action to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

Dated:  June 5, 2026

/s/ *Adrian Sawyer*
Adrian Sawyer, State Bar No. 203712
SAWYER & LABAR LLP
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820
sawyer@sawyerlabar.com

Joel Kurtzberg (*admitted pro hac vice*)
Ivan Torres (*admitted pro hac vice*)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 10005
Telephone: 212.701.3120
jkurtzberg@cahill.com
itorres@cahill.com

***Counsel for Defendants***
*X.AI Corp. and X.AI LLC*

Case No. 5:26-cv-00772-PCP

DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS
PURSUANT TO 28 U.S.C. § 1404(a)