SAWYER & LABAR LLP
ADRIAN SAWYER (State Bar No. 203712)
  *sawyer@sawyerlabar.com*
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820

CAHILL GORDON & REINDEL LLP
JOEL KURTZBERG (*admitted pro hac vice*)
  *jkurtzberg@cahill.com*
IVAN TORRES (*admitted pro hac vice*)
  *itorres@cahill.com*
32 Old Slip
New York, NY 10005
Telephone: 212.701.3120

***Counsel for Defendants***
*X.AI Corp. and X.AI LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| | Case No. 5:26-cv-00772-PCP |
| JANE DOE, SOUTH CAROLINA ROE, NEW JERSEY DOE, and OHIO DOE on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>X.AI CORP. and X.AI LLC,<br><br>Defendants. | **DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Date:  July 30, 2026<br>Time:  10:00 a.m.<br>Crtrm: 8, 4th Floor<br><br>**Judge:**  Hon. P. Casey Pitts |

Case No. 5:26-cv-00772-PCP

DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)

I, Megan Scolari, declare as follows:

1.      I am a Legal Program Manager at X Corp.  I have held this position since September 9, 2019.  I submit this declaration in support of Defendants' Motion to Transfer this Action to the Northern District of Texas Pursuant to 28 U.S.C. § 1404(a) (the "Motion").  I am over twenty-one years old, of sound mind, and fully competent and authorized in all respects to execute this Declaration.  Unless otherwise specified, I have personal knowledge of the facts set forth herein, which are true and correct.

2.      My duties and responsibilities in my role as a Legal Program Manager include managing electronic information created and stored in a variety of software systems X Corp. uses in the normal course of its business.  As part of my current role, I am regularly involved in helping to collect evidence about aspects of services across the company's platforms and have become familiar with how the services have been delivered over time.

3.      The statements in this Declaration are based on my personal knowledge, facts learned during my investigation of this matter, and the business records of X Corp.  The business records were made by or from information transmitted by a person with knowledge of the events.  Such records are kept in the ordinary course of the regularly conducted activity of X Corp. and its affiliates, and making such records is a regular practice of those activities.

4.      I received legal advice in connection with preparing this Declaration, but this Declaration is not intended to waive the attorney-client privilege or disclose any attorney work product.  Rather, it is intended to address purely factual matters that are relevant to the Motion.

5.      I am familiar with X Corp.'s Terms of Service ("Terms") for its social media platform X, formerly called "Twitter," and the procedures by which users agree to the Terms, including updates to the Terms and notifications to users informing them of updates to the Terms.

6.      Since Twitter was launched in 2006, Twitter or X Corp. (Twitter's successor-in-interest) have revised the Terms several times.  The current version of the Terms is publicly available at https://x.com/en/tos.  All prior relevant versions of the Terms are publicly available at https://x.com/en/tos/previous.

Case No. 5:26-cv-00772-PCP

DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS
ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)

7. Based on my investigation, my review of the Amended Complaint, and information provided to me by counsel subject to the parties' Stipulated Protective Order, I understand that the individual identified in the Amended Complaint as Plaintiff New Jersey Doe maintains an account on X, which he created on March 25, 2009; the individual identified in the Amended Complaint as Plaintiff Ohio Doe maintains an account on X, which she created on March 18, 2024; and the individual identified in the Amended Complaint as Plaintiff South Carolina Doe maintains an account on X, which she created on March 6, 2011.[1]

8. When Plaintiffs New Jersey Doe, Ohio Doe, and South Carolina Doe (collectively, the "FSC Plaintiffs") created their respective accounts, the sign-up screen stated that "[b]y signing up, you agree to the Terms of Service" or that "[b]y clicking on 'Create my account' below, you are agreeing to the Terms of Service above." The FSC Plaintiffs each necessarily clicked on the "Create my account" button when creating their X accounts.

9. I am familiar with every version of the Terms, including **Version 20** (effective November 15, 2024 through January 14, 2026) and **Version 21** (effective January 15, 2026 through the present).

