Sophia M. Rios (SBN 305801)
**BERGER MONTAGUE PC**
8241 La Mesa Blvd, Suite A
La Mesa, CA 91942
Tel: (619) 489-0300
Fax: (612) 584-4470
srios@bergermontague.com

*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

|  |  |
|---|---|
| JANE DOE, SOUTH CAROLINA ROE, NEW JERSEY DOE, and OHIO DOE, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>X.AI CORP. and X.AI LLC,<br><br>     Defendants. | Case No. 5:26-cv-00772-PCP<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS**<br><br>Date: July 30, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8, 4th Floor<br>Judge: Hon. P. Casey Pitts |

OPPOSITION TO DEFENDANTS' MOTION
FOR A STAY

CASE NO. 5:26-CV-00772-PCP

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................................... 2

LEGAL STANDARD .................................................................................................................. 3

ARGUMENT ............................................................................................................................... 4

I.    This Case Is Not a Civil Action Filed Under 18 U.S.C. § 1595(a). .................................. 4

II.   South Carolina Roe's Claims Do Not Arise from the "Same Occurrence" as a Criminal Case. ................................................................................................................................... 5

III.  All Relevant Factors Weigh Against a Discretionary Stay. ............................................... 8

CONCLUSION .......................................................................................................................... 10

# **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                                        Page(s)

*Doe v. Fitzgerald*,
  No. 20-10713-MWF (RAOX), 2022 WL 18110021 (C.D. Cal. Dec. 14, 2022)............... 2, 3, 5

*Doe 1-10 v. Fitzgerald,*
  102 F.4th 1089 (9th Cir. 2024) ................................................................................... passim

*Doe v. Aylo Glob. Ent. Inc.*,
  No. CV 23-07488-MWF (AGRX), 2023 WL 8884400 (C.D. Cal. Nov. 29, 2023).......... 1, 6, 8

*Doe v. Bank of Am., N.A.*,
  No. 25-CV-8520 (JSR), --- F. Supp. 3d ---, 2026 WL 783834 (S.D.N.Y. Mar. 20, 2026) .... 3, 5

*Doe v. Mindgeek USA Inc.*,
  No. 21-cv-00338, 2021 WL 6618628 (C.D. Cal. Dec. 28, 2021) ........................................... 4

*Fleites v. MindGeek S.A.R.L.*,
  801 F. Supp. 3d 1045 (C.D. Cal. 2025) ................................................................................... 3

*G.G. v. Salesforce.com, Inc.*,
  No. 20 C 2335, 2026 WL 663407 (N.D. Ill. Mar. 10, 2026) ....................................................... 4

*Keating v. Office of Thrift Supervision*,
   45 F.3d 322 (9th Cir. 1995) .............................................................................................. 8, 10

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
  No. 4:10-CV-04124, 2011 WL 5188424 (W.D. Ark. Oct. 31, 2011)..................................... 5, 7

*Latta v. Otter*,
  771 F.3d 496 (9th Cir. 2014) ..................................................................................................... 3

*Sharma v. Balwinder*,
  No. 21-CV-00480-BLF, 2021 WL 4865281 (N.D. Cal. Sept. 29, 2021)................................... 4

*Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*,
  720 F. Supp. 805 (N.D. Cal. 1989)...................................................................................... 8, 9

*Tianming Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*,
  No. 1:18-CV-0030, 2020 WL 5983939 (D. N. Mar. I. Oct. 9, 2020) ........................... 1, 6, 7, 8

<u>Statutes</u>

18 U.S.C. § 1595, *et seq.* ....................................................................................................... passim

**INTRODUCTION**

Plaintiff South Carolina Roe does not assert a claim against Defendants X.AI Corp. and X.AI LLC ("xAI") under the Trafficking Victims Protection Reauthorization Act (TVPRA). While the images xAI's generative AI model created of her are vile, South Carolina Roe also does not assert that the images created of her are child sex abuse material (CSAM) under federal law. Despite these omissions, xAI seeks to stay the claims, not only of South Carolina Roe, but of *all* Plaintiffs, under the TVPRA's provision of a mandatory stay for "[a]ny civil action filed *under* [the TVPRA]." 18 U.S.C. § 1595(b) (emphasis added); ECF No. 39 ("Motion"). The Court should deny the request under the plain language of the statute, which is limited to civil actions under the TVPRA.

