SAWYER & LABAR LLP
ADRIAN SAWYER (State Bar No. 203712)
  *sawyer@sawyerlabar.com*
1700 Montgomery Street, Suite 108
San Francisco, CA 94111
Telephone: 415.262.3820

CAHILL GORDON & REINDEL LLP
JOEL KURTZBERG (*admitted pro hac vice*)
  *jkurtzberg@cahill.com*
IVAN TORRES (*admitted pro hac vice*)
  *itorres@cahill.com*
32 Old Slip
New York, NY 10005
Telephone: 212.701.3120

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

|  |  |
|---|---|
| JANE DOE, SOUTH CAROLINA ROE, NEW JERSEY DOE, and OHIO DOE on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>X.AI CORP. and X.AI LLC,<br><br>          Defendants. | Case No. 5:26-cv-00772-PCP<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS**<br><br>Date: July 30, 2026<br>Time: 10:00 a.m.<br>Crtrm: 8, 4th Floor<br><br>**Judge:**  Hon. P. Casey Pitts |

Case No. 5:26-cv-00772-PCP

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

## TABLE OF CONTENTS

I.    Introduction .............................................................................................................. 1

II.    The Amended Complaint Was Filed Under 18 U.S.C. § 1595(b) ............................ 4

III.    Both the Criminal and Civil Action Concern South Carolina Roe's Father's Use of AI to Create Revealing and Sexualized Images Depicting Minors .................................... 5

IV.    The Entire Action Is Subject to a TVPRA Stay ...................................................... 10

V.    The Interest of Justice Weighs Heavily in Favor of a Stay ..................................... 10

VI.    Conclusion.............................................................................................................. 15

Case No. 5:26-cv-00772-PCP

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Blackbird Techs., Inc.* v. *Joshi*,
    2015 WL 5818067 (N.D. Cal. Oct. 6, 2015) ............................................................................... 4

*Doe* v. *Athens County*,
    2022 WL 1569979 (S.D. Ohio May 18, 2022)........................................................................ 4, 5

*Doe* v. *Aylo Global Entertainment Inc.*,
    2023 WL 8884400 (C.D. Cal. Nov. 29, 2023) ........................................................................... 8

*Doe* v. *Fitzgerald*,
    2022 WL 18110021 (C.D. Cal. Dec. 14, 2022) ...................................................................... 5, 7

*Doe 1-10* v. *Fitzgerald*,
    102 F.4th 1089 (9th Cir. 2024)............................................................................. 5, 6, 8, 9, 10

*Doe* v. *Salesforce, Inc.*,
    2026 WL 948514 (S.D. Tex. Apr. 8, 2026) ....................................................................... 6, 8, 9

*G.G.* v. *Salesforce.com, Inc.*,
    2026 WL 663407 (N.D. Ill. Mar. 10, 2026) ......................................................................... 5, 8

*Keating* v. *Office of Thrift Supervision*,
    45 F.3d 322 (9th Cir. 1995)......................................................................................... 4, 10, 11

*Lunkes* v. *Yannai*,
    882 F. Supp. 2d 545 (S.D.N.Y. 2012) ......................................................................... 5, 10, 11

*S.E.C.* v. *FAT Brands Inc.*,
    2024 WL 5319127 (C.D. Cal. Dec. 13, 2024) ......................................................................... 12

*S.E.C.* v. *Nicholas*,
    569 F. Supp. 2d 1065 (C.D. Cal. 2008).............................................................................. 10, 13

*Soudani* v. *County of Orange*,
    2026 WL 905695 (S.D.N.Y. Apr. 2, 2026) .............................................................................. 10

*Square 1 Bank* v. *Lo*,
    2014 WL 7206874 (N.D. Cal. Dec. 17, 2014) .................................................................... 12, 14

*Tianming Wang* v. *Gold Mantis Construction Decoration (CNMI), LLC*,
    2020 WL 5983939 (D.N.M.I. Oct. 9, 2020) .............................................................................. 8

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

*Williams* v. *Kohl's Dept. Stores, Inc.*,
    2020 WL 3882953 (C.D. Cal. June 16, 2020).......................................................................... 14

**Statutes**

18 U.S.C. § 1595 ............................................................................................................................ 1, 6

Case No. 5:26-cv-00772-PCP

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION
PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO
THE COURT'S DISCRETIONARY POWERS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Introduction[1]

This action must be stayed, as allowing this action to proceed during the pendency of the related criminal proceeding against South Carolina Roe's father threatens the type of disruption of a criminal proceeding that Congress enacted Section 1595(b)(1) to prevent.  The Trafficking Victims Protection Reauthorization Act ("TVPRA") mandates a stay of "[a]ny civil action filed under [Section 1595(a)]" during the pendency of "any criminal action arising out of the same occurrence in which the claimant is the victim."  18 U.S.C. § 1595(b)(1).  Plaintiffs concede that there is a criminal action pending against South Carolina Roe's father and that South Carolina Roe is a victim of her father's alleged conduct.  Opp. at 3 n.1.

