Sophia M. Rios (SBN 305801)
**BERGER MONTAGUE PC**
8241 La Mesa Blvd, Suite A
La Mesa, CA 91942
Tel: (619) 489-0300
Fax: (612) 584-4470
srios@bergermontague.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| JANE DOE, SOUTH CAROLINA ROE, NEW JERSEY DOE, and OHIO DOE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>X.AI CORP. and X.AI LLC,<br><br>Defendants. | CASE NO.:  5:26-cv-00772-PCP<br><br>**PLAINTIFFS' OBJECTION TO DEFENDANTS' REPLY EVIDENCE SUBMITTED IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. § 1404(a)**<br><br>Date: July 30, 2026<br>Time: 9:00 a.m.<br>Courtroom: 8, 4th Floor<br>Judge: Hon. P. Casey Pitts |

Plaintiffs (Jane) South Carolina Doe, Ohio Doe, New Jersey Doe, and South Carolina Roe, pursuant to Civil LR 7-3(d)(1), submit this objection to three categories of new evidence submitted for the first time in Defendants' Reply in Support of its Motion to Transfer (ECF No. 53 ("Reply")) and the related Declaration of Megan Scolari (ECF No. 53-1). For the first time, Defendants X.AI Corp. and X.AI LLC ("X.AI" or "Defendants") offered (1) purported visual evidence of Plaintiffs' account creation process on X; (2) a declaration attesting that "several" X.AI employees reside in the Northern District of Texas; and (3) ███████████████████████████████, in violation of the Protective Order in this case. Had X.AI submitted this information with its initial Motion, Plaintiffs would have had the opportunity to respond. Requiring Plaintiffs to respond to this voluminous new evidence for the first time at the July 30, 2026 hearing would seriously prejudice Plaintiffs' ability to oppose X.AI's Motion and the Court should decline to consider it. *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1180 (N.D. Cal. 2023) (declining to consider new evidence submitted on reply), *opinion clarified on other grounds*, 2024 WL 3498492 (N.D. Cal. July 22, 2024).

**A.  X.AI Submitted New, Unreliable Evidence Related to Account Creation.**

The Scolari Declaration paragraphs 19-27 and Exhibits 16-19, which contain the new evidence related to Plaintiffs' account creation process, should not be considered. It was X.AI's burden to demonstrate that a contract was formed in its original Motion. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020). Courts assess the formation of online contracts through "a visual and aesthetic analysis" and "'even minor differences' in the design elements may make the difference in this fact-intensive analysis." *Godun v. JustAnswer LLC*, 135 F.4th 699, 709-10 (9th Cir. 2025). X.AI omitted any images of what Plaintiffs saw when signing up for X in its Motion, merely quoting the sign-up screens Plaintiffs purportedly saw instead. (*See* ECF No. 41-3 ¶ 8.)

X.AI contends the new evidence can be considered because it responds to arguments raised in Plaintiffs' Opposition. (Reply at 2 n.2.) Contrary to X.AI's characterization, X.AI did not merely respond to Plaintiffs' arguments. X.AI has instead attempted to backfill what it could and should have included in its Motion. *Gbarabe v. Chevron Corp.*, No. 14-CV-00173-SI, 2017 WL 956628, at *28 (N.D. Cal. Mar. 13, 2017) (declining to consider new reply evidence because movant did not identify

"new unforeseen facts" in opposition or "demonstrate[] that the reply materials could not have been submitted" in original motion). X.AI addresses the same subject matter as its original Motion, with substantial "substantive changes" that deprive Plaintiffs of the opportunity to adequately respond. *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018); *see also LeDoux v. Outliers, Inc.*, No. 3:24-CV-05808-TMC, 2025 WL 523908, at *9 (W.D. Wash. Feb. 18, 2025) (giving new information about online contract formation in reply "little weight").