10. A true and correct copy of **Version 20** of the Terms is attached as **Exhibit 1**.

11. **Version 20** of the Terms provided that:

The laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary. All disputes related to these Terms or the Services, including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services, will be brought exclusively in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum.

12. **Version 20** of the Terms also provided that:

---

[1] The identities of New Jersey Doe, Ohio Doe, and South Carolina Doe were provided to counsel for Defendants pursuant to the Protective Order in this case. After I agreed to abide by the Protective Order, the names were shared with me. Consistent with my obligations under the Protective Order, I will not publicly reveal the names of those individuals unless the Court determines that their names can be publicly disclosed.

DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)

These Terms of Service ("Terms") govern your and other users' access to and use of our services, including our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services   (https://help.x.com/rules-and-policies/x-services-and-corporate-affiliates) that link to these Terms (collectively, the "Services"), and any information, text, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or appearing on the Services (collectively referred to as "Content"). By using the Services you agree to be bound by these Terms.

13.    **Version 20** of the Terms further provided that:

We may revise these Terms from time to time. The changes will not be retroactive, and the most current version of the Terms, which will always be at https://x.com/tos, will govern our relationship with you. We will try to notify you of material revisions, for example via a service notification or an email to the email associated with your account. By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms.

14.    A true and correct copy of **Version 21** of the Terms is attached as **Exhibit 2**.

15.    **Version 21** of the Terms provides that:

The laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary. Notwithstanding any other agreement to the contrary, all disputes related to these Terms, the Services, or any patents — including without limitation disputes related to or arising from any Content (whether your or others' Content), or your or others' use of the Services or the complete or partial termination thereof — shall be brought and must proceed exclusively in the federal or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum. For the avoidance of doubt, the choice of law and forum selection provisions of this paragraph shall apply regardless of whether a dispute or any claims contained therein are based in contract, tort, statute, common law, or otherwise, and the choice of law and forum selection provisions of this paragraph shall apply to pending and future disputes and shall apply to your dispute regardless of when the conduct relating to the dispute arose or occurred. The choice of law and forum selection provisions of this paragraph shall also extend to disputes involving our U.S. corporate affiliates, who are intended third-party beneficiaries of this paragraph.

16.    **Version 21** of the Terms also provides that:

These Terms of Service ("Terms") govern your relationship with us and your and other users' access to and use of, and anything otherwise relating to, our or our corporate affiliates' services, including our various websites, SMS, APIs, email notifications, applications, buttons, widgets, ads, commerce services, and our other covered services (https://help.x.com/rules-and-policies/x-services-and-corporate-affiliates) that link to these Terms (collectively, the "Services"), and any information, text, links, graphics, photos, audio, videos, or other materials or arrangements of materials uploaded, downloaded or appearing on the Services (collectively referred to as "Content"). By using the Services you agree to be bound by these Terms.

DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)

17.    **Version 21** of the Terms further provides that:

> We may revise these Terms from time to time. The changes will not be retroactive, and the most current version of the Terms, which will always be at https://x.com/tos, will govern our relationship with you. We will try to notify you of material revisions, for example via a service notification or an email to the email associated with your account. By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms.

18.    It is X Corp.'s longstanding business practice to give notice of each materially new version of the Terms to all X users.  Specifically, it is X Corp.'s longstanding business practice that each time that X Corp. has made material revisions to the Terms, X Corp. has given notice via the platform by a notification that appears when the user logs in to their account.

19.    **Version 21** of the Terms provides (and all relevant prior versions provided) that X Corp. may change the terms and conditions, and that continued access or use of the X platform constitutes acceptance of any changes.

20.    **Version 20** of the Terms was published on October 16, 2024, and went into effect on November 15, 2024.  X began notifying users about **Version 20** of the Terms on October 16, 2024.  In particular, X served a prompt to X users that logged in to their X accounts between October 16, 2024 and April 14, 2025.  The prompt served to X account holders provided:



Case No. 5:26-cv-00772-PCP

DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)

21.     As shown above, the prompt, which was entitled "Updates to our Terms of Service and Privacy Policy," stated plainly that X was "updating our Terms of Service and Privacy Policy" and suggested to users that "Now's a great chance to review them."  The words "Terms of Service" and "Privacy Policy" were highlighted in blue font and were hyperlinked to the Terms and policies at issue.