Even if the TVPRA could be used to stay actions not involving civil claims under the TVPRA (it cannot), xAI has failed to carry its burden to show that the criminal action against South Carolina Roe's father and the claims in this action "arise out of the same occurrence." *Doe 1-10 v. Fitzgerald* ("*Fitzgerald II*"), 102 F.4th 1089, 1098 (9th Cir. 2024), *cert. denied sub nom. Fitzgerald v. United States Attorney's Off., S. Dist. of New York*, 145 S. Ct. 378 (2024). The criminal charges against South Carolina Roe's father involve CSAM and xAI admits that "the image of South Carolina Roe [at issue in this action] is not alleged to constitute CSAM." (ECF No. 34 at 3 n.4.) xAI's Motion is therefore premised on speculation that its model, named Grok, *could have* generated additional images of South Carolina Roe that constitute CSAM and that those images, *if they exist*, could be the subject of a criminal action. But speculation is not sufficient to obtain a stay under the TVPRA. *See Doe v. Aylo Glob. Ent. Inc.*, No. CV 23-07488-MWF (AGRX), 2023 WL 8884400, at *3 (C.D. Cal. Nov. 29, 2023); *Tianming Wang v. Gold Mantis Constr. Decoration (CNMI), LLC*, No. 1:18-CV-0030, 2020 WL 5983939, at *3 (D. N. Mar. I. Oct. 9, 2020). That is especially true here because xAI possesses the evidence needed to put any speculation to rest.

The purpose of the stay provision of the TVPRA is "not [to] help defendants delay civil actions," which is exactly how xAI is seeking to use it. *Doe v. Fitzgerald* ("*Fitzgerald I*"), No.

CV 20-10713-MWF (RAOX), 2022 WL 18110021, at *4 (C.D. Cal. Dec. 14, 2022) (citation omitted), *aff'd*, 102 F.4th 1089 (9th Cir. 2024). xAI's request for a stay under the *Keating* factors also fails. The Court should deny the Motion.

### FACTUAL BACKGROUND

Plaintiff South Carolina Roe asserts claims against xAI for using its generative AI model Grok to create images "depicting South Carolina Roe in a bed with her father" in a way that "make[s] it appear as if they had just consummated a sexual act." (ECF No. 28, "Am. Compl.," ¶ 105.) South Carolina Roe "understands that [the images] depict her as a minor." (*Id.* ¶ 106.) South Carolina Roe does not allege that the images depict nudity or that the images constitute CSAM in violation of the TVPRA—a fact which has been conceded by xAI. (*See* ECF No. 34 at 3 n.4 ("the image of South Carolina Roe is not alleged to constitute CSAM").) South Carolina Roe does not dispute that there is a criminal action pending against her father concerning CSAM-related charges or that she is a victim in that action. (Am. Compl. ¶ 104; Motion at 7, 9.)

South Carolina Roe alleges that "[i]t is possible that additional deepfakes" of her were generated by xAI but that she does not know about them, and that those images, if they exist, could be "subject to an ongoing criminal investigation" against her father. (Am. Compl. ¶¶ 104, 107.) South Carolina Roe does not allege what these hypothetical images may contain or that they violate the TVPRA—nor could she because she does not know whether they exist. (*See generally id.* ¶¶ 102-11.)

On the other hand, South Carolina Roe alleges that when a user prompts a generative AI model such as Grok to create an image, the resulting image or video is "processed through servers owned, operated, or controlled by the model developer" and "the developer's systems save or log the generated content." (*Id.* ¶¶ 78-79.) Thus xAI, as the developer of Grok, would know whether additional deepfakes of South Carolina Roe were generated by Grok and what those images would contain. However, xAI presents no evidence suggesting that such images actually exist, let alone that such images are CSAM. Nor does xAI suggest that it has been in contact at all with the South Carolina authorities in connection with any investigation, whether in connection with images

depicting South Carolina Roe or otherwise.