Plaintiffs make two arguments as to why the mandatory stay does not apply here.  They claim that (1) this case "is not a civil action filed under [Section] 1595(a)," Opp. at 4–5, and (2) this case and the criminal investigation and prosecution of South Carolina Roe's father do not arise from the "same occurrence."  Opp. at 5–8.  Neither argument has merit, and both are contradicted by the allegations of the Amended Complaint.

Plaintiffs' argument that this is not a civil action filed under Section 1595(a) ignores entirely the allegations in Paragraph 14 of the Amended Complaint, which state that "[t]he Court has subject matter jurisdiction" over this case because "this action arises under . . . 18 U.S.C. §§ 1595, 1591(a)(1), 1594."  AC ¶ 14.  Defendants' opening brief pointed out that "[t]he Amended Complaint expressly invokes the TVPRA as a basis for this Court's subject matter jurisdiction," and quoted the language of Paragraph 14.  Mot. at 7.  While Plaintiffs' Opposition devotes two pages to the argument that this case "is not a civil action filed under [Section] 1595," Opp. at 4–5, it does not even address Defendants' argument that Plaintiffs' own allegations in Paragraph 14 argue the

---

[1] Unless stated otherwise, emphasis is added to quotations and internal citations and quotations have been omitted.  Defendants' Motion to Stay is defined as "Mot.," Plaintiffs' Opposition to Defendants' Motion to Stay is defined as "Opp.," and Plaintiffs' Amended Complaint is defined as "AC."

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

opposite of what they are claiming now. That is not surprising, because there is no way that Plaintiffs' current argument can be reconciled with Plaintiffs' allegations.

Plaintiffs' argument that this civil action and the criminal case do not arise from the "same occurrence" also cannot be squared with Plaintiffs' own allegations. Plaintiffs admit that South Carolina Roe "is a victim" of the criminal conduct alleged in the pending prosecution. Opp. at 2. The Amended Complaint alleges that South Carolina Roe's father used Grok to create images "depicting South Carolina Roe in a bed with her father" that "make it appear as if they had just consummated a sexual act," and that she "understands that they depict her as a minor." AC ¶¶ 105–06. The criminal charges against her father concern the same conduct: his use of AI platforms to generate, possess, and distribute sexualized deepfake images of minors—including South Carolina Roe. Plaintiff now claims that, even though these images are "vile," she does not allege that they constitute child sexual abuse material or "CSAM" under federal law. Opp. at 1. But whether all or some of the sexualized images created by South Carolina Roe's father constitute child sexual abuse material or "CSAM" is not the relevant test for whether the allegations here arise from the "same occurrence" as the conduct in the criminal investigation and trial. The ongoing criminal investigation and potential trial will surely examine ***all*** sexualized deepfake images of minors allegedly created by South Carolina Roe's father. Sexualized images that are "vile," but not CSAM, Opp. at 1, will be relevant to and part of the criminal case—e.g., as proof of the defendant's mens rea. Given that, the cases arise from the "same occurrence" and if this case proceeds, it will both overlap and interfere with that criminal investigation and prosecution.

For similar reasons, the *Keating* factors independently and decisively support a discretionary stay. The overlap between this civil action and the criminal proceeding is substantial: both concern the father's alleged use of AI to create sexualized images of minors. Defendants face concrete prejudice from proceeding without a stay—if this case were to proceed now, while the criminal investigation is still ongoing, South Carolina Roe's father would almost certainly invoke his Fifth Amendment rights, depriving Defendants of testimony critical to their defenses, and key physical

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

evidence would remain in law enforcement custody.  The interests of non-party crime victims—whose identities have not been publicly disclosed and who may be witnesses in the criminal proceedings—weigh heavily in favor of allowing the criminal process to proceed unimpeded.  And the public interest in the effective functioning of the criminal justice system supports the same conclusion.