This evidence is also not reliable for several reasons. First, X.AI did not authenticate the images, which are archived on the Wayback Machine. The same omission has led several courts to decline to judicially notice Wayback Machine pages. *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 584 (5th Cir. 2022) (holding that "the Wayback Machine is not self-authenticating" and that without proper authentication images from "a private internet archive falls short of being a source whose accuracy cannot reasonably be questioned as required by Rule 201"); *C.f. Bingham v. Holder*, 637 F.3d 1040, 1045 n.3 (9th Cir. 2011) (declining to take judicial notice of historical content of website); *Gjovik v. Apple Inc.*, No. 23-CV-04597-EMC, 2025 WL 637931, at *9 (N.D. Cal. Feb. 27, 2025) (noticing archived pages where "the limited issue is whether the Court may take judicial notice of information obtained from the Wayback Machine to show that the permits were available to the public on a particular date"); *Mitchell v. Sonesta Int'l Hotels Corp.*, No. CV 24-2603-GW-SSCX, 2024 WL 4471772, at *4 (C.D. Cal. Oct. 4, 2024) (declining to notice archived pages, "especially to the extent they are asserted to reflect what Plaintiff confronted at the time she engaged in her transactions with Defendant"), *adopted as modified*, 2024 WL 4474491 (C.D. Cal. Oct. 4, 2024).

Second, even if Wayback Machine pages are generally subject to judicial notice, Exhibits 16-19 do not have sufficient indicia of reliability. They consist solely of cropped screenshots of pages from the Wayback Machine, which courts have found "are not properly subject to judicial notice, as they do not contain the indicia of reliability sufficient to demonstrate that the contents are not subject to reasonable dispute." *J.J. v. Ashlynn Mktg. Grp., Inc.*, No. 3:24-CV-00311-GPC-MSB, 2026 WL 1157165, at *4 (S.D. Cal. Apr. 28, 2026) (noticing "full webpage screenshots which bear the full website URL, the date of the Wayback Machine capture, and the Wayback Machine watermark," but declining to notice cropped screenshots from the Wayback Machine). The cropped nature of the

-2-

exhibits combined with the unusual page dimensions and sizing are further reasons for the Court to disregard the evidence, especially where, as here, how a website user scrolls and interacts with the webpage is relevant to the analysis.

Moreover, the Wayback Machine images suggest that they are not reliable to show the visual appearance of the website on the specified dates. For example, the screenshots in Exhibits 13 and 14 contain what appear to be broken, unviewable images, which a website user would not have presumably seen in 2009. There is also considerable white space in Exhibit 13 that does not appear to be an accurate representation of the webpage. These visual inaccuracies are not surprising: the organization that maintains the Wayback Machine disclaims any guarantee that the results it produces are accurate. *See* Internet Archive Wayback Machine, Internet Archive's Terms of Use, Privacy Policy, and Copyright Policy, dated Dec. 31, 2014, available at http://archive.org/about/terms.php (last visited July 20, 2026) ("[T]he Archive makes no warranty or representation regarding the accuracy, currency, completeness, reliability, or usefulness of the content in the Collections[.]").

Third, Exhibit 19 is an incomplete representation of the X account creation process as it appears to be the first page in a multi-page process. However, Defendants do not provide images of the other pages Plaintiff Ohio Doe would have purportedly seen, as relevant to the Court's analysis.

Lastly, X.AI assumes that Plaintiffs signed up through a web browser, but omits any evidence reflecting that Plaintiffs created accounts on a browser as opposed to through the Twitter or X mobile application. X.AI does not provide images of the mobile application sign-up process available at the time Plaintiffs created accounts. For these reasons, the Court should not rely on Exhibits 16-19.

### B. X.AI Submitted New Evidence Related to X.AI's Operations From a Declarant with No Personal Knowledge.

The Court should likewise decline to consider X.AI's new evidence that "there is a team of X Corp. and X.AI employees located in the greater-Dallas area," including one on the Grok "Safety Team." (ECF No. 53-1 ¶ 29.). In its original Motion, X.AI had a burden to show that the Northern District of Texas was a reasonable venue in which this case could proceed. X.AI has faced recent judicial scrutiny of its ability to maintain a lawsuit in the Northern District of Texas, including one court's observation that X and X.AI have, "at best minimal connections to the Fort Worth Division