22.     As shown above, the prompt also told users that "[i]f you want to learn more about these changes, head to the X Privacy Center."  The term "X Privacy Center" was also highlighted in blue font and was hyperlinked to an October 16, 2024 post in the X Privacy Center, entitled "Updates to our Terms and Privacy Policy" that contained "a high-level recap of the primary changes that go into effect on November 15, 2024."  This X Privacy Center post summarizing the primary changes can be found here: https://privacy.x.com/en/blog/2024/updates-tos-privacy-policy, and a true and correct copy is attached as **Exhibit 3**.  The post reads as follows:

October 16, 2024

# Updates to our Terms and Privacy Policy

We're updating our Terms of Service and Privacy Policy to ensure transparency as well as to incorporate X's new products, services, and features.

Here's a high-level recap of the primary changes that go into effect on November 15, 2024. You may see an in-app notice about these updates as well.

- **Governing law and forum changes:** For users residing outside of the European Union, EFTA States, and the United Kingdom, we've updated the governing law and forum for lawsuits to Texas as specified in our terms. For users residing in the European Union, EFTA States, and the United Kingdom, our terms are now governed by Irish law and the forum for lawsuits is Ireland to the extent permitted by law.

- **Additional details regarding how long we keep your information:** We retain certain information to provide you with our products and services, comply with our legal requirements, and maintain the safety and security of our products and services. We've updated our Privacy Policy to clarify the types of information we keep and their retention periods.

- **AI and machine learning clarifications:** We've added language to our Privacy Policy to clarify how we may use the information you share to train artificial intelligence models, generative or otherwise. To learn more about Grok including how to control whether your data is used for Grok training please see here.

- **Updates to our enforcement provisions:** We've updated our Terms of Service to clarify the license we grant you to use the services and our ability to enforce these terms.

- **Updates to reflect how our products and services work:** We've incorporated updates to better reflect how our existing and upcoming products, features, and services work.

- **For recipients of the X service in the European Union:** In addition to the changes described above, if you are a recipient of the X service in the European Union, we've updated our 'Summary of Terms' to help you understand you may challenge certain decisions we make under the Digital Services Act (Regulation (EU) 2022/2065) via our internal process or out-of-court dispute settlement as described here.

If you continue to use our products or services on or after November 15, 2024, you are agreeing to the updated X Terms of Service and Privacy Policy.

If you have any questions or concerns, you can contact us here.

This blog post was updated on November 19, 2024.

Case No. 5:26-cv-00772-PCP

DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)

23. As shown above, the X Privacy Center post flagged six changes to the Terms in bullet point form. The very first bullet point highlighted the changes to the choice of forum clause in plain English as follows:

> **Governing law and forum changes:** For users residing outside of the European Union, EFTA States, and the United Kingdom, we've updated the governing law and forum for lawsuits to Texas as specified in our terms. For users residing in the European Union, EFTA States, and the United Kingdom, our terms are now governed by Irish law and the forum for lawsuits is Ireland to the extent permitted by law.

24. The October 16, 2024 post in the X Privacy Center also stated, "If you continue to use our products or services on or after November 15, 2024, you are agreeing to the updated X Terms of Service and Privacy Policy."

25. At the bottom of the prompt shown in Paragraph 20 above, the user was asked to click a button labeled "Got it." The prompt was served for 180 days or until the user clicked the prompt. A true and correct copy of the prompt that was served in connection with the update to **Version 20** of the Terms (reflected above) is attached as **Exhibit 4**.

26. Further, beginning on October 16, 2024, the X Terms of Service webpage, which is accessible via hyperlink on every page of the X platform including the log in page, prominently displayed a banner at the top of the page stating, "We have made some updates to our Terms of Service. This version of the Terms of Service will go into effect on November 15, 2024. Until then, the current Terms of Service continue to apply." The X Terms of Service webpage displayed both the newly updated **Version 20** of the Terms and the prior version of the Terms directly underneath.

27. Moreover, immediately after X's announcement of **Version 20** of the Terms on October 16, 2024, and in the months that followed, many news organizations published articles and reported about **Version 20** of the Terms, including about the updated Texas forum selection clause. True and correct copies of a selection of these articles are attached as **Exhibit 5** (*TechCrunch* Article (Oct. 17, 2024)), **Exhibit 6** (*Social Media Today* Article (Oct. 17, 2024)), **Exhibit 7** (*CNN* Article (Oct. 21, 2024)), and **Exhibit 8** (*CNBC* Article (Nov. 22, 2024).

28. Many of those articles hyperlinked to **Version 20** of the Terms that were published

Case No. 5:26-cv-00772-PCP

DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)

on the X Terms of Service webpage, which at the time displayed a banner stating that **Version 20** of the Terms "will go into effect on November 15, 2024."

29.    **Version 21** of the Terms was published on December 16, 2025, and went into effect on January 15, 2026. X began notifying users about this update to the Terms on December 16, 2025. In particular, since December 16, 2025, X has served a prompt to X users that have logged in to their X accounts and will continue to do so until June 14, 2026. The prompt served to X account holders provides:



30.    As shown above, the prompt, which was entitled "Updates to our Terms of Service and Privacy Policy," stated plainly that X was "updating our Terms of Service and Privacy Policy" and suggested to users that "Now's a great chance to review them." The words "Terms of Service" and "Privacy Policy" were highlighted in blue font and were hyperlinked to the Terms and policies at issue.

31.    As shown above, the prompt also told users that "[i]f you want to learn more about these changes, head to the X Privacy Center." The term "X Privacy Center" was also highlighted in blue font and was hyperlinked to a December 16, 2025 post in the X Privacy Center, entitled

DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)

"Updates to our Terms and Privacy Policy" that contained "a summary of the primary changes that go into effect January 15, 2026." The X Privacy Center post summarizing the primary changes can be found here: https://privacy.x.com/en/blog/2025/updates-tos-privacy-policy, and a true and correct copy is attached as **Exhibit 9**. The post reads as follows:

December 16, 2025

# Updates to our Terms and Privacy Policy

We're updating the X Terms of Service and Privacy Policy to support our evolving business, meet new legal requirements, and make it clearer what we expect from you and what you can expect from us when using our services.

Below is a summary of the primary changes that go into effect on January 15, 2026. You may also see a notification about these updates in the X app.

- **Governing law and disputes:** We've updated our Terms to clarify that the choice of law and courts we use to resolve disputes apply to both current and future lawsuits. For users outside the EU, EFTA States, and the UK, we've added details about how long you or X have to start a legal claim.

- **Our enforcement provisions:** We've updated our Terms to explain that in some places, for example, the EU and UK, we may need to remove not only illegal content but also content considered harmful or unsafe under local laws. Where such obligations apply, the respective content will be made unavailable only within the required country or geographic area and will remain accessible elsewhere.

- **User content responsibilities and restrictions:** We've updated our Terms to better reflect that you are responsible for the content you post and create, including prompts, outputs, and/or information obtained when using X. We've also added additional prohibitions against interfering with the services.

- **Age assurance considerations:** Our updated Privacy Policy explains that we may collect and share information to estimate or verify your age when legally required.

- **Description of our services:** We've updated our Terms to better reflect how we describe our products, features, and services. Certain products, features, or services may come with extra terms or conditions.

We encourage you to read these changes in full since they govern your use of X and how we handle your data. If you continue to use our products or services on or after January 15, 2026, you agree to the updated X Terms of Service and Privacy Policy.

If you have any questions or concerns, you can contact us here.

*This blog post was updated on December 17, 2025.*

32.     As shown above, the X Privacy Center post flagged five changes to the Terms in bullet point form. The very first bullet point highlighted the changes to the choice of forum clause in plain English as follows:

> **Governing law and disputes:** We've updated our Terms to clarify that the choice of law and courts we use to resolve disputes apply to both current and future lawsuits. For users outside the EU, EFTA States, and the UK, we've added details about how long you or X have to start a legal claim.

33.     The December 16, 2025 post in the X Privacy Center also stated, "If you continue to use our products or services on or after January 15, 2026, you agree to the updated X Terms of

DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)

Service and Privacy Policy."

34. Further, beginning on December 16, 2025, the X Terms of Service webpage, which is accessible via hyperlink on every page of the X platform including the log in page, prominently displayed a banner at the top of the page stating, "We have made some updates to our Terms of Service. This version of the Terms of Service will go into effect on January 15, 2026. Until then, the current Terms of Service continue to apply." The X Terms of Service webpage displayed both the newly updated **Version 21** of the Terms and the prior version of the Terms directly underneath.

35. At the bottom of the prompt shown in Paragraph 29 above, the user is asked to click a button labeled "Got it." This prompt will be served until June 14, 2026 or until the user clicks the prompt. A true and correct copy of the prompt that has been served in connection with the update to **Version 21** of the Terms (reflected above) is attached as **Exhibit 10**.

36. **Version 21** of the Terms, and all relevant prior versions, provide that X may revise the Terms and states that "[b]y continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms." X generally updates its Terms of Service and Privacy Policy on an annual basis.

37. Based on my review of available data, I have confirmed that New Jersey Doe clicked on the "Got it" button within the above prompts relating to **Version 20** of the Terms on October 16, 2024 and relating to **Version 21** of the Terms on December 16, 2025; Ohio Doe clicked on the "Got it" button within the above prompts relating to **Version 20** of the Terms on October 26, 2024 and relating to **Version 21** of the Terms on January 1, 2026; and South Carolina Doe clicked on the "Got it" button within the above prompts relating to **Version 20** of the Terms on October 16, 2024 and relating to **Version 21** of the Terms on December 16, 2025. As such, these users would have seen that X updated its Terms and expressly accepted **Version 20** of the Terms, as well as **Version 21** of the Terms.

38. Since filing the Amended Complaint on May 1, 2026, New Jersey Doe, Ohio Doe, and South Carolina Doe have continued to use their X accounts. New Jersey Doe's most recent access to the X platform occurred on June 4, 2026, and his last post was on June 3, 2026. Ohio

DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)

Doe's most recent access to the X platform occurred on June 4, 2026, and her last post was on April 19, 2026.  South Carolina Doe's most recent access to the X platform occurred on June 4, 2026, and her last post was on February 11, 2026.

39.    On April 10, 2026, X made a nonmaterial change to the X Terms of Service, allowing lawsuits to be brought in Wichita County, Texas, in addition to Tarrant County, Texas.  This most current version of the Terms, **Version 22**, states in relevant part that:  "[A]ll disputes . . . shall be brought and must proceed exclusively in the federal or state courts located in Wichita County or Tarrant County, Texas, United States."  **Version 22** of the Terms further states that:  "By continuing to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms."  A true and correct copy of **Version 22** of the Terms is attached as **Exhibit 11**.

40.    Both X.AI Corp. and X.AI LLC (the "X.AI Defendants") are U.S. corporate affiliates of X Corp.  All three entities are under common ownership and control of X.AI Holdings LLC.

41.    The X.AI Defendants have their own terms of service, which are separate from X's Terms, and which provide that "[u]se of Grok on the X platform is not governed by" the X.AI terms of service, and "[t]o access Grok on X, you must agree to the X Terms of Service."  The X.AI terms of service also contain a near-identical forum-selection clause to the X Terms of Service, which sets the location of any litigation as the Texas courts as well.  A true and correct copy of the X.AI terms of service is attached as **Exhibit 12**.

Case No. 5:26-cv-00772-PCP

DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on this 5th day of June, 2026 in San Francisco, California.


                                                    */s/ Megan Scolari*
                                                    Megan Scolari

Case No. 5:26-cv-00772-PCP

DECLARATION OF MEGAN SCOLARI IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS
ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)