South Carolina Roe brought her claims along with three other Plaintiffs on May 1, 2026 in the Amended Complaint. (ECF No. 28.) The Amended Complaint does not contain a claim under the TVPRA by South Carolina Roe or any other Plaintiff.

## **LEGAL STANDARD**

The TVPRA provides a civil remedy for CSAM victims. Victims "may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)" to seek damages and other relief. 18 U.S.C. § 1595(a); *Fleites v. MindGeek S.A.R.L.*, 801 F. Supp. 3d 1045, 1070 (C.D. Cal. 2025) (upholding § 1595(a) claim against website operator for hosting and profiting from child pornography). The TVPRA requires a stay of such a civil action under the TVPRA if there is a pending "criminal action arising out of the same occurrence in which the claimant is the victim." 18 U.S.C. § 1595(b)(1). The purpose of this provision is "not [to] help defendants delay civil actions." *Fitzgerald I*, 2022 WL 18110021, at *4 (citation omitted). It is instead "for the benefit of the Government" to protect the Government's ability to try criminal cases. *Doe v. Bank of Am., N.A.*, No. 25-CV-8520 (JSR), --- F. Supp. 3d ---, 2026 WL 783834, at *6 (S.D.N.Y. Mar. 20, 2026).

The Ninth Circuit has interpreted 18 U.S.C. § 1595(b)(2) to mean that "the district court 'shall' stay a civil action filed under § 1595(a) if (1) a criminal action or investigation is pending; (2) the criminal action arises 'out of the same occurrence' as the civil action; and (3) the plaintiff in the civil action is the victim of an occurrence that is the same in the civil and criminal proceedings." *Fitzgerald II*, 102 F.4th at 1098.[1] The party seeking a stay bears the burden of showing that a stay is warranted. *Latta v. Otter*, 771 F.3d 496, 498 (9th Cir. 2014).

---

[1] Plaintiffs do not dispute that there is a criminal action pending against South Carolina Roe's father or that South Carolina Roe is a victim in that action. (Motion at 7, 9.)

## **ARGUMENT**

xAI's attempt to indefinitely delay this case falters out of the gate. This action is not a "civil action filed under § 1595(a)" of the TVPRA. *Fitzgerald II*, 102 F.4th at 1098. Nor do South Carolina Roe's allegations and the allegations against South Carolina Roe's father in the South Carolina Court of General Sessions arise out of "the same occurrence." *Id.* (quoting 18 U.S.C. § 1595(b)(1)). For similar reasons, a discretionary stay is inappropriate. An indefinite stay would severely prejudice all Plaintiffs, pose minimal-to-nonexistent prejudice to xAI, and serve little purpose but to delay.

### **I.    This Case Is Not a Civil Action Filed Under 18 U.S.C. § 1595(a).**

A stay is available under the TVPRA only if a plaintiff asserts a claim under the TVPRA. The only civil action that can be stayed is a "civil action filed under subsection (a)" of 18 U.S.C. § 1595. Such a civil action under the TVPRA may be brought by a plaintiff "who is a victim of a violation of [the TVPRA]." 18 U.S.C. § 1595(a). Instead of claims based on a "violation of [the TVPRA,]" South Carolina Roe brings tort and state law claims against xAI. 18 U.S.C. § 1595(a). Thus, under the plain text of the TVPRA, this case is not "a civil action filed under § 1595(a)" and a stay under § 1595(b) is unavailable. *Fitzgerald II*, 102 F.4th at 1098.

xAI glosses over this threshold requirement. (Motion at 7.) But all of the cases upon which xAI relies involve plaintiffs alleging claims under the TVPRA. *Fitzgerald II*, 102 F.4th at 1091; *Doe v. Mindgeek USA Inc.*, No. 21-cv-00338, 2021 WL 6618628, at *1 (C.D. Cal. Dec. 28, 2021); *Doe v. Salesforce, Inc.*, No. 2:25-CV-00189, ECF No 1, Compl. ¶¶ 179-209 (S.D. Tex.); *G.G. v. Salesforce.com, Inc.*, No. 20 C 2335, 2026 WL 663407, at *1 (N.D. Ill. Mar. 10, 2026); *Sharma v. Balwinder*, No. 21-CV-00480-BLF, 2021 WL 4865281, at *1 (N.D. Cal. Sept. 29, 2021). Plaintiffs are unaware of any court granting a stay under the TVPRA without an underlying TVPRA claim, and for good reason.

The stay provisions of § 1595(b)(1) exist because Congress created a powerful remedy for victims through § 1595(a). The overall purpose of the TVPRA is, as its name suggests, "to protect the victims of trafficking and strengthen the government's ability to prosecute

perpetrators." *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 4:10-CV-04124, 2011 WL 5188424, at *2 (W.D. Ark. Oct. 31, 2011); *see also Bank of Am., N.A.*, 2026 WL 783834, at *6 (collecting cases and legislative history). In expanding the ability of victims and the government to pursue the claims under the same statute in the civil and criminal systems, Congress grappled with the concern that simultaneous cases under the TVPRA might result. Through § 1595(b)(1), Congress effectively told courts that criminal cases take precedence over civil cases brought under the TVPRA. In other words, Congress provided a sword through § 1595(a) and a corresponding shield through § 1595(b)(1).

Considering the underlying structure, purpose, and plain text of the TVPRA, it would be a perverse result to allow civil defendants to invoke the TVPRA as a shield against victims who do not and cannot invoke the TVPRA as a sword. *Fitzgerald I*, 2022 WL 18110021, at *4 (noting that the purpose of the TVPRA is not to allow civil defendants to delay cases). As the Ninth Circuit has confirmed, the TVPRA is not a freestanding mandate to stay non-TVPRA cases. The statute "requires courts to stay an action *brought under § 1595(a)* in certain circumstances[.]" *Fitzgerald II*, 102 F.4th at 1091 (emphasis added).

Neither South Carolina Roe nor any other Plaintiff alleges that they are "a victim of a violation of [the TVPRA]" or that xAI benefitted from a violation of the TVPRA. 18 U.S.C. § 1595(a). According to the plain text of the statute, without a "civil action filed under subsection (a)[,]" there can be no stay under subsection (b). 18 U.S.C. § 1595(b)(1).

**II.    South Carolina Roe's Claims Do Not Arise from the "Same Occurrence" as a Criminal Case.**

Even if this case can somehow be considered a "civil action filed under" the TVPRA, a stay is not available here because this case and the pending criminal case against South Carolina Roe's father do not arise from "the same occurrence." 18 U.S.C. § 1595(b)(1). The word "same" means "resembling in every relevant respect[.]" *Fitzgerald II*, 102 F.4th at 1099. As a result, courts "must determine whether one or more of the events that took place and gave rise to the claims in the plaintiffs' action resembles in every relevant respect one or more of the events that

gave rise to the charges in the indictment." *Id.* Courts do not grant stays just because there are "similar-sounding allegations" or a "similar factual background" in separate civil and criminal actions. *Aylo Glob. Ent. Inc.*, 2023 WL 8884400, at *3 (denying stay due to lack of "same occurrence" overlapping in civil and criminal cases); *Tianming Wang*, 2020 WL 5983939, at *4 (same). To determine whether a civil complaint "resembles in every relevant respect one or more of the events that gave rise to the charges" in a criminal case or instead, merely shares a similar factual background to a criminal case, courts compare the civil complaint to charging documents in the criminal case. *See Fitzgerald II*, 102 F.4th at 1100.

Here, there are only "similar-sounding allegations" in the two actions and xAI's speculation supporting the contention that this case and the criminal case against South Carolina Roe's father arise out of the "same occurrence." *Aylo Glob. Ent. Inc.*, 2023 WL 8884400, at *3; 18 U.S.C. § 1595(b)(1). South Carolina Roe alleges that xAI created an image of her and her father in a bed, and that "Grok altered the images to make it appear as if they had just consummated a sexual act." (Am. Compl. ¶ 105.) As the Arrest Warrant for South Carolina Roe's father makes clear, these images are different than the images giving rise to the criminal case. South Carolina Roe's father was charged with ███████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████ (Kurtzberg Decl. Ex. 2, ECF No. 39-3 ("Arrest Warrant") at 2, 4, 6.) ███ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████ (*Id.* at 2, 4, 5.) While the images Grok created of South Carolina Roe shock the conscience, South Carolina Roe does not allege that these images depict her ████████████████████████ (*Id.*)

Speculation about whether Grok was used to create (i) the images that are the subject of the CSAM investigation or (ii) to create additional images of South Carolina Roe and whether those images constitute CSAM underlying the criminal action does not warrant a stay. It is xAI's

burden to present evidence that the criminal action arises from the same occurrence as South Carolina Roe's claims in this action. Speculation does not constitute evidence. *Tianming Wang*, 2020 WL 5983939, at *3 ("IPI therefore cannot mandate the Court to issue a stay here based on mere speculation of a potential criminal charge"); *Kolbek*, 2011 WL 5188424, at *2 ("Defendants, however, may not mandate the imposition of a stay under the statute based on mere speculation that the government may be involved in an ongoing investigation."). xAI's speculation about what facts may be uncovered tomorrow does not justify a stay today. The Amended Complaint does not provide a basis for stay because South Carolina Roe does not allege that Grok created the images that are the subject of the criminal case, does not assert a TVPRA claim, and does not assert that the images Grok created of her constitute CSAM. The sole evidence xAI presents, the Arrest Warrant, does not fill in these gaps. As it stands, there is no risk of disrupting an ongoing criminal case through discovery because there is no evidence the images identified in the Amended Complaint, or any images created of South Carolina Roe by Grok, or even *any* images created by Grok are part of a criminal case.

Further, xAI has access to the evidence that would put its speculation to rest but has not provided that evidence. xAI knows what additional images or videos South Carolina Roe's father generated with Grok, and whether those images or videos depict South Carolina Roe. Any images that Grok created of South Carolina Roe were "processed through servers owned, operated, or controlled by" xAI and xAI's "systems save or log the generated content." (Am. Compl. ¶¶ 78-79.) xAI, however, presents no evidence that additional images of South Carolina Roe were generated with Grok or that those hypothetical images potentially constitute CSAM. xAI's lack of evidence is a telling omission.

Other cases involving a "similar factual background" but not the "same occurrence" in pending civil and criminal cases are instructive and call for the same result here. In *Tianming Wang*, for example, a civil complaint and criminal indictment shared a common set of facts. 2020 WL 5983939, at *4. Both complaints concerned forced labor, "paying illegal work[er]s less wages, housing workers in Tanapag Village dormitories, evading agencies, and hiring workers

that were unqualified and worked in unsafe work conditions." *Id.* Despite clear factual overlap, a stay was inappropriate. As here, the case involved different statutes and allegedly wrongful conduct that was not the same. *Id.*

Similarly, in *Aylo Global Entertainment, Inc.*, the plaintiff alleged a sex trafficking conspiracy that was different from a sex trafficking conspiracy that was the subject of criminal cases against the same defendants. 2023 WL 8884400, at *1. The fact that the complaint "at first glance" resembled the criminal indictments was not enough. *Id.* at *2. With only "inferences from similar-sounding allegations" supporting a stay, the court found that there was no "same occurrence" in both sets of cases. *Id.* at *3. Here, xAI attempts to build one inference on top of another to support a stay without showing that the images of South Carolina Roe described in the Amended Complaint, or even any images created by Grok, are the same images at issue in the criminal case against her father. The result should be the same as in *Tianming Wang*, *Aylo Global Entertainment, Inc.*, and elsewhere. Some shared factual background between this case and the criminal case against South Carolina Roe's father does not mean these cases share "the same occurrence." 18 U.S.C. § 1595(b)(1).

### III.     All Relevant Factors Weigh Against a Discretionary Stay.

xAI's attempt to stay this case under the Court's inherent discretionary powers fares no better. All of the factors outlined in *Keating v. Office of Thrift Supervision* support allowing this case to proceed: "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." 45 F.3d 322, 325 (9th Cir. 1995).

First, Plaintiffs have "an interest in proceeding expeditiously with this action." *Sw. Marine, Inc. v. Triple A Mach. Shop, Inc.*, 720 F. Supp. 805, 809 (N.D. Cal. 1989). This case involves relatively recent events. A potential years-long delay would result in stale evidence and

forgotten memories. *Id.* Contrary to xAI's assertion that South Carolina Roe "will likely seek testimony" from South Carolina Roe's father and benefit from waiting for evidence to be uncovered in the criminal case, any potentially relevant evidence that is in the possession of South Carolina Roe's father is also within xAI's possession. (Motion at 10.) For example, the prompts that were used to generate any images of South Carolina Roe with Grok are within xAI's possession, as are the resulting images. Moreover, xAI overlooks the full scope of this case. This is a putative class action, brought by four putative class representatives, and it concerns widespread misconduct enabled and perpetuated by xAI that has affected, and continues to affect, countless people. The prejudice to Plaintiffs Ohio Doe, South Carolina Doe, and New Jersey Doe, in addition the putative class, is particularly acute. All relevant evidence that would materially advance their cases would grow stale, and delay would have no benefit. xAI cannot point to any real benefit that would come from waiting for hypothetical and tangentially relevant evidence to develop, particularly because xAI likely has all the relevant evidence already.

Second, xAI would face little to no prejudice. xAI asserts that it would not be able to "develop evidence as to whether, and to what lengths, South Carolina Roe's father intentionally circumvented policies and safeguards regarding the use of Grok." (Motion at 10.) As described above, however, this evidence about how South Carolina Roe's father used Grok is within xAI's possession.

Third, judicial efficiency would not be served by a stay. There is no dispositive issue to be resolved in the criminal case that would materially advance this case. There are countless "issues, evidence and parties which are different from those in the pending criminal action." *Sw. Marine, Inc.*, 720 F. Supp. at 810. As explained above, the images of South Carolina Roe at issue in this case are wholly different from the images at issue in the criminal case. Moreover, the claims of South Carolina Doe, New Jersey Doe, and Ohio Doe have nothing to do with the criminal case. Staying the entirety of this case, the vast majority of which does not even arguably involve the criminal case, would serve no purpose other than to delay unnecessarily.

Lastly, the interests of non-parties and the public interest weigh against a stay. This is a

putative class case seeking monetary and injunctive relief to remedy a widespread harm that has received a large amount of public interest. *Keating*, 45 F.3d at 326 (noting that public attention related to civil administrative case weighed against a stay). Any delay will mean that the harm will remain unremedied and that the putative class may continue to be harmed.

## **CONCLUSION**

There is no reason to delay the efficient resolution of this case. The TVPRA does not demand an indefinite delay. Common sense and the interests of justice demand the opposite.

Dated: June 22, 2026

Respectfully submitted,

BERGER MONTAGUE PC

*/s/ Sophia M. Rios*

Sophia M. Rios, SBN 305801
8241 La Mesa Blvd., Suite A
La Mesa, CA 91942
Tel: (619) 489-0300
srios@bergermontague.com

E. Michelle Drake*
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel: (612) 594-5999
emdrake@bergermontague.com

James Hannaway, *pro hac vice*
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Tel: (202) 559-9740
jhannaway@bergermontague.com

* *pro hac vice* forthcoming

*Counsel for Plaintiffs*