These considerations outweigh any limited prejudice Plaintiffs will face from a temporary stay.  The evidence Plaintiffs identify as critical—prompts, images, and account data—is digital, timestamped, and stored on Defendants' servers.  It is not at risk of degradation and will be preserved through litigation holds, regardless of whether this case proceeds now or is stayed until the criminal proceedings are complete.  When the criminal matter concludes, Plaintiffs will be free to pursue their claims with the benefit of a complete record and without the complications that parallel proceedings would create.

Finally, Plaintiffs' Opposition attempts to recast Defendants' Motion as an effort to delay this case indefinitely.  Opp. at 1, 3–4, 8–10.  That characterization is wrong.  Defendants seek a temporary stay to avoid a forced choice: either jeopardize the prosecution of an individual charged with sexually exploiting minors or proceed without access to critical evidence.  The conduct alleged against South Carolina Roe's father—if true—is deplorable and strictly prohibited under the terms of service governing Defendants' generative-AI chatbot.  It is precisely because Defendants share the public's interest in seeing justice done that they seek this stay.

The stay Defendants seek is temporary and protective.  It will ensure that civil litigation does not compromise the criminal process, while preserving Plaintiffs' claims and Defendants' defenses for resolution at the appropriate time.  Proceeding now risks exposing the prosecution's strategy, prematurely disclosing witness information, and providing the criminal defendant with a roadmap to the State's evidence—the very complications Congress sought to avoid when it enacted Section 1595(b)'s mandatory stay provision.  *See* H.R. Rep. No. 108-264, pt. 2, at 17 (2003) (explaining that "prosecutions should take priority over civil redress").  Those same concerns independently

3                    Case No. 5:26-cv-00772-PCP

support a discretionary stay under *Keating* v. *Office of Thrift Supervision*, 45 F.3d 322, 324–25 (9th Cir. 1995).

## II. The Amended Complaint Was Filed Under 18 U.S.C. § 1595(b)

Plaintiffs contend that because South Carolina Roe brings only tort and state law claims against x.AI, Plaintiffs do not "invoke the TVPRA as a sword," and therefore neither the text nor purpose of the TVPRA's mandatory stay provision supports the issuance of a mandatory stay. Opp. at 5. This argument ignores Plaintiffs' own allegations and cannot be reconciled with the text or purpose of Section 1595.

As Defendants' Motion explains, *see* Mot. at 7, Paragraph 14 of the Amended Complaint expressly invokes the TVPRA, alleging that the Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because "this action arises under . . . 18 U.S.C. §§ 1595, 1591(a)(1), 1594." AC ¶ 14. Plaintiffs' Opposition does not address—let alone dispute—this argument. That silence is telling. Having pleaded that this action "arises under" the TVPRA to establish federal jurisdiction, Plaintiffs cannot now disclaim the statute to avoid the procedural consequences of their own pleading decision. *Cf. Blackbird Techs., Inc.* v. *Joshi*, 2015 WL 5818067, at *1 n.1 (N.D. Cal. Oct. 6, 2015) (warning that a party "cannot use federal subject matter jurisdiction as both a sword and a shield, arguing it exists when it serves his interest and arguing it does not when its existence may result in consequences adverse to him").

Plaintiffs attempt to sidestep this problem by arguing that they "are unaware of any court granting a stay under the TVPRA without an underlying TVPRA claim[.]" Opp. at 4. But Plaintiffs fail to identify a single case holding that the mandatory stay is ***inapplicable*** where, as here, a plaintiff invokes the TVPRA for jurisdictional purposes—and Defendants are not aware of any such decision. Moreover, Plaintiffs' suggestion that their decision to assert state law claims is dispositive ignores that courts have consistently held Section 1595(b)'s stay extends to *all* claims in a civil action, not merely those asserted under the TVPRA. *See Doe* v. *Athens County*, 2022 WL 1569979, at *1 (S.D. Ohio May 18, 2022) ("Although only three of Plaintiff's claims arise under § 1595(a),

4                                                    Case No. 5:26-cv-00772-PCP
DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

and those claims do not name Athens County as a defendant, § 1595(b)'s broad language requires a stay of any civil action, and does not limit the stay to particular defendants or claims."); *see also Doe* v. *Fitzgerald*, 2022 WL 18110021, at *5 (C.D. Cal. Dec. 14, 2022), *aff'd sub nom. Doe 1-10* v. *Fitzgerald*, 102 F.4th 1089 (9th Cir. 2024) (staying counterclaims for libel brought against Plaintiff in a TVPRA action, and explaining that "every district court to consider the issue" of "whether the TVPRA-stay provision is limited to particular defendants or claims" has determined the stay not to be "limited to particular defendants or claims").

Plaintiffs' reliance on congressional intent fares no better. Plaintiffs correctly observe that "Congress effectively told courts that criminal cases take precedence over civil cases brought under the TVPRA." Opp. at 5. But that observation undermines—rather than supports—their position. Contrary to Plaintiffs' assertion that "[n]either South Carolina Roe nor any Plaintiff alleges that they are a victim of a violation of [the TVPRA]" (*id*.), just pages earlier Plaintiffs concede that "South Carolina Roe . . . is a victim in" the "criminal action pending against her father" (*id*. at 2), where the claims at issue indisputably involve state law charges concerning conduct encompassed by the TVPRA. *See G.G.* v. *Salesforce.com, Inc.*, 2026 WL 663407, at *5 (N.D. Ill. Mar. 10, 2026) (refusing to deny "a stay on the grounds that the criminal defendants were not charged under the TVPRA"). As such, Plaintiffs cannot seriously dispute that allowing this case to proceed would implicate the very same concerns that motivated Congress to enact the stay provision—i.e., the disruption of the criminal process implicated by civil discovery. *See Lunkes* v. *Yannai*, 882 F. Supp. 2d 545, 549 (S.D.N.Y. 2012) (explaining that Congress's "inclusion of the mandatory stay provision was meant to allay" the concern that the "TVPRA's private right of action . . . would ***hinder prosecutors' abilities to try a case unfettered by the complications of civil discovery***," emphasizing that only after "a defendant has been sentenced[] [does] civil litigation no longer pose[] a risk of adversely affecting the government's ability to prosecute the case").

### III.    Both the Criminal and Civil Action Concern South Carolina Roe's Father's Use of AI to Create Revealing and Sexualized Images Depicting Minors

As Plaintiffs concede that there is a criminal action pending against South Carolina Roe's

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

father involving CSAM charges and that South Carolina Roe is a victim in that action (Opp. at 2), the sole remaining dispute is whether this civil action and the criminal action arise out of the "same occurrence." 18 U.S.C. § 1595(b)(1). Plaintiffs' own allegations, and South Carolina Roe's concession that she is a victim of the conduct at issue in the criminal investigation and proceeding, make clear that they do.

Plaintiffs contend that this case and the criminal proceedings against South Carolina Roe's father share only "similar-sounding allegations," and that "speculation" is required to conclude they arise from the "same occurrence." Opp. at 6. Not so.

Plaintiffs acknowledge that the criminal charges against South Carolina Roe's father—in which she concedes she is a victim—concern his ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████ Opp. at 6. Yet Plaintiffs contend that no sufficient connection exists because the arrest warrant states only that the father acted ██████████████████ ██████ without specifically referencing Grok, and because the Amended Complaint does not allege that images generated by the father using Grok depict South Carolina Roe ████████ ████████████████████████████████" *Id.*; *see also id.* at 1 (alleging that the images created of South Carolina Roe are "vile," but that "South Carolina Roe also does not assert that the images created of her are of [CSAM] under federal law").

This misstates the "same occurrence" standard, however, which does not require that the civil and criminal proceedings be identical, but only that there is a "clear connection" between the two. *Doe* v. *Salesforce, Inc.*, 2026 WL 948514, at *2 (S.D. Tex. Apr. 8, 2026) (citing *Fitzgerald*, 102 F.4th at 1100). Courts have consistently rejected attempts to cabin the stay provision to claims arising from conduct ***identical*** to the charged criminal conduct. *See id.* at *3 (granting Salesforce's motion to stay, finding that the "same occurrence" element was satisfied, emphasizing that the "root of the pending criminal action and this case are the same: Backpage.com generated revenue from

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

illegal sex trafficking advertisements, and the Backpage.com interface harmed victims of sex trafficking" even though "the criminal action **solely focuses** on Backpage.com and its employees, there [wa]s a 'clear connection' between the advertising scheme described in the Lacey Indictment and the advertising scheme described in the live Complaint"); *Fitzgerald*, 2022 WL 18110021, at *4–5 (extending stay to claims by victims of Fitzgerald's trafficking even though Fitzgerald was not charged in the Nygard criminal case, because "Fitzgerald is alleged to have modeled his individual trafficking exploits on Nygard's model" and the claims were "substantially related" to the charged conduct).

Here, the allegations have a "clear connection" of the sort recognized under the case law. South Carolina Roe claims that there is an ongoing criminal investigation of her father, in which the State alleges that he created certain sexualized deepfake images of her and others that depict them as minors.  AC ¶¶ 102-11; *see also* June 5, 2026, Declaration of Joel Kurtzberg (ECF No. 39-1) ("Kurtzberg Decl."), Ex. 2 at 2, 4, 6.  That the image of South Carolina Roe referenced in the operative complaint is not alleged to constitute CSAM under federal law (Opp. at 1), however, does not resolve the question of whether there is a "clear connection" between the allegations of this case and those in the criminal investigation and potential prosecution.

As the allegations here make plain, the connection here is not only clear, it is also strong. The Amended Complaint references the ongoing criminal investigation several times (*see* AC ¶¶ 103, 104, and 107) and Plaintiff's own allegations make clear that she believes that the images that are the subject of the ongoing criminal investigation will be relevant to her civil case here.  *See* AC ¶ 107 ("It is possible that additional deepfakes of South Carolina Roe were generated by Grok and South Carolina Roe has yet to find out about them because they are subject to an ongoing criminal investigation.").  Plaintiffs cannot simultaneously allege that potentially relevant evidence is unavailable because of a criminal investigation, and then claim the criminal investigation has nothing to do with their case.  Common sense also dictates that the ongoing investigation, which focuses on the use of generative AI to create sexualized images of minors (*see* Kurtzberg Decl., Ex.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

2 at 2, 4, 6) covers more than just the CSAM materials that may form the basis of any ultimate charges. And to suggest that the alleged creation of sexualized images of South Carolina Roe that are "vile," but not CSAM, lack a "clear connection" to the criminal case strains credulity. Opp. at 1. Such images will almost surely be part of any criminal case, even if they do not constitute CSAM, as they may be considered proof of the defendant's state of mind. This is more than sufficient to establish the type of "clear connection" needed to satisfy the "same occurrence" requirement for a mandatory stay. *See, e.g., Fitzgerald*, 102 F.4th at 1100-1101 ("Further, the complaint alleges that Fitzgerald was involved in specific events described in the indictment . . . This establishes that the complaint is based, **at least in part**, on the same occurrences that gave rise to the Nygard indictment."); *Salesforce, Inc.*, 2026 WL 948514, at *3 ("[T]here is a clear connection between the advertising scheme described in the *Lacey* Indictment and the advertising scheme described in the live Complaint.").

The cases Plaintiffs rely on are not to the contrary. In *Tianming Wang* v. *Gold Mantis Construction Decoration (CNMI), LLC*, the civil and criminal proceedings involved completely different factual circumstances—the criminal action concerned fraud against the government, while the civil action involved worker exploitation during a different time period. 2020 WL 5983939, at *4 (D.N.M.I. Oct. 9, 2020). Here, by contrast, both actions concern the same conduct: South Carolina Roe's father's alleged use of AI to create sexualized images depicting her as a minor. In *Doe* v. *Aylo Global Entertainment Inc.*, the movant failed to provide documentation of the criminal action or explain how civil discovery would interfere with it. 2023 WL 8884400, at *3 (C.D. Cal. Nov. 29, 2023). Here, Defendants have provided detailed documentation of the criminal investigation and potential charges and explained precisely how civil discovery will likely disrupt the criminal investigation and potential prosecution. *See* Mot. at 8–9; Kurtzberg Decl. ¶ 6, Ex. 2. Where, as here, the criminal and civil actions share the "same core facts," a mandatory stay is required. *G.G.*, 2026 WL 663407, at *3.

Nor does it require "speculation" to conclude that the two cases arise from the same

8                                    Case No. 5:26-cv-00772-PCP

occurrence. Both cases indisputably concern South Carolina Roe's father's alleged possession and distribution of "revealing and sexualized deepfakes" generated through the father's use of one or more artificial intelligence platforms. *Compare* AC ¶¶ 104–07 *with* Kurtzberg Decl., Ex. 2 at 2, 4, 6. That both proceedings involve the father's alleged use of artificial intelligence platforms to create sexualized images of minors is more than sufficient to establish the requisite "clear connection." *See Fitzgerald*, 102 F.4th at 1099–100; *Salesforce, Inc.*, 2026 WL 948514, at *2. That the images explicitly referenced in the Amended Complaint are not alleged to depict South Carolina Roe "████████████████████████████████████████" (Opp. at 6) does not change this conclusion. Even assuming those images are not ultimately included in an indictment, Plaintiffs cannot seriously contend that they are not an "occurrence" involved in the ongoing investigation or prosecution of her father. Plaintiffs' allegations suggest those images were on the devices seized by law enforcement, and there can be no serious dispute they are relevant to the ongoing investigation and will likely even be presented as relevant evidence in the criminal proceedings.

Plaintiffs' assertion that Defendants possess all relevant evidence because Grok-generated images are "processed through servers owned, operated, or controlled by" x.AI (Opp. at 7) ignores practical realities. First, without identifying information from the criminal investigation or South Carolina Roe's father—such as account names, dates, or times of usage—Defendants' ability to locate relevant evidence is significantly restricted, particularly as to accounts the father may have opened using fictitious or incomplete information. Second, even if Defendants could identify every image the father allegedly generated using Grok, discovery from law enforcement and the father remains inevitable. For example, evidence as to whether the father used other platforms—and whether he turned to them *because* Grok's guardrails prevented him from creating such content— would be highly relevant to x.AI's defenses. Indeed, Plaintiffs' own Opposition suggests that AI platforms *other than Grok* may have been used to generate the images most central to the father's arrest. This discovery, available only through access to the seized devices or testimony from the father, would risk disruption in the criminal proceedings—precisely the harm Congress sought to

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

prevent.

## IV.    The Entire Action Is Subject to a TVPRA Stay

Plaintiffs do not dispute—nor could they—that if Section 1595(b)'s mandatory stay applies, it extends to the entire action.  The Ninth Circuit has held that "the word 'action' in § 1595(b)(1) reflects its ordinary meaning and encompasses the entire civil lawsuit," requiring district courts to "issue[] a complete stay of the proceedings." *Fitzgerald*, 102 F.4th at 1101; *see also Lunkes*, 882 F. Supp. 2d at 550 ("it is most appropriate for a Section 1595 stay to encompass all defendants [and all claims] in a case").  Because South Carolina Roe's claims are subject to Section 1595(b)'s mandatory stay, the claims of Jane Doe, New Jersey Doe, and Ohio Doe must be stayed as well.

## V.    The Interest of Justice Weighs Heavily in Favor of a Stay

Regardless of whether a mandatory stay is required, the argument for a discretionary stay here is strong.  The *Keating* factors independently and decisively favor a stay. *Keating*, 45 F.3d at 324–25.

*First*, the "most important factor" in evaluating a discretionary stay is "the degree to which the civil issues overlap with the criminal issues." *S.E.C.* v. *Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008).  Here, as outlined above, the overlap is substantial—and the risk of disruption to the criminal proceedings is acute.  Courts routinely grant stays in these circumstances, even where the criminal defendant is not a party to the civil action. *See Soudani* v. *County of Orange*, 2026 WL 905695, at *3–4 (S.D.N.Y. Apr. 2, 2026) (granting stay where non-party criminal defendant's "actions are foundational to each of [p]laintiffs' claims" and explaining that "[o]verlap in substance is significant, even when the criminal action involves a non-party witness" because proceeding with civil discovery "may be used as an end run around the stricter rules of criminal procedure" and would deprive the defendant of "meaningful access to the most critical fact witnesses").

As established in Section III, both this civil action and the pending criminal prosecution arise from South Carolina Roe's father's alleged use of artificial intelligence to create sexualized images, including images that depict minors.  AC ¶¶ 105–07; Kurtzberg Decl., Ex. 2 at 8, 10, 12, 14, 16.

10    Case No. 5:26-cv-00772-PCP

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

The core discovery as to South Carolina Roe's claims, and x.AI's defenses as to those claims—concerning the father's use of Grok, the images he generated or unsuccessfully generated, the devices on which those images were stored, and the extent to which he turned to other AI platforms to create images that Grok's safeguards prevented him from creating—is the same discovery that would intrude on the ongoing criminal investigation. Proceeding with civil discovery risks exposing the prosecution's strategy, prematurely disclosing witness information, and providing the criminal defendant with a roadmap to the State's evidence. Congress enacted Section 1595(b)'s mandatory stay provision precisely to avoid these risks. *See Lunkes*, 882 F. Supp. 2d. at 549 (explaining that Congress sought to avoid civil discovery that would "hinder prosecutors' abilities to try a case unfettered by the complications of civil discovery"). Those same concerns apply with equal force under the *Keating* framework.

Critically, while no indictment has been issued yet, the criminal charges against South Carolina Roe's father involve ███████████████████████. Kurtzberg Decl., Ex. 1. Plaintiffs do not—and cannot—dispute that South Carolina Roe is a victim in that criminal action. Opp. at 2 n.1. But she is almost certainly not the only victim. The arrest warrants reference ████ ██████████████████████████████████████████ ███████████████████████. Kurtzberg Decl., Ex. 2. Allowing this civil case to proceed would not only risk prejudicing the prosecution's case against South Carolina Roe's father—it would risk prejudicing the rights of other crime victims whose identities have not been publicly disclosed and who may themselves be witnesses in the pending criminal proceedings.

The *Keating* factors expressly require courts to consider "the interests of persons not parties to the civil litigation." 45 F.3d at 325. Those interests weigh heavily in favor of a stay here. Other victims of the father's alleged conduct have a profound interest in the integrity of the criminal proceedings—proceedings that may result in restitution, vindication, and the incapacitation of a predator. Civil discovery that interferes with the criminal prosecution could compromise plea negotiations, delay trial, or undermine the State's ability to secure a conviction. The Court should

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

not permit Plaintiffs' desire to proceed expeditiously in this civil action to jeopardize the criminal justice process for victims who are not before this Court and whose interests may diverge from Plaintiffs' with respect to whether expediting this case or preserving the criminal process should take priority.[2]   The public's interest in the effective functioning of the criminal justice system supports the same conclusion. *See Square 1 Bank* v. *Lo*, 2014 WL 7206874, at \*5 (N.D. Cal. Dec. 17, 2014) ("[W]here there are parallel criminal and civil proceedings, the ***criminal*** case is of primary importance to the public, whereas the civil case, which will result only in monetary damages, is not of an equally pressing nature.") (emphasis in original).  That principle applies with particular force here, where the criminal prosecution involves deplorable allegations that the criminal defendant intentionally engaged in the sexual exploitation of minors through generative AI—a matter of significant public concern.  The public interest is served by ensuring that prosecution proceeds unimpeded.

*Second*, Plaintiffs contend that they "have an interest in proceeding expeditiously with this action," and that delay would prejudice their claims.  Opp. at 8.  But whatever interest Plaintiffs have in expeditious resolution is substantially outweighed by the paramount interest in protecting the integrity of the criminal justice process. *See Square 1 Bank*, 2014 WL 7206874, at \*4 (evaluating the Keating factors "on balance").  Courts routinely stay civil proceedings in the face of parallel criminal matters precisely because the criminal process takes precedence. *See, e.g.*, *S.E.C.* v. *FAT Brands Inc.*, 2024 WL 5319127, at \*5 (C.D. Cal. Dec. 13, 2024) ("[C]onsiderations of judicial economy weigh most strongly in favor of staying a civil proceeding . . . when a parallel criminal proceeding is pending at the same time and involves overlapping issues.").

Plaintiffs' own arguments undercut their claimed prejudice.  Plaintiffs emphasize that x.AI possesses evidence relevant to their claims because the images generated by Grok were "processed through servers owned, operated, or controlled by" x.AI and x.AI's "systems save or log the

---

[2] Given that those victims' identities are unknown, there is no way for this Court to give them an opportunity to be heard on this issue.  Under the circumstances, we respectfully suggest that the Court should err on the side of protecting their interests.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

generated content." AC ¶¶ 78–79; Opp. at 7, 9. Plaintiffs are correct—and that is precisely why any claimed prejudice to Plaintiffs is minimal. The prompts, images, and account data Plaintiffs identify as critical are digital, timestamped, and stored on Defendants' servers. They are not at risk of degradation or dependent on witness memory, and they will be preserved through litigation holds and other preservation obligations that apply regardless of whether this case proceeds or is stayed. Plaintiffs' speculation about "stale evidence and forgotten memories" (Opp. at 8–9) rings hollow in a case where the relevant evidence is fixed in digital form. This is not a personal injury case dependent on witness recollection of a fleeting event. A stay will not prejudice Plaintiffs' ability to access the evidence they themselves contend is within Defendants' possession.

*Third*, despite Plaintiffs' arguments to the contrary, the prejudice to Defendants from proceeding without a stay is concrete and substantial.

South Carolina Roe's father is a critical witness to the alleged use of Grok with respect to South Carolina Roe's claims. He allegedly took actual images of South Carolina Roe and then prompted Grok—and potentially other AI platforms—to generate the images at issue. He is the only person with direct knowledge of whether he used other AI platforms—and whether he turned to them because Grok's safeguards prevented him from generating certain content. That evidence goes to the heart of Defendants' defenses. Yet South Carolina Roe's father will almost certainly invoke his Fifth Amendment rights against self-incrimination if deposed in this civil action. *See S.E.C.* v. *Nicholas*, 569 F. Supp. 2d at 1070 (finding "[t]he specter of parties and witnesses invoking their Fifth Amendment rights" as a basis for imposing a discretionary stay).

The consequences of proceeding without access to this testimony are significant. If the father invokes his Fifth Amendment rights, Defendants will be unable to develop evidence central to their defense—including evidence that the father intentionally circumvented Grok's safety features or used multiple AI platforms to generate CSAM. Plaintiffs' suggestion that such evidence is within Defendants' possession is simply not true. For example, Defendants will be deprived of evidence as to whether the father researched exploits to avoid Grok's guardrails, whether he used

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

other AI applications that lacked guardrails built into Grok, and as to his testimony on questions concerning the nature and extent of South Carolina Roe's injuries.  Worse, Plaintiffs may contend that Defendants could face an adverse inference at trial based on the father's silence. *See Williams* v. *Kohl's Dept. Stores, Inc.*, 2020 WL 3882953, at *20 (C.D. Cal. June 16, 2020) (explaining that "[o]ther circuits . . . have overwhelmingly found it constitutionally permissible to impute an adverse inference from a non-party to a party in a civil proceeding").  Proceeding under these circumstances would fundamentally impair Defendants' ability to defend themselves—creating precisely the kind of asymmetric prejudice that the *Keating* factors are designed to prevent.

Defendants also lack access to key physical evidence.  The father's devices—the computers and phones on which he allegedly accessed Grok and generated the images at issue—remain in law enforcement's possession as part of the ongoing criminal investigation.  *See* AC ¶ 107 (alleging that potential evidence is "subject to an ongoing criminal investigation").  Without access to those devices, Defendants cannot conduct a complete forensic analysis of the father's use of Grok— including whether he used fictitious account names that would be necessary to locate all relevant data on Defendants' servers—or of his use of other AI platforms.  Plaintiffs' conclusory assertion that x.AI has all the evidence it needs (Opp. at 9) ignores these practical realities.

*Finally*, any discretionary stay should extend to all claims brought by all Plaintiffs.  Plaintiffs themselves have framed this case as involving a common course of conduct by x.AI, alleging that x.AI designed Grok to create "revealing and sexualized deepfakes" without adequate guardrails, and that this design defect harmed all Plaintiffs—not just South Carolina Roe.  AC ¶¶ 6–11.  Given this substantial overlap in liability evidence, a stay limited to South Carolina Roe's claims would make little sense and would introduce unnecessary inefficiency.  Proceeding with discovery as to Jane Doe, New Jersey Doe, and Ohio Doe while staying discovery as to South Carolina Roe would result in duplicative discovery, unnecessary discovery disputes, and increased litigation costs—for all parties and for the Court.  *Cf. Square 1 Bank*, 2014 WL 7206874, at *4 ("[S]taying a related civil proceeding in its early stages may prove more efficient in the long run.").  That is even more true in

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS

a putative class action case, such as this one.  Class certification cannot be entertained in a piecemeal fashion, i.e., as to some named plaintiffs, but not others.  The more sensible approach—and the approach courts routinely adopt—is to stay the entire action pending resolution of the criminal proceedings.

## VI.    Conclusion

The Court should grant a mandatory stay or, in the alternative, grant a discretionary stay pending resolution of the criminal action against South Carolina Roe's father.

Dated: June 29, 2026

/s/ _Adrian Sawyer_

Adrian Sawyer, State Bar No. 203712
SAWYER & LABAR LLP
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: 415.262.3820
sawyer@sawyerlabar.com

Joel Kurtzberg (_admitted pro hac vice_)
Ivan Torres (_admitted pro hac vice_)
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, New York 10005
Telephone: 212.701.3120
jkurtzberg@cahill.com
itorres@cahill.com

**_Counsel for Defendants_**

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A MANDATORY STAY OF THE ACTION PURSUANT TO 18 U.S.C. § 1595(b)(1) OR, IN THE ALTERNATIVE, FOR A STAY PURSUANT TO THE COURT'S DISCRETIONARY POWERS