-3-

of the Northern District of Texas" and neither "has a visible physical presence in the Fort Worth Division." *X Corp. et al. v. Apple, Inc.*, 806 F. Supp. 3d 652, 653 (N.D. Tex. 2025). That scrutiny, in combination with the allegations in the Amended Complaint that venue is proper in this District because X.AI developed, maintained, and operated Grok from California, made X.AI well aware that its presence, or lack thereof, in the Northern District of Texas was relevant to its Motion to Transfer. In its Reply, X.AI offers the declaration of a X employee, Megan Scolari, and no other proof, to establish that X.AI has an office in Fort Worth. (*Id.*). Ms. Scolari has personal knowledge of X's business records. (*Id.* ¶¶ 2-3.) But Ms. Scolari has no apparent personal knowledge of X.AI's business records or operations, points to no public information about any X.AI "office" in the Northern District of Texas, and provides no detail about how many X.AI employees work there or for how long. This new evidence should not be considered because it could and should have been part of X.AI's original Motion and Ms. Scolari lacks personal knowledge of the information.

### C. X.AI Submitted New Evidence Resulting from a Violation of the Protective Order.

Through the Protective Order entered in this case, the parties agreed, and the Court ordered, that a "Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation." (ECF No. 21 ¶ 7.1.) Despite this prohibition, X.AI relied on Protected Material ▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

The Protective Order's limitation on the use of Protected Material is a "routine measure" that protects parties against a multiplication of lawsuits generated from information that has been designated as confidential. *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 220 F.R.D. 349, 353 (N.D. Cal. 2003). Indeed, the parties modeled the Protective Order here on the Northern District of California Model Rules. Courts find a violation of a protective order containing this provision if a litigant uses protected material to file another case. *On Command Video Corp. v. LodgeNet Ent. Corp.*, 976 F. Supp. 917, 920, 922 (N.D. Cal. 1997) (holding that, "[b]y using such information to file a separate lawsuit in another forum, plaintiff violated the plain terms of the Protective Order" where protective order allowed use only for "this litigation"); *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, No. 15-CV-2044 (AJN) (RLE), 2017

-4-

WL 2418742, at *3 (S.D.N.Y. June 5, 2017) (collecting cases holding the same).

Though the X.AI terms permit X.AI to bring any claim against a Grok user "in any competent court in the country in which [the user] resides that has jurisdiction and venue over the claim[,]"[1] ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████.

The consequences of violating a protective order vary depending on context. *Command Video Corp.*, 976 F. Supp. at 922 (finding civil contempt); *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-MD-03084-CRB (LJC), 2026 WL 440752, at *14 (N.D. Cal. Feb. 17, 2026) (awarding fees under Fed. R. Civ. P. 37 for filing cases based on confidential information). While Plaintiffs reserve the right to seek all appropriate remedies, the minimum appropriate remedy is for the Court to decline to consider ██████████████████████████████████████████████ ██████████████████████████████.

**D. Conclusion.**

Plaintiffs respectfully request that the Court sustain Plaintiffs' objections and disregard the new evidence in the Scolari Declaration submitted with X.AI's Reply, including paragraphs 19-27, 29, and Exhibits 13-20, and any briefing based on the new evidence. Alternatively, Plaintiffs request a fair opportunity to conduct discovery related to X.AI's account creation records, operations in the Northern District of Texas, and X.AI's apparent violation of the Protective Order, in addition to the opportunity to file a surreply.

---

[1] https://x.ai/legal/terms-of-service.

[2] ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████.

Dated:  July 22, 2026                    Respectfully submitted,

                                        BERGER MONTAGUE PC
                                        */s/ Sophia M. Rios*
                                        Sophia M. Rios, SBN 305801
                                        8241 La Mesa Blvd., Suite A
                                        La Mesa, CA 91942
                                        Tel: (619) 489-0300
                                        srios@bergermontague.com

                                        E. Michelle Drake*
                                        1229 Tyler Street NE, Suite 205
                                        Minneapolis, MN 55413
                                        Tel: (612) 594-5999
                                        emdrake@bergermontague.com

                                        James Hannaway, *pro hac vice*
                                        1001 G Street, NW
                                        Suite 400 East
                                        Washington, DC 20001
                                        Tel: (202) 559-9740
                                        jhannaway@bergermontague.com

                                        * *pro hac vice* forthcoming

                                        *Counsel for Plaintiffs*

